IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                      CR. NO. 2:23-cr-20191-MSN-5

EMMITT MARTIN, III,
TADARRIUS BEAN, DEMETRIUS
HALEY, DESMOND MILLS, JR.,
AND JUSTIN SMITH

    Defendants.

### DEFENDANT, JUSTIN SMITH'S NOTICE OF JOINDER WITH DEFENDANT, DEMETRIUS HALEY'S, MOTION TO COMPEL DISCOVERY AND SUPPLEMENT THERETO

COMES NOW, the Defendant, Justin Smith (hereinafter "Smith"), and files this his Notice of Joinder with, and in agreement to, Defendant, Demetrius Haley's (hereinafter "Haley"), previously filed Motion to Compel Discovery as if copied verbatim herein and in addition thereto would state as follows:

1. In addition to the arguments made in Haley's Motion to Compel, Smith would argue that the position of the Government is disingenuous and intellectually dishonest. The Government is all but stating "tell us what you think we have before we agree to give it to you."

2. Only by happenstance did the Defendants even learn that the Government had downloaded the contents of Tyre Nichols' (hereinafter "Nichols") cellular phone. It was not like the Government volunteered to the Defendants that they had that

information. Once it was discovered by the Defendants that the Government had the information did the Government quite boldly said that in their opinion, the contents were not relevant to the crimes charged. The Government actually asserted the irrelevance <u>before</u> they even reviewed the contents of the phone that they took the time to dump.

3. This type of unmerited trust in the Government's ability to fashion a method suitable of getting to the truth is unacceptable.

4. In this case, it has been widely disseminated in the media, through politicians; and state and federal prosecutors, that the horrible incident caught on video was the intentional and vicious acts of five (5) sworn police officers acting in concert at the expense of the life of Nichols.

5. The narrative that exists is not necessarily the true facts of the case.

6. It is not the Defendants' role to point out to the Government why they might be able to put up an adequate defense for their clients by guessing the state of mind of Nichols at the time of his traffic stop.

7. However, Nichols' state of mind and criminal activity is very relevant.

8. The overarching questions that every human being remotely knowledgeable of the Nichols' case is "Why did Nichols run from the police?" and "Why did the police behave as they did in response to Nichols' running from the police?" These questions go to the very heart of the criminal charges leveled against Smith.

9. The Government argues that Smith violated the civil rights of Nichols by exercising unreasonable force in seizing or capturing Nichols, and then failed to render medical aid to Nichols after he was finally in custody.

10. Again, only by happenstance, did the Defendants learn that Nichols had Schedule I hallucinogenic narcotics in his vehicle on the night in question. Psilocybin, commonly referred to as magic mushrooms, are a Schedule I hallucinogenic. By reviewing the Tennessee Bureau of Investigation's inventory of Nichols' car, it was determined that almost two (2) grams of the substance was found. However, because the narrative of the Government's prosecution does not include Nichols' state of mind or addled mind at the time of the traffic stop, the Government obviously did not request toxicology testing for psilocybin or its metabolite.

11. On another issue, the Defendants, by chance, learned that stolen credit cards, stolen debit cards and stolen photograph IDs were also found in Nichols' vehicle. How these credit cards, debit cards and photo IDs came into the possession of Nichols is in fact important when examining the state of mind of Nichols when he ran from the police.

12. Why Smith has to set forth how this information is relevant is insulting. In this case, "Why did Nichols run from the police?" is very well answered by the fact that Nichols did not want to be taken into custody with felony drugs and felony fraud evidence in his possession, and if he consumed the hallucinogenic drug, it would explain his reaction to being stopped by the police.

13. Instead, the Government wants to focus solely on the fact that Nichols was close to his mother's home where she lived with Nichols' stepfather.

14. Again, only through happenstance, did the Defendants learn that after the custodial arrest, Lt. DeWayne Smith went to the home of Nichols' mother and stepfather

where Lt. Smith was initially informed that they did not even know a Tyre Nichols, and that they had lived in the home for five (5) years.

15.  This dichotomy of narratives is important to explore. These police officers received a radio call that there was a fleeing suspect on foot who had been tazed and sprayed, and that the suspect had escaped police after an altercation with the police.

16.  Responding officers have a legal and sworn duty to take that fleeing suspect into custody for further investigation. The motive of the police officers in their actions towards Nichols are quite relevant to show intent. At the same time, it is important to explore what Nichols' state of mind was.

17.  Forcing the Defendants to explain why reviewing Nichols' cell phone contents would be important is unfair and obstructive.

18.  To quote Donald Rumsfeld, Smith "cannot possibly know what he doesn't know." If the Government is hiding the ball by not disclosing an index of investigative material for Smith to then ask the court, *in camera* if nothing else, to review that material to determine if it is *Brady* material, ties the hands of Smith from a full and fair defense of these very serious charges that can bring a potential life sentence.

19.  The incredulous response of the Government should be examined closely by this Court as the gatekeeper for justice for all parties involved.

## LAW

*Brady* and its progeny stand consistently affirmed – if not expanded – the government's disclosure obligations without suggesting those duties are reciprocal upon the Defendant in any way. See *Kyles v. Whitley,* 514 U.S. 419, 433-34, 437 (1995)(government's *Brady* obligations extend to evidence "known only to police

investigators and not to the prosecutor" because prosecutors have an absolute "duty to learn" evidence favorable to the defense); *Bagley,* 473 U.S. at 676 (1985)(government's *Brady* obligations extend to impeachment evidence); *United States v. Agurs*, 427 U.S. 97, 106-07 (1976)(government's *Brady's* obligations apply even when there has been no request by the defendant).

In *Banks v. Dretke,* 540 U.S. 668 (2004), the U.S. Supreme Court confirmed that its [*Brady*] precedents "lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Id.* at 695.

In this case, the Government has stated in writing that they have not even reviewed Nichols' cell phone "dump," so how can they fulfill their obligation to disclose *Brady* material if they have not even reviewed it?

WHEREFORE, PREMISES CONSIDERED, Smith prays for an order compelling the Government to furnish an index of investigative material within its possession, custody, or control – including the possession, custody, or control of the investigative agencies which has not been produced in discovery to enable Smith to form his own, independent opinion on whether the Government is complying with the *Brady* obligation it has acknowledged it must meet.

In addition, Smith prays for an order to produce Nichols' cell phone contents "dumped" by the Government previously, yet not produced to Smith.

Respectfully submitted,

/s/Martin Zummach
Martin Zummach #16352
7125 Getwell Road, Ste. 201
Southaven, MS 38671
(662) 349-6900
Attorney for Defendant

CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of October, 2023, a copy of the foregoing document was electronically filed with court clerk using the ECF System, and that upon filing, a copy will be sent via the Court's ECF System to all registered parties in this case.

*S/Martin Zummach*