IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                    CR. NO. 2:23-cr-20191-MSN-5

EMMITT MARTIN, III,
TADARRIUS BEAN, DEMETRIUS
HALEY, DESMOND MILLS, JR.,
AND JUSTIN SMITH

    Defendants.

## DEFENDANT, JUSTIN SMITH'S RESPONSE TO THE UNITED STATES' MOTION IN LIMINE TO PRECLUDE USE OF INADMISSIBLE AND IMPROPER CHARACTER EVIDENCE

COMES NOW, the Defendant, Justin Smith (hereinafter "Smith"), and files this his Response to the Government's Motion in Limine to Preclude Use of Inadmissible and Improper Character Evidence and would state as follows:

This Court should be aware of the context and reason the parties find themselves in the current dispute.

A representative of the U.S. Attorney's Office verbally stated in Court to defense counsel in response to a question, that Tyre Nichols' (hereinafter "Nichols") phone was "dumped," and the Government had not looked at the contents of Nichols' phone. Prior to that verbal statement, the Government had not indicated to the Defendants that they were ever in possession of Nichols' phone, or had it "dumped."

Clearly, the Government thought that "dumping" Nichols' phone was important. Why it was supposedly determined that the contents were not necessary to be reviewed for *Brady* material or relevant evidence boggles the mind.

However, when all defense counsel then learned that the phone had been "dumped," and that the very fact that it had been dumped and the contents had not been provided to defense counsel in discovery, Mr. Stengel, on behalf of Defendant, Demetrius Haley, filed the instant Motion to Compel Discovery (Doc No.: 59) to which the undersigned, on behalf of Smith, joined (Doc No.: 60) setting forth additional reasons why the contents of that phone, as well as the evidence gathered from Nichols' vehicle is *reasonably calculated to lead to the discovery of admissible evidence.*

The Government seems to believe that the mere mentioning, in a formal pleading, some representative examples of materials found in Nichols' vehicle, which are indicative of criminal activity and intoxication, somehow besmirches Nichols' name and as such, Defendants should be gagged from doing so.

As stated in Smith's Joinder, an eventual jury, once empaneled, will ask the same questions that everyone else has asked namely: (1) Why did Nichols run from the police? and (2) Why did the police behave as they did in response to Nichols' running from the police?

FRCP 11 and the Tennessee Rules of Professional Responsibility guide the filing of formal pleadings. The undersigned is well aware of his limitations and applicable rules.

Tennessee Rules of Professional Conduct 3.6 -- Trial Publicity states:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an

2

extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding. (Emphasis Added)

Rule 11(b) of the FRCP states in pertinent part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information and belief, formed an after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The Government's attempt to spread their myopic narrative about Nichols, and their narrative about these five (5) officers should not be a one-way street.

Representatives of the Government have stated publicly that these five (5) officers "beat

3

Nichols to death." If that is not an *extrajudicial* rush to judgment or inflammatory, the undersigned does not know what is.

However, a "victim's" mental state and a "victim's" level of intoxication is extremely relevant for a jury to determine whether or not the actions of the individual officers were objectively reasonable under the circumstances. *Graham v. Connor,* 490 U.S. 386 (1989). See *Boyd v. City and County of San Francisco,* 576 F. 3d 938 at 948-949 (9th Cir. 2009) which upheld a ruling that allowed evidence that a decedent had been on drugs at the time of a police shooting because the evidence "was highly probative of the decedent's conduct, particularly in light of the decedent's alleged erratic behavior. . ."; and *Turner v. White,* 980 F. 2d 1180 at 1182-1183 (8th Cir. 1992) upheld the admission of alcohol consumption because it was "incumbent upon the jury to consider Officer White's actions in relation to all of the circumstances of the situation that confronted him. We therefore believe that the evidence of alcohol consumption was relevant to the jury's assessment of that situation . . ."

In this case, there is evidence of stolen credit cards, debit cards and photo IDs as well as illegal Schedule I hallucinogens within Nichols' reach at the time of the first traffic stop.

What is somewhat disingenuous by the Government's "Motion in Limine" is that at several points within the motion, it appears that the Government is actually playing to the media by adding self-serving, complimentary, irrelevant facts about Nichols that obviously the Government hopes the media will report on.

Counsel for the Government states "In other words, the Fourth Amendment requires Courts to 'consider only the facts the officers knew at the time of the alleged

4

Fourth Amendment violation.'" While this is true, it is a misstatement in the case at hand because while the police officers may not have known that there were stolen credit cards, debit cards and photo IDs in Nichols' vehicle at the time the force was used; and the police officers did not know what substances were in Nichols' body at the time the force was used; the condition of Nichols or the motivations for him to flee and actively resist are in fact elements to be established at trial. The Government left these facts out of their argument.

It is undisputed that Nichols attempted to evade being stopped at least twice if not three (3) times on the evening in question and said facts will be made apparent <u>at trial</u>. Nichols' active resistance had to be met with reasonable force under the circumstances as they existed the moment the force was used. If Nichols was under the influence of alcohol, marijuana, and magic mushrooms, that will in fact be admissible and relevant to determining the reasonableness of the officers' use of force.

The Government asserts in one moment that counsel for Smith made disparaging remarks that were not supported in the record, and yet, turns around and makes statements as if the toxicology examination did test for the metabolite of magic mushrooms and concluded that none was present in Nichols' system.

First, this sounds like the pot calling the kettle black because that toxicology information is not in the record either. What will be in the record is that the metabolite for magic mushrooms was not <u>detected</u> in Nichols' blood. Forensic toxicologists of any qualification whatsoever will testify that the absence of psilocybin based upon the current testing techniques utilized by law enforcement is not surprising at all not to have been

detected, but nevertheless, still in a suspect's system, and the influence and intoxication of psilocybin still makes its effect apparent.

The Government never denies in its "Motion in Limine" that illegal Schedule I hallucinogens were within arm's reach of Nichols at the time of the traffic stop. The Government never denies that there were stolen credit cards, debit cards and photo IDs in Nichols' vehicle at the time of the traffic stop. The Government never denies that paraphernalia used exclusively for ingesting drugs such as marijuana, etc., were found in Nichols' vehicle at the time of the traffic stop. The Government spends much time saying that the Defendants are besmirching Nichols' character, and he cannot defend himself, and yet the Government could simply deny that these items were in fact found by law enforcement. Instead, the Government wants the Court to order the Defendants to stop mentioning it. That is a subversion of the truth. That truth is relevant, and courts have widely recognized that the cognitive and emotional condition of a "victim" in a civil rights excessive force claim is relevant in order to accurately surmise what the police officers in question faced on the date of the arrest.

The Defendants, in preparing their defense, should be able to fully explore (as opposed to what the Government believes the Defendants are entitled to) the motives and motivations behind Nichols so actively trying to escape the police over what is otherwise a simple traffic stop.

The Defendants should not have to place their entire defense strategy before the Government to obtain discovery which is required by *Brady* and the Federal Rules.

Suffice it to say, and upon information and a good faith belief, Nichols was either suffering from a psychotic event or was cognitively unable to appreciate the risks of

6

fleeing from the police in traffic on foot or; Nichols was no motivated to remove himself from evidence of other criminal activity that he placed his own life at risk in running blindly into traffic.

The officers involved had no idea of what Nichols had as his motivation or cognitive ability, and that is exactly the point. The Government seems to argue that because a police officer does not know that a suspect has evidence of criminal activity in their possession or Schedule I hallucinogenic drugs in their possession and within arm's reach, they should not be allowed to explore the areas requested by the original Motion to Compel filed by Haley's counsel and supplemented with a Joinder by Smith's counsel.

**CONCLUSION**

The undersigned believes that he has set forth in the clearest terms possible why the discovery material being withheld by the Government is necessary for the preparation and investigation of the defense of Smith, and yet, in response to the pleadings filed with the Court, the Government seeks to gag the Defendants from saying anything in pleadings or otherwise which could hold Nichols in an unfavorable light.

This Court should not reward the Government's stonewalling or obfuscation to in any way limit the fair and full defense of these five (5) Defendants from the charges brought by the Government against them.

WHEREFORE, PREMISES CONSIDERED, counsel for Smith prays that the motion styled "Motion in Limine" be denied at this juncture, and Defendant, Demetrius Haley's, Motion to Compel be granted at this juncture.

As mentioned by the Government in its motion, Haley recently filed a Notice of Amendment to Motion to Compel Discovery and Reply to Government's Response (R.

61) wherein he withdrew a <u>portion</u> of his Motion to Compel because he believed the contents of the phone "dump" were available through the State's parallel discovery material. As of the dictation of this Response, that phone "dump" has not been viewed by anyone for the defense making the "mootness" premature.

This Court, as a gatekeeper for evidence, can determine later whether or not the contents derived from Nichols' phone or any other *Brady* material that may be provided by the Government once ordered to do so, is admissible evidence. But the Government seeking the Court's approval of their narrative that Nichols was just trying to get home to his mother and barring any argument in formal pleadings of a different narrative strains credulity.

Respectfully submitted,

/s/Martin Zummach
Martin Zummach #16352
7125 Getwell Road, Ste. 201
Southaven, MS 38671
(662) 349-6900
Attorney for Defendant

CERTIFICATE OF SERVICE

The undersigned certifies that on the 24th day of October, 2023, a copy of the foregoing document was electronically filed with court clerk using the ECF System, and that upon filing, a copy will be sent via the Court's ECF System to all registered parties in this case.

*S/Martin Zummach*