## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

UNITED STATES OF AMERICA,
     Plaintiff,

vs.                                 No. 2:23-cr-20191-MSN

EMMITT MARTIN, III,
     Defendant.

---

### DEFENDANT EMMITT MARTIN'S RESPONSE IN OPPOSITION TO MOTION IN LIMINE FILED BY UNITED STATES GOVERNMENT

---

Comes now the defendant Emmitt Martin III, by and through his counsel of record William D. Massey, of the LAW OFFICE OF MASSEY MCCLUSKY FUCHS & BALLENGER, to respond to the Government's motion in limine to preclude the use of inadmissible and improper character evidence. In response, the Defendant respectfully requests this Honorable Court reserve the issue of admissibility of prior bad acts until discovery and pretrial litigation has concluded in this matter. Further the Defendant requests that the Court deny the Government's request for any sort of gag order or protective order on pretrial filings as an inappropriate restraint on the Defendant's freedom of speech and right to present a defense.

#### This Court Should Consider Admissibility Of Prior Bad Acts Closer To Trial

In its motion, the Government seeks a court order "excluding any improper reference to or inadmissible evidence of Mr. Nichols' alleged character or alleged prior violent acts" at trial. (R. 67, Motion *in limine*, ID 204.) With respect to the Government's request to exclude this evidence *at trial*, Mr. Martin concurs with Mr. Haley's response to the Government's motion. Mr. Martin, like Mr. Haley, does not seek to introduce inadmissible evidence at trial and expects that the Court

will follow and enforce the applicable rules of procedure and evidence. Mr. Martin joins in Mr. Haley's contention that potential evidentiary disputes should not be addressed prematurely and should be addressed at the appropriate time, after complete discovery has been provided and investigations have been completed.

### A Restraint On Pretrial Filings Violates The Defendants' And Their Attorneys' Rights To Freedom Of Speech

The Government's request to prevent Mr. Martin and his codefendants from arguing their cases in pretrial filings is far more alarming. The Government claims that "some of the defendants have used discovery-related public filings in an apparent effort to attack the character of the deceased victim in advance of trial." (R. 67, Motion *in limine*, ID 212-213.) As a result, the Government claims that "unsubstantiated and misleading information about the victim has appeared in local and national media coverage." (R. 67, Motion *in limine*, ID 213.) Finally, the Government asserts that Mr. Martin's codefendants "have made discovery requests that appear designed to seek out additional information to attack the victim's character." (R. 67, Motion *in limine*, ID 213.) As a remedy for these purported attacks, the Government seeks an order stating that "any and all alleged 'bad' character information related to Tyre Nichols and discovered after January 7, 2023 is considered irrelevant and inadmissible in this matter; accordingly, any reference to such information is prohibited in publicly-filed pleadings and at trial." (R. 67, Proposed order on motion *in limine*, ID 217.) Such an order would not only be overbroad and premature: it would also violate the defendants' rights to free speech, to due process, and to present an effective defense.

Mr. Martin agrees with, joins in, and incorporates by reference Mr. Haley's response to the Government's motion. Specifically, Mr. Martin agrees with Mr. Haley's assertion that the Government's motion is effectively a motion for a protective order. It is worth noting, first and foremost, that the Government's assertion that the actions of Mr. Martin's co-defendants will

"invite nullification and taint the jury pool" strains credulity considering the numerous public statements made by the Government in relation to this case, summarized by Mr. Haley in his response. (R. 68, Demetrius Haley's response, ID 220-221.) More significantly, however, a gag order of the nature proposed by the Government would amount to a prior restraint on speech and an infringement of Mr. Martin's First Amendment rights.

Under some circumstances, a court may issue gag orders to prevent prejudicial pretrial publicity. Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991). However, "any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." CBS v. Young, 522 F.2d 234 (6th Cir. 1975). The circumstances where such an order is permissible are extremely limited: the Sixth Circuit requires either a showing of clear and present danger or of a "serious and imminent threat" of interference with a fair trial to justify a gag order on extrajudicial statements of trial participants. See U.S. v. Ford, 830 F.2d 596, 598 (6th Cir. 1987). The Government has not made, and cannot make, such a showing.

Moreover, the entirety of the jurisprudence addressing the circumstances where gag orders are permissible only addresses *extrajudicial* statements. See, e.g., Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991). While pretrial filings may be accessible by the media, they are definitionally not extrajudicial: rather, they are an integral part of the judicial process. A gag order preventing the defendants from making good faith arguments in pretrial motions is openly at variance with both the First, Fifth, and Sixth Amendments.

The defendants, by arguing in pretrial motions that they are entitled to items they believe to be discoverable, have complied with the Federal Rules of Criminal Procedure and the Tennessee

Rules of Professional Conduct. Rule 12 of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion "must state the grounds on which it is based and the relief or order sought." Fed. R. Crim. P. 47(b). The Tennessee Rules of Professional Conduct outline a lawyer's professional responsibilities when asserting a claim in court:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

TN R S CT Rule 8, RPC 3.1. Comment 2 to Rule 3.1 of the Rules of Professional Conduct provides that "[t]he filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery." TN R S CT Rule 8, RPC 3.1, Comment 2. While lawyers are required to "act reasonably to inform themselves about the facts of their client's case and the law applicable to the case and then act reasonably in determining that they can make good faith arguments in support of their client's position," "[s]uch an action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail." Id. The Government's allegations that the defendants are filing pretrial motions to attack Mr. Nichols' character are unjustified and unwarranted. The defendants have done nothing other than assert good faith arguments for which there is a basis in law and fact, as they are allowed to do under the applicable rules.

**Bad Acts Would Be Discoverable Pursuant To *Brady v. Maryland*. The Government's Proposed Order Would Prohibit The Defendant Asserting His Paramount Constitutional Right To Request Favorable Evidence If It Is Withheld By the Government.**

The State's proposed order, which would prohibit Mr. Martin and his codefendants from making specific, particularized requests for discovery and <u>Brady</u> material if these requests include any reference or allusion to "alleged 'bad' character information," would hamstring the defendants' ability to ensure that the Government complies with its duty to disclose favorable evidence. <u>Brady v. Maryland</u> and its progeny establish that the Government violates a defendant's due process rights if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. 373 U.S. 83 (1963). Certain evidence is "so clearly supportive of a claim of innocence" that the Government obviously has a duty to disclose it. <u>U.S. v. Agurs</u>, 427 U.S. 97, 107 (1976). However, the Government may not necessarily be aware of the defense's theory of the case or trial strategy: in these situations, a specific, particularized request for <u>Brady</u> material puts the prosecution on notice that the defense believes certain evidence would be helpful or favorable. Federal case law has long recognized a practical distinction between specific and general requests for <u>Brady</u> material: for example, in <u>United States v. Bagley</u>, the Supreme Court acknowledged that "the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption." 473 U.S. 667, 682-683 (1985).

The Government's proposed order would prevent the defendants from making specific, particularized requests for information related to Mr. Nichols's state of mind on January 7, 2023. While the Government argues that this information would be inadmissible (and again, this assertion is premature), information need not necessarily be admissible to be favorable and

material under <u>Brady</u>. In the Sixth Circuit, information is material under <u>Brady</u> not only if it would have been admissible at trial, but also if it "would have led directly to admissible evidence." <u>Gumm v. Mitchell</u>, 775 F.3d 345, 363 (6th Cir. 2014). The Government's duty to disclose encompasses inadmissible evidence if the information appears likely to lead to the discovery of admissible evidence. Therefore, the Court should not conclude at this early stage of the case that information related to Mr. Nichols' state of mind cannot be material and favorable to the defense and should certainly not prohibit the defense from making particularized requests for <u>Brady</u> material in pretrial filings.

**<u>Limiting The Defendants' Ability To File Pretrial Motions
Is A Direct Violation Of The Defendants' Right To Effectively Present A Defense</u>**

Mr. Martin and his codefendants are guaranteed the right to present a complete defense under the Fifth and Fourteenth Amendments to the United States Constitution. The right to present a defense "is, in essence, the right to a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). The Government repeatedly asserts in its filings that the government must show that the defendants used an objectively unreasonable amount of force while arresting Mr. Nichols, and that the objective reasonableness inquiry assesses only "reasonableness at the moment" in light of "the facts and circumstances confronting [the defendants]." (R. 67, Motion *in limine*, ID 208.) However, in outlining the factual background of the case, the Government asserts that:

> [a]ccording to the officers, they stopped Nichols because he was speeding and committing traffic infractions. Officers pulled Nichols from his car and used force on him following the traffic stop. Nichols, as captured on body-worn camera footage, protested that the officers were "doing a lot" and said that he was "just trying to go home."

R. 67, Motion *in limine*, ID 208. The Government also asserts that, after Mr. Nichols ran from the

scene and the defendants apprehended him, "[a]s the defendants used force against Nichols, he yelled for his mother." (R. 67, Motion *in limine*, ID 208-209.) The Government's filings echo two critical elements of the persistent media narrative surrounding this case: first, that – contrary to the officers' assertions – there was no proof that Mr. Nichols was driving recklessly and that the traffic stop was unlawful.[1]  The Government also strongly suggests – if not overtly states – in its motion *in limine* that Mr. Nichols only ran from the scene of the traffic stop because he was terrified of the defendants and just wanted to make it home to his mother. Investigation and discovery materials provided to date appear to provide a strong and credible alternative to the Governments claims of why Mr. Nichols did not want to be apprehended and why he resisted and ran.

Mr. Martin has a constitutional right to defend against the State's accusations. Mr. Martin anticipates that the Government will suggest, imply, or overtly argue at trial that Mr. Nichols ran from the scene of the initial traffic stop because he was in fear of the officers and was just trying to make it home. The Government may not *need* to explain why Mr. Nichols ran from the scene of the initial traffic stop to prove the offenses alleged in the indictment – however, the Government's explanation of why Mr. Nichols ran is integral to its overall theory of the case. Mr. Martin, in turn, should not be prevented from investigating the veracity of the Government's theory and attempting to rebut it.

## Conclusion

The Court will ultimately determine whether any information proffered by the defendants regarding alternative explanations for Mr. Nichols' conduct on January 7, 2023, is relevant and

---

1 It has been widely reported that Memphis Police Department Chief Cerelyn "CJ" Davis told CNN on January 27, 2023, that MPD was "unable to substantiate" the defendants' claim that Mr. Nichols was driving recklessly. Alisha Ebrahimji, *What we know – and still don't know – about what led to Tyre Nichols' death*, CNN, Jan. 28, 2023, <u>What we know -- and still don't know -- about what led to Tyre Nichols' death | CNN.</u>
Further, the Government has not provided Mr. Martin with footage from the Sky Cop recordings along the route that preceded the first stop.

admissible at trial. Mr. Martin should not be prohibited at this early stage of the case from lawfully attempting to obtain information through the discovery process. Mr. Martin should not be prevented from asserting good faith arguments in pretrial filings, as such a restriction would amount to an unconstitutional prior restraint on Mr. Martin's rights to free speech, to due process, and to present a defense.

Respectfully submitted this 26th day of October 2023.

> THE LAW OFFICE OF MASSEY
> MCCLUSKY FUCHS & BALLENGER
> 3074 East Street, Memphis, TN 38128
> (901) 384-4004
>
> *s/ William D. Massey*
> B.P.R. No. 9568

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I filed a copy of the foregoing Response to the Governments Motion In Limine via the Court's Electronic Filing System which sends notification to all parties. This Response was filed on the 26th day of October 2023.

> *s/ William D. Massey*