IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 23-cr-20191-MSN |
| | ) | |
| DESMOND MILLS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF PLEA AGREEMENT ATTACHMENT A

## STATEMENT OF FACTS

On January 7, 2023, defendant Desmond Mills, Jr. was on duty and in uniform as an officer with the Memphis Police Department within the Western District of Tennessee.  At the time, Defendant Mills served as a Detective on MPD SCORPION Team One, along with Detectives Tadarrius Bean, Demetrius Haley, Emmitt Martin, and Justin Smith.  On January 7, 2023, defendant Mills and Bean were riding in their patrol car when defendant Mills heard a call for assistance with a suspect who was running and who had been pepper-sprayed and tased.  Defendant Mills saw the suspect, later identified as Tyre Nichols, walking and using his shirt to wipe his face.  Bean jumped out of the patrol car and chased Nichols, who started to run.

Defendant Mills parked the patrol car and ran to catch up with Bean.  He saw Bean and Smith with Nichols on the ground.  Officers told Nichols to give them his hands.  Rather than grab Nichols' hands to handcuff him, Bean and Smith struck Nichols.  Nichols called out for his mother.  Defendant Mills learned later that Nichols' mother lived approximately one block away.  Defendant Mills did not attempt to grab Nichols' hands to handcuff Nichols; instead, Mills deployed pepper spray three times.  With the third round of pepper spray, Mills felt the pepper

spray in his own eyes. At about this time, Mills saw Emmitt Martin arrive on the scene and join in the use of force on Nichols. Defendant Mills stepped away from the scene and turned his back on his fellow SCORPION team officers as they used force on Nichols.

Defendant Mills walked a few steps back to the scene, drew his asp baton, and expanded it. Defendant Mills stepped towards Nichols and warned Martin, Smith, and Bean to "watch out." Defendant Mills then told Nichols "I'm about to baton the f—k out of you." With Nichols still on the ground and surrounded by four police officers, defendant Mills yelled "Give me your f—cking hands" and stepped toward Nichols. Two officers, including Smith, immediately responded "hit him." As Smith pulled Nichols' left arm and handcuffed wrist, it appeared to defendant Mills that Nichols was coming up from the ground; defendant Mills struck Nichols' right arm with his baton. Smith continued to hold Nichols's left arm as defendant Mills repeatedly used his baton to strike Nichols in the area of his right arm. Martin and Bean stood close by and did nothing to stop Mills from striking Nichols. As he struck Nichols with the baton, defendant Mills continued to shout: "give us your hands!" Defendant Mills did not give Nichols an opportunity to comply with his commands as he continued his baton strikes. Defendant Mills struck Nichols with the baton even though he knew that the use of the baton under the circumstances was inconsistent with MPD training and policy. Nichols' passive resistance did not justify defendant Mills' use of the baton to strike Nichols.

After the baton strikes, Mills disengaged with Nichols. However, Bean and Smith restrained Nichols' arms and appeared to lift Nichols to his feet following the baton strikes by defendant Mills. Again, an officer said "hit him." Martin repeatedly punched Nichols in the head without any justification. Bean and Smith continued to restrain Nichols as Martin repeatedly punched Nichols in the head. Bean and Smith were restraining Nichols while Martin hit Nichols

in the head but Mills, still dealing with the effects of having been pepper sprayed, did nothing to stop the assault by his fellow police officers.  Defendant Mills thought to himself that Martin needed to stop punching Nichols, but he said nothing to Martin, Bean, and Smith.  Defendant Mills recognized that this use of force by Martin, Bean, and Smith violated MPD policy and training. Nichols' passive resistance did not justify Martin's repeated punches to Nichols' head.  Defendant Mills also recognized that his failure to intervene in this use of unlawful force by other MPD officers violated MPD policy and was inconsistent with his MPD training.

Although Bean and Smith had restrained Nichols' arms, officers other than Mills continued to shout at Nichols to give them his hands as the officers assaulted him.  As the beating continued, defendant Mills walked a few steps away from the scene.

When officers, including Demetrius Haley arrived on the scene, defendant Mills called out "right here."  Haley yelled "beat that man" as he ran towards the officers and Nichols.  Defendant Mills continued to communicate with dispatch to request assistance even as he turned his back to the scene and even as he saw multiple officers running onto the scene.

After the beating, defendant Mills walked around the scene but did not provide any medical aid to Nichols, whose face was bloodied and swollen.  Defendant Mills knew that Nichols had a serious medical need – specifically, that he had been struck repeatedly in the head and on other parts of his body.  Defendant Mills did not tell MPD dispatch that Nichols had visible head injuries, had been struck in the head and body, and appeared to need medical care.  When Memphis Fire Department (MFD) Emergency Medical Technicians arrived, defendant Mills did not tell them that Nichols had been struck in the head and body.   Instead, he joined other officers on the scene in claiming that Nichols was high on drugs.  Similarly, when paramedics and later Mills'

supervisor reached the scene, defendant Mills did not provide them with any information about the beating that caused Nichols' injuries.

Instead, defendant Mills walked around the scene and spoke with Martin, Haley, Smith, and Bean. Defendant Mills admitted to his fellow officers that he had struck Nichols with his baton. Defendant Mills discussed Martin's repeated strikes with officers. Martin used hand signals to warn defendant Mills that his body-worn camera was still running. Defendant Mills momentarily stopped discussing the force officers had used on Nichols and removed his body-worn camera. Defendant Mills placed his body-worn camera on the back of a patrol car and took a few steps away to have what he believed was an off-camera conversation with the other officers who had participated in the assault. Defendant Mills placed his body-worn camera on the patrol car because he did not want it to capture their conversations about the assault.

At the arrest scene, defendant Mills participated in conversations with Bean, Smith, Haley, and Martin in which they discussed, among other uses of force, taking turns hitting Nichols, hitting Nichols with straight haymakers, and everybody rocking Nichols. During these conversations, the officers discussed hitting Nichols to make him fall and observed that when Nichols did not fall from these blows, they believed they were "about to kill" him.

Defendant Mills spoke with his supervisor on the arrest scene. Defendant Mills told his supervisors that he knew that Nichols was in bad shape and he expressed concern about Nichols' survival. Defendant Mills falsely told his supervisor that they had done "everything by the book." Defendant Mills knew that this statement was untrue because he knew that he and other officers had violated MPD policy and training by: using unjustified force; failing to intervene to prevent the use of unjustified force by other officers; failing to provide necessary medical aid; and failing

to inform responding medical personnel that they had beaten Nichols and caused injuries to his head and body.

Defendant Mills traveled to the hospital with Bean to escort Nichols to the emergency room by ambulance. Neither defendant Mills nor Bean told emergency medical personnel at the hospital that Nichols had been hit with a baton and repeatedly struck in the head and body, even though by that time defendant Mills and Bean knew that Nichols had gone into critical condition.

Later that night, defendant Mills spoke with the other officers who had participated in the assault. Haley repeatedly asked defendant Mills if Mills' body-worn camera had captured Haley's conduct on the scene. Defendant Mills reviewed his footage and told Haley that it only showed Haley approaching the scene. From his conversations with Haley, Martin, Bean, and Smith, defendant Mills understood that they were not going to report that defendant Martin had repeatedly struck Nichols in the head. Defendant Mills understood and agreed that the officers would not report Haley's misconduct.

Defendant Mills joined Martin, Haley, Smith, and Bean in providing false and misleading information and omitting material information in their statements to an MPD Detective tasked with writing the incident report for MPD. Defendant Mills did not tell the Detective writing the report that Bean, Smith, and Martin had struck Nichols, even though defendant Mills knew that information was material. Defendant Mills joined Smith, Bean, Haley, and Martin in providing false and misleading information to their MPD supervisor and to the MPD Detective writing the incident report because he wanted to cover up that officers had used unlawful force on Nichols.

Defendant Mills submitted an MPD Response to Resistance Report that provided a false and misleading account of the force used on Nichols. In his report, defendant Mills claimed that

Nichols "began to fight officers" at the scene of the traffic stop, even though defendant Mills had not been present for the traffic stop. Defendant Mills falsely claimed that he saw Nichols "aggressively resisting" Bean and Smith. Defendant Mills admitted that he deployed pepper spray, but falsely claimed that he did so because Nichols "continued to resist Officers Bean and Smith aggressively." Defendant Mills admitted to his using his baton on Nichols, but falsely described only a single "strike", even though defendant Mills knew that he had repeatedly struck Nichols with the baton. Instead of admitting that he had seen Martin repeatedly punch Nichols in the head while Nichols was restrained by Bean and Smith, defendant Mills reported only that "Nichols was eventually put into custody." Defendant Mills provide this false and misleading information, and omitted material information, in an attempt to cover up that officers had used unlawful force on Nichols. Defendant Mills understood from his experience working with SCORPION Team One officers, and from his conversations with Bean, Smith, Haley, and Martin, that no one was going to admit that unlawful force had been used on Nichols.

Smith later called defendant Mills and told him that Haley and Martin had kicked Nichols in the head. Smith said that it was "f—ked up" that Haley and Martin kicked Nichols in the head. "It wasn't personal" Smith told defendant Mills. Defendant Mills understood from talking to Smith that investigators had confiscated the shoes worn by Haley, Martin, Smith, Bean, and Mills because of these kicks to the head.

Defendant Mills acknowledges that he is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Indictment, which charges a violation of 18 U.S.C. § 242 for Deprivation of Rights Under Color of Law: Excessive Force and Failure to Intervene. Regarding Count One, defendant Mills admits that he willfully used unreasonable force against Tyre Nichols while acting under color of law as an MPD Detective and that his status as a police officer made

the assault possible. Defendant Mills further admits that he aided and abetted Martin, Bean, Haley, and Smith in the use of unreasonable force in violation of Nichols' rights under the Fourth Amendment. Finally, defendant Mills admits that he failed to intervene in the use of unreasonable force by Martin, Smith, and Bean, despite having an opportunity and the means to intervene in the assault. Defendant Mills admits that these violations of section 242 resulted in bodily injury to, and the death of, Tyre Nichols.

Defendant Mills acknowledges that he is guilty and will knowingly and voluntarily enter a plea of guilty to Count Three of the Indictment, which charges a violation of 18 U.S.C. § 1512(k) for Conspiracy to Witness-Tamper. Regarding Count Three, defendant Mills admits that he agreed with Bean, Smith, Haley, and Martin to knowingly engage in misleading conduct towards their supervisor, an MPD Detective tasked with writing the Incident Report, and other persons, with the intent to hinder, delay, and prevent the communication to a federal law enforcement officer and judge of the United States of truthful information relating to the commission of the federal offense charged in Count One. Specifically, in relation to statements defendant Mills and his co-conspirators made to MPD officers regarding the arrest of Tyre Nichols, they conspired to intentionally withhold and omit material information and to knowingly make false and misleading statements, all to cover up their use of unreasonable force on Nichols.