IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR. No. 23-20191-MSN |
| | ) | |
| v. | ) | |
| | ) | |
| EMMITT MARTIN III, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY OF DEMETRIUS HALEY'S STATEMENTS**

Defendant Haley seeks to compel the United States to identify prior to trial any statement he made that is admissible at trial as the statement of a party opponent under Fed. R. Evid. 801(d)(2).  Defendant Haley acknowledges that the United States has provided these statements in discovery and has attempted to guide his review of this discovery, but he still asserts that the government has not adequately identified the defendant's statements.  The Court should deny the motion because the United States has provided extensive discovery, including videotape, FBI-302s, text messages, and grand jury transcripts documenting the defendants' statements. The law does not require the government to additionally specify prior to trial what testimony witnesses will provide at trial.  Neither the record in this matter nor the relevant legal authority supports the defendant's motion to compel.

## Background

On January 7, 2023, Tyre Nichols was the subject of a traffic stop by Memphis Police Department (MPD) officers, including two of the defendants.  According to the officers, they stopped Nichols because he was speeding and committing traffic infractions.  The officers pulled

Nichols from his car; repeatedly threatened him, including by threatening to "knock [his] a** out"; and used force on him following the traffic stop. Nichols, as captured on body-worn camera footage, protested that the officers were "doing a lot" and said that he was "just trying to go home." When the officers continued to use force, Nichols ran from the scene. Officers, including the remaining defendants, pursued him. When the defendants caught Nichols, they struck, batoned, and kicked him. As defendant Haley arrived at the scene, he yelled "beat that man," ran up to Nichols, and kicked him. Nichols was transported to the hospital where he succumbed to his injuries and died three days later.

    After the defendants beat Nichols, the defendants stayed at the arrest scene and discussed amongst themselves striking Nichols and hitting him with "haymakers" and "pieces," which, according to witnesses, are both references to punches. The defendants also discussed "rocking" Nichols, which witnesses have also explained means striking. Body-worn camera footage captures many of these conversations. Defendant Smith said that he "hit" Nichols "with so many pieces" and that "we took turns giving that man pieces." Defendant Smith described the blows as "pop, pop, pop," and said that defendant "Bean was rocking, then I jump in and start rocking." Defendant Martin said, "Man, I was hitting him with straight haymakers, dog. Man, come on now. I'm rocking him though." He added that "everybody rocking [Nichols'] ass" and, as the beating continued, he admitted that the thought "we about to kill this motherfucker." During this conversation, defendant Bean described Nichols as "eating" the blows.

    The United States has provided, among other materials, (1) video footage capturing the defendants' actions and statements; (2) interview reports and testimony of multiple eyewitnesses identifying statements captured on the video and attributing those statements to particular speakers, including defendant Haley; (3) the names of specific videos with time stamps containing

statements attributed to the defendants by witnesses; (4) text messages between and among the defendants and others containing statements by the defendants; and (5) a detailed factual basis from a co-defendant who entered a guilty plea. In response to defense counsel's requests, the undersigned have attempted to assist defense counsel in reviewing and understanding discovery materials, including by conferring over the phone, by email, and in person.

## Argument

Defendant Haley has styled his motion as a motion to compel discovery, but, as he acknowledges, the United States has provided him with discovery. His request is rather for the United States to detail, four months before trial, the precise testimony it plans to present. The law does not require the United States to provide final details now on the testimony that it will present at trial. There is no basis in fact or in law for the motion, and it should be denied.

**I.     The government has produced the defendant's statements as captured on video, recorded in grand jury proceedings, and documented in reports.**

The United States has provided the defendant with far more notice of which defendant statements it is likely to introduce at trial than is required by any law or rule. The Indictment identifies—in more detail than is required in a federal indictment—statements by the defendants that, as statements made in furtherance of the conspiracy, are admissible against each and every member of the conspiracy, including defendant Haley. *See* Fed. R. Evid. 801(d)(2)(E). These statements are admissible against defendant Haley whether he or one of his co-conspirators made the statement.[1] For example, where, as the discovery in this case makes clear, defendant Smith

---

[1] *See, e.g., United States v. Martinez*, 430 F.3d 317, 325 (6th Cir. 2005) (quoting Fed. R. Evid. 801(d)(2)(E) for the proposition that "[a] statement is not hearsay if it is offered against a party and is 'a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.'"); *United States v. Rivera*, 136 F. App'x. 925 (7th Cir. June 16, 2005) 2005 WL 1412033, at *1 (unpublished) ("But any statement made by a conspirator during, and in furtherance of, a conspiracy is admissible against all co-venturers. Whether any other conspirator heard (or, in this instance, saw) that statement is irrelevant; agency, not knowledge is the theory of admissibility.").

said to his co-conspirators at the arrest scene that he hit Nichols with "so many pieces" and defendant Martin admitted that he hit Nichols with "straight haymakers," those statements are admissible as substantive evidence against the remaining members of the conspiracy, including defendant Haley. *See* Fed. R. Evid. 801(d)(2)(E). From the very beginning of this case, with the Indictment, the government identified statements by defendants that it will seek to introduce at trial.

These statements by defendants were provided months ago in discovery. This extensive discovery included FBI-302s and grand jury transcripts that documented conversations involving defendant Haley. A review of the discovery in this case shows, for example, that when defendant Haley learned that defendant Martin and others were chasing Nichols, defendant Haley said to another officer that he hoped officers beat Nichols. When defendant Haley arrived on the arrest scene, he yelled: beat that man! Defendant Haley then joined in the assault of Nichols. After the beating, defendant Haley admitted to friends and to a co-conspirator that he kicked Tyre Nichols, a fact that he did not include in his report for MPD. Discovery further shows that, when asked by another officer in the aftermath of the Nichols beating, "who beat dude up last night," defendant Haley responded, "Us."

The government has additionally produced body-worn camera footage that captured video and audio of statements made by defendant Haley and his co-conspirators moments after they beat Tyre Nichols. Witnesses who personally heard these statements and who later reviewed body-worn camera footage containing these statements will testify to what each defendant said. *See* Fed. R. Evid. 901(b)(5) (providing as a method for authentication "[a]n opinion identifying a person's voice – whether heard firsthand or through mechanical or electronic transmission or recording – based on hearing the voice at any time under circumstances that connect it with the

alleged speaker").

As to defendant Haley's claim that he cannot discern on the video some of the statements attributed to him, the government has produced FBI-302s, grand jury transcripts, and plea documents that provide specific references to statements made by defendant Haley and his co-conspirators. Government counsel previously identified several of those records for review by counsel for defendant Haley. Similarly, government counsel has identified a time range – a matter of a few minutes on body-worn footage – that counsel for defendant Haley may focus on in order to hear the most significant conversations between the members of the conspiracy. The "50+ hours" of footage referenced by defendant Haley in his motion to compel includes footage that is duplicative, as multiple body-worn cameras provided overlapping coverage of the same conversations. Finally, defendant Haley can identify the speakers on video as he worked with his co-defendants and personally participated in the conversations captured on video. The government is confident of this as it has produced discovery generated by witnesses who have readily identified the speakers and the statements that they made on video. To the extent that these witnesses disagree – for example, where one witness may believe that video captured defendant Haley saying "Beat that man!" before Haley kicked Nichols while another witness may believe that the same video captured Haley saying "Beat that man's ass!" – defense counsel may address that on cross-examination at trial. There is no basis in law to demand now that the parties reach agreement on the significance of evidence the jury is equipped to assess at trial. *Cf. United States v. Young*, 553 F. App'x 585, 589 (6th Cir. 2014) (refusing to find Rule 16 violation where government made audio recording available for inspection prior to trial and then, without given the recording to the defendant, used recording at trial to lay a foundation for a witness's voice identification).

**II.     The defendant failed to identify any authority that supports his motion to compel the government to select all of the defendant's statements it will seek to introduce at trial. Instead, the government need only provide those statements to the defense in discovery.**

The defendant has not offered any authority that supports his demand that the government must, months in advance of trial, specifically identify all of the defendants' statements that it intends to present at trial. To the contrary, the Sixth Circuit has made clear that the government is "not charged with the duty" of instructing a defendant as to *the content* of evidence it has disclosed prior to trial, so long as the government properly discloses the evidence. *United States v. Jamal*, 246 F. App'x 351, 362 (6th Cir. 2007) (refusing to find discovery violation or any error where government disclosed document to defendant prior to trial and explaining: "If the defense hoped to learn what [information in the document] meant, it could have made an attempt to do so prior to trial, as it had all of the information contained in the document at its disposal.").

Defendant Haley cites Rule 16(a)(1), but Rule 16 provides only that the government must disclose to the defendant any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control. Here, as noted above, the government has provided body-worn camera footage, FBI-302s, phone records, plea documents, and grand jury transcripts that capture statements by defendant Haley and his co-conspirators that the government may seek to introduce at trial. The government will continue to meet its discovery obligations as the parties prepare for trial.

The defense cites *United States v. Scarborough* as support for his motion to compel, but that case provides only that the trial court may exercise its discretion in resolving a dispute over the accuracy of a transcript that purports to capture a recorded conversation involving the defendants. Neither *Scarborough* nor Rule 16 supports the defendant's demand that the government must identify all of his admissible out-of-court statements at this time. To the

contrary, federal courts have held that the government does not have any obligation to identify such statements in advance of trial. *See, e.g.*, *United States v. Gilbert*, 181 F.3d 152, 162 (1st Cir. 1999) (refusing to agree with defendant that she was "ambushed" by positive voice identification testimony where government provided audio recording in discovery).

Finally, the government anticipates calling a former co-conspirator of the defendants to testify regarding his conversations with defendant Haley and the other members of the conspiracy. This witness can identify the speaker on video and testify as to the meaning of the statements made during their conversations. This witness can make these identifications and recount the statements made by each defendant because he was present for conversations at the scene and because he previously worked with the defendants. This witness can also testify to conversations that may not have been captured on video. Statements made by this cooperating witness have been made available in discovery. Other witnesses – friends and colleagues of the defendants – can identify speakers based on their appearance and voices on the video footage. Their statements also have been produced in discovery.

To the extent that any defendant wishes to challenge the testimony of a particular witness, he may do so on cross-examination. Should any defendant wish, as defendant Haley suggests, to retain a voice recognition expert, he may seek to do so, provided he satisfies the relevant authority. In resolving any dispute over the statements captured on the video footage, the jury may then decide whether to credit the defense's retained voice recognition expert or the competing testimony of the defendant's former co-conspirator, supervisors, colleagues, and friends.

## Conclusion

As neither the Federal Rules nor the relevant decisions require the government to commit to precisely identifying each and every one of the defendant's statements that it will seek to

introduce at trial, the defendant's motion to compel should be denied. The government will continue to produce discovery in accordance with its obligations under the Federal Rules, including providing the defense with materials that capture the defendant's statements.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:   s/ Forrest Christian
     FORREST CHRISTIAN
     Deputy Chief
     KATHRYN E. GILBERT
     Special Litigation Counsel
     950 Pennsylvania Ave., NW
     Washington, DC 20530
     (202) 616-2430
     kathryn.gilbert@usdoj.gov

## CERTIFICATE OF SERVICE

    I, Forrest Christian, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

s/Forrest Christian
FORREST CHRISTIAN

January 28, 2024

9