IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR. No. 23-20191-MSN |
| | ) | |
| v. | ) | |
| | ) | |
| EMMITT MARTIN III, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR WRITTEN PROFFER OF STATEMENTS THE GOVERNMENT INTENDS TO SEEK TO ADMIT PURSUANT TO RULE 801(d)(2)(E)**

Defendant Haley seeks to compel the government to provide a written proffer of all statements it contends are admissible against him as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E). (ECF 128). Neither the relevant authority nor the facts presented here support the defendant's motion to compel. Instead, as even the cases cited by the defendant illustrate, this court should follow the preferred and firmly entrenched practice in the Sixth Circuit of conditionally admitting co-conspirator statements, subject to a demonstration of their admissibility by a preponderance of the evidence by the close of the government's case. *See, e.g., United States v. Young*, 847 F.3d 328, 352 (6th Cir. 2017); *United States v. Holloway*, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984) (this method of conditionally admitting co-conspirator statements is "firmly entrenched in this circuit's practice").

Adhering to Sixth Circuit practice makes sense here, because the statements are admissible under other rules of evidence. Out-of-court statements made by a defendant and offered by the government are admissible as statements of an "opposing party." *See* Fed. R. Evid. 801(d)(2)(A).

1

Further, many of the admissions were made during communications with multiple defendants such that they will qualify as adoptive admissions under Rule 801(d)(2)(B). As a result, the statements at issue will be admissible on other grounds before the court needs to address whether they were made in furtherance of the conspiracy. This obviates any need for a pretrial proffer or hearing to determine their admissibility under Rule 801(d)(2)(E).

The facts presented in this case confirm that defendants' statements will be admissible under Rule 801(d)(2)(E). Here, discovery offers ample proof that each of the defendants were members of a conspiracy. All face conspiracy charges following an indictment returned by a grand jury. One of their co-conspirators has pleaded guilty to the conspiracy charge and, in a detailed factual basis, acknowledged that he and his co-defendants were members of a conspiracy. The defendants are captured on videotape discussing evidence that they uniformly withheld from their reports. Documented conversations offer additional evidence that defendants agreed to engage in criminal conduct. The government has not refused to disclose any of the defendants' statements; instead, it provided comprehensive evidence of these statements months ago. By the close of the government's case, there will be overwhelming evidence showing that the defendants were members of a conspiracy, thereby easily satisfying the "by a preponderance" standard for introducing these statements pursuant to Rule 801(d)(2)(E).

## **Background**

On January 7, 2023, Tyre Nichols fled from a traffic stop at which Memphis Police Department (MPD) officers, including defendants Haley and Martin, used force against him. After defendant Haley learned that defendant Martin and other officers were pursuing Nichols, defendant Haley said to another officer at the scene of the failed traffic stop that he hoped the officers beat Nichols. The officer agreed with defendant Haley and similarly expressed his hope that the

pursuing officers would beat Nichols. Following this exchange, defendant Haley left the scene of the traffic stop to join the pursuit of Nichols.

Body-worn camera footage reflects that, after defendants Bean and Smith apprehended Nichols, and as other officers arrived at the scene, defendants urged each other to hit Nichols. Desmond Mills warned that he was going to "baton the fuck out of" Nichols. Defendant Smith said "hit him!" Following these exhortations, defendant Martin repeatedly punched Nichols in the head. When defendant Haley reached the arrest scene, he yelled for his fellow defendants to "beat" Nichols. He and defendant Martin then kicked Nichols.

After beating Nichols, the defendants gathered for a private and – what they mistakenly believed to be – off-camera conversation. Defendant Martin motioned for a co-conspirator to remove his body-worn camera before this conversation occurred. Once the defendants had removed their body-worn cameras and set them aside, they took turns acknowledging the force that they had used on Nichols. Defendant Martin bragged about "rocking" (according to MPD officer-witnesses, "rocking" means "beating") Nichols and hitting him "with straight haymakers." He added to the group of defendants that "everybody rocking his ass." No one disagreed. Defendant Smith claimed to have "hit" Nichols "with so many pieces" (punches, according to MPD witnesses) and said that both he and defendant Bean were "rocking" Nichols. Defendant Bean added that Nichols was "eating" the blows but would not fall down. Mills, who has pleaded guilty in this case, added that he hit Nichols with his baton. This conversation, which is captured on video, lasted for approximately five minutes. Around the same time, defendant Haley took trophy photos of a bloody and battered Nichols, slumped on the ground in front of a police car. Defendant Haley forwarded his trophy photos to multiple individuals, including other officers.

3

After a detailed, on-scene conversation about the extent of the beating that they had inflicted on Nichols, the defendants chose to withhold this critically important information from EMTs, nurses, doctors, MPD supervisors, and, later, the MPD officer tasked with writing an official report for the incident. Defendants coordinated their stories with each other by confirming, for example, that defendant Bean's body-worn camera did not capture the incident and did not capture defendant Haley's arrival at the arrest scene. The defendants then provided inaccurate, incomplete, and misleading accounts to MPD. While the defendants' accounts generally matched each other, they did not accurately or fully reflect what was captured on video and discussed in their defendants-only conversations.

The defendants were charged with federal civil rights, obstruction, and conspiracy offenses. The Indictment included multiple overt acts, each providing additional details regarding the defendants' involvement in the conspiracy. Since then, Mills has pleaded guilty to the civil rights and conspiracy charges. Pursuant to his guilty plea, Mills has admitted that he conspired with the remaining defendants in this case.

In discovery, the United States has provided, among other materials: (1) video footage capturing the defendants' actions and statements; (2) interview reports and testimony from multiple eyewitnesses identifying statements and actions captured on the video and attributing those to particular defendants; (3) time stamps for videos containing statements and actions attributed to the defendants by witnesses; (4) text messages from and between the defendants; (5) interview reports and grand jury transcripts for witnesses who secured relevant admissions from defendants; and (6) a detailed factual basis from a co-defendant who entered a guilty plea. The United States has not refused to produce any defendant's statements; instead, it has provided those statements to defendants in discovery.

**Argument**

I.  **The defendants' statements are admissible as the statements of a party opponent and as adoptive admissions.**

The co-conspirator statements are admissible against the defendants under other rules of evidence. Accordingly, the court need not deviate from the Sixth Circuit's preferred practice of conditionally admitting co-conspirator statements, subject to a demonstration of their admissibility by a preponderance of the evidence at the close of the government's case.

First, out-of-court statements made by a defendant are not hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). Accordingly, any statement made by any defendant is admissible against that defendant at trial. For example, defendant Haley's admission that he kicked Tyre Nichols is admissible against him at trial. Similarly, defendants Martin and Smith have admitted to punching Nichols, statements that are also admissible under Rule 801(d)(2)(A). The government has provided defendants with extensive discovery detailing the defendants' admissions, including grand jury transcripts, FBI-302s, text messages, and recorded conversations. The government has not refused to turn over any statement by the defendants and it will continue to meet its discovery obligations.

Second, the defendants' statements to one another are also admissible against *all* of the defendants as adoptive admissions. *See* Rule 801(d)(2)(B) (statements offered against an opposing party and which "the party manifested that it adopted or believed to be true" are nonhearsay). Defendants made admissions of unlawful conduct during conversations with their co-defendants. The defendants not only failed to object to one-another's incriminating statements but also offered details during the conversation that directly implicated them in the crime. Where a defendant's statement, silence, or conduct may be reasonably construed as manifesting his assent to the truth of the statements of his co-defendant, adoptive admissions are admissible against both defendants.

5

*United States v. Watson*, 552 F. App'x 480, 486 (6th Cir. 2014) ("A statement that would otherwise be inadmissible hearsay is admissible against a party if it is a statement 'the party manifested that it adopted or believed to be true.' A party may manifest an adoption of a statement through language, conduct, or silence.") (quoting Fed. R. Evid. 801(d)(2)(B)). For example, in a conversation in which: (1) defendants Smith and Martin admitted to punching Nichols, (2) defendant Smith asserted that both he and Bean were "rocking" Nichols, and (3) defendant Bean acknowledged that Nichols was "eating" punches without falling, these admissions are plainly admissible against all three defendants.

These statements fall squarely within the Sixth Circuit's definition of adoptive admissions, because "an innocent defendant would normally be induced to respond" to such statements if they were false, and "there are sufficient foundational facts from which the jury could infer that the defendant[s] heard, understood, and acquiesced in the statement[s]." *Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997) (quoting *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996)). Furthermore, although the United States anticipates that testifying witnesses will be able to provide voice identifications and attribute many of these statements to particular defendants, the adoptive admissions rule does not require any such specific identification. So long as a witness can testify that *one* of the defendants made the statements and the others acquiesced in them, the statements are admissible against all defendants. *See id.* (refusing to find error where officer-witness testified about two defendants laughing and bragging about criminal conduct, even where the witness could not identify which defendant made which statement).

Knowledge of these admissions by a defendant is also relevant evidence to establish that a non-speaking defendant was aware of the conduct of his co-defendants, evidence that may prove a violation of 18 U.S.C. § 242. For instance, video footage showing that defendant Haley was

6

present when other defendants admitted to striking Nichols is direct evidence that Haley knew that Nichols had a serious medical need as an apparent result of the use of force by his co-defendants.

Against this backdrop, there are multiple bases for introducing statements by the defendants before considering whether a statement is *also* admissible as a statement in furtherance of the conspiracy. In fact, the court may not need to even consider Rule 801(d)(2)(E), as the statements will be admissible on other, simpler grounds. This is worth noting as the defense now suggests a more cumbersome and inefficient path to determining months in advance of trial whether a defendant's statement is admissible. *See, e.g., United States v. Stone*, 2011 WL 17613, *6 (E.D. Mich. 2011) (noting that "if the Government offers out of court statements under an exception other than co-conspirator exception, it will be a waste of judicial resources to hold an *Enright* hearing") (*citing United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979)).

II. **In keeping with the Sixth Circuit's preferred practice, this Court should resolve at trial whether a defendant's statement is admissible as a statement in furtherance of the conspiracy.**

Should the government seek at trial to introduce a particular statement as a statement made in furtherance of the conspiracy, it bears the burden of establishing by a preponderance of the evidence that the defendants were members of a conspiracy. *United States v. Childs*, 539 F.3d 552, 558-59 (6th Cir. 2008). The Sixth Circuit has held that, for Rule 801(d)(2)(E) purposes, the "key" to "determining whether a conspiracy existed" is "coordinated action." *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022).[1] The Sixth Circuit has stressed that "the alleged conspiracy [for this purpose] need not be the same as the one charged." *Id.* (collecting Sixth Circuit cases, and

---

[1] *See also* 29A Am. Jur. 2d Evidence § 847 (West 2010) (noting that "the concept of conspiracy as used in an evidentiary rule is different from the concept of conspiracy as a crime" and that co-conspirator statements are admissible where "the party opponent was engaged in joint venture with third parties").

7

emphasizing that "[i]n fact, there need not even be a conspiracy charge in the case for Rule 801(d)(2)(E) to apply").

### A. Discovery provided the defense with overwhelming evidence that the defendants were members of a conspiracy.

The defendants are well aware that there is significant evidence of their involvement in a conspiracy. There is a conspiracy charge in the Indictment, and one defendant has already pleaded guilty to it. *Musaibli*, 42 F.4th at 615 (noting that "an indictment can be instructive to the analysis under Rule 801(d)(2)(E)"). Discovery shows that, from the outset, the defendants worked together to try to cover up their use of unlawful force on Tyre Nichols. Video footage shows that the defendants gathered after beating Nichols and acknowledged to each other that they had repeatedly struck Nichols. *Musaibli*, 42 F.4th at 619 ("[S]tatements which identify the participants and their roles in the conspiracy are made 'in furtherance of the conspiracy.'") (citation omitted). Once the defendants confirmed that each defendant had reason to cover up their involvement in the use of unlawful force on Nichols, the defendants decided to withhold that information from the radio dispatcher, first responders, and MPD officers at the arrest scene. Rather than tell the EMTs that defendants had punched and kicked Nichols, defendants misled the EMTs by claiming, without evidence, that Nichols was suffering a medical emergency because he was on drugs. Defendants similarly misled their supervisor when he arrived on the scene.

Next, defendants communicated with each other, including by text, to make sure that they coordinated their cover story and prevented others from discovering the extent of the force that they had used on Nichols. The defendants submitted false and misleading reports that minimized or omitted entirely the force used on Nichols. *See id.* at 616 (observing that the "documents alone" were "probative of both a coordinated effort" by the conspirators and the defendant's involvement in the conspiracy). At trial, the government will provide an inside account of this conspiracy with

8

the testimony of a former conspirator who has entered a guilty plea. *Id.* (recognizing the "unique – perhaps even extraordinary" value of a cooperating witness in determining the existence of a conspiracy and the defendant's membership within it). Materials for this cooperating witness, including a detailed factual basis and an FBI-302, have been provided to the defense.

The court also may find coordinated action by the defendants in the assault itself. At the traffic stop, defendant Haley and another officer discussed their hope that the officers – including defendant Martin – who were pursuing Nichols would beat him. At the arrest scene, defendants seized Nichols and, rather than handcuff him, urged each other to hit Nichols. Defendant Martin responded by repeatedly striking Nichols in the head while he was held by defendants Bean and Smith. When defendant Haley arrived on the arrest scene, he also exhorted officers to beat Nichols. Defendants Haley and Martin then did just that, this time by kicking Nichols.

Discovery shows that defendants, as members of Scorpion Team 1, understood and agreed that those citizens, like Tyre Nichols, who fled from the police could be punished with the use of retaliatory force. Evidence of coordinated action by defendants to impose what officers called a "street tax" on Nichols by assaulting him shows that they were aware of the object of the conspiracy and that they voluntarily associated themselves with it to further the conspiracy's objectives, thereby proving the existence of a conspiracy. *Id.*; *see also Young*, 847 F.3d at 353. The defendants have been provided with discovery that includes evidence of an agreement to impose a "street tax" on those who ran from the police.

> **B. This Court should follow the Sixth Circuit's preferred practice for admitting co-conspirator statements rather than the inefficient and burdensome alternative suggested by defendant Haley.**

Defendant Haley submits that the Sixth Circuit has recognized that there are three different approaches to confirming the admissibility of a statement pursuant to Rule 801(d)(2)(E). While

that is true, the Sixth Circuit also has made it clear that it favors one of those approaches: conditionally admitting the statements subject to a later demonstration of their admissibility by a preponderance of the evidence. *See Young*, 847 F.3d at 353-5 (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994) (stating district court may defer its Rule 801(d)(2)(E) findings until the close of the government's case); *Holloway*, 740 F.2d at 1375 n.2 (this method of conditionally admitting co-conspirator statements is "firmly entrenched in this circuit's practice"); *see also United States v. Coffman*, 2010 WL 3924671, *2-3 (E.D. Ky. September 29, 2010) (finding that conditional admittance of the statements is "supported by extensive case law which shows trial judges in this circuit choosing the third option and having that decision expressly affirmed by the Sixth Circuit Court of Appeals.") (collecting cases).[2]

Rather than follow the preferred practice in the Sixth Circuit, the defendant cites a district court decision from Michigan as the basis for his motion to compel. However, even this case, *United States v. Mills*, No. 16-CR-20460, 2019 WL 77032 (E.D. Mich. Jan. 2, 2019), recognized that "it is the general and preferred practice within this circuit" to conditionally admit the hearsay statements subject to a later demonstration of their admissibility. The court in *Mills* further

---

[2] *See also United States v. Coffman*, 2010 WL 3924671, *2-3 (E.D. Ky. September 29, 2010) (Finding that conditional admittance of the statements is "supported by extensive case law which shows trial judges in this circuit choosing the third option and having that decision expressly affirmed by the Sixth Circuit Court of Appeals.") (collecting cases); *United States v. Norwood*, 2014 WL 1795560, *2-3 (E.D. Mich. May 6, 2014) (rejecting an *Enright* hearing as "burdensome, time-consuming and uneconomic," finding a pretrial proffer to be "unduly burdensome" in a multi-defendant conspiracy case, and recognizing the Circuit's "preference" for conditionally admitting the statements at trial); *United States v. Driver*, 2011 WL 761496, *6 (E.D. Mich. Feb. 25, 2011) ("It appears that the general practice is to conditionally allow the admission of co-conspirator statements…"); *United States v. Johnston*, 2013 WL 3423268, *3 (E.D. Ky. July 8, 2013) ("conditionally admitting the text messages will be the most efficient method, and the method that appears to be most widely used in this circuit's practice"); *United States v. White*, 2008 WL 686227, *3 (Mar. 6, 2008) ("The more practical approach, and the one customarily adopted by this district, is the third option listed, which has been to permit the government to present the … statements… subject to a later demonstration of their admissibility by a preponderance of the evidence.").

acknowledged that one of the alternative paths, a pretrial hearing, is "often criticized as being 'burdensome, time-consuming, and uneconomic.'" *Id.* at *4.

While the Michigan district court decided to depart from the Sixth Circuit's preferred practice and instead order the government to submit an offer of proof identifying alleged co-conspirator statements it contemplated introducing at trial, it did so only because of the facts presented in that case; as a result, *Mills* may be readily distinguished from the instant matter.

In *Mills*, eleven defendants were charged, five pleaded guilty, and the remaining six defendants were separated into two groups with separate trial dates. *Id.* at *1. Two defendants objected to the potential introduction of statements made by co-conspirators. Separate trials no doubt raised the prospect of the government introducing co-conspirator statements that would only be admissible as statements made in furtherance of the conspiracy. *Id.* That prospect is unlikely here, however, where the defendants will be tried together and, as noted above, the statements at issue will be admissible as statements of a party opponent and/or as adoptive admissions.

In addition, the out-of-court statements in *Mills* were made by co-conspirators who were members of a street gang in Detroit that sold and distributed controlled substances across five states. "As commentators and courts alike have noted, large conspiracies will necessarily encompass a greater number of statements under Rule 801(d)(2)(E)." *Musaibli*, 42 F.4th at 618. For large conspiracies, where defendants did not participate in all of the relevant communications, Rule 801(d)(2)(E) may be the sole vehicle by which the government may bring out-of-court statements into evidence. *Id.* This is not case here, however. In contrast to the wide-ranging conspiracy in *Mills* that involved street gang members involved in a Racketeering Influenced and Corrupt Organizations Act (the "RICO" Act) case, the vast majority of the statements at issue here were made with defendants communicating directly with each other over a short period of time.

11

As a result, many of the statements here – involving communications between and among multiple defendants – are admissible both as statements of a party opponent and as adoptive admissions. These communications accordingly do not present the same evidentiary concerns that the trial court worried about in *Mills*.

The defense in *Mills* sought to distinguish that case from the Sixth Circuit's preferred practice by contending that a different approach was warranted where the two defendants faced a potential death sentence, which required the court to "adhere to heightened standards of reliability and fact-finding." *Id.* at *4. The instant matter is not eligible for the death penalty. Nor does this court face the same concerns regarding reliability and fact-finding presented in *Mills*, with its potential for the introduction of testimony of cooperating street gang members recounting past conversations which the two defendants at trial may not have joined. Here, communications between the defendants are recorded on video, captured on text messages, documented in reports and grand jury transcripts, and corroborated by current and former police officers.

Finally, defendant Haley maintains that a court order compelling the government to specifically identify *all* co-conspirator statements that it would seek to introduce at trial months from now will require "virtually no extra effort on behalf of the United States." Def. Mot. to Compel, at 4. Even the *Mills* decision cited by defendant Haley as the basis for his motion recognized, however, that such a request would be "burdensome and time-consuming" for the government. *Mills,* at *4. Most importantly, it is entirely unnecessary and unwarranted under the facts presented here, which are easily distinguished from those presented in *Mills*.

## Conclusion

Neither Sixth Circuit precedent nor the circumstances presented here warrant compelling the government to commit, months in advance of trial, to a specific subset of the defendants'

12

statements that will be admissible by the close of the government's case. Such an order is wholly unnecessary and unfair where the government has provided extensive discovery proving the existence of a conspiracy and there are multiple, alternative bases for introducing the defendants' statements at trial. The Court should follow the preferred practice of the Sixth Circuit and, to the extent that it proves necessary to introduce a statement pursuant to Rule 801(d)(2)(E), it may consider such a request at trial.

      Respectfully submitted,

      KEVIN G. RITZ
      United States Attorney

      DAVID PRITCHARD
      ELIZABETH ROGERS
      Assistant United States Attorneys
      167 N. Main Street, Ste. 800
      Memphis, TN 38103

      KRISTEN CLARKE
      Assistant Attorney General
      Civil Rights Division
      U.S. Department of Justice

By:   <u>s/ Forrest Christian</u>
      FORREST CHRISTIAN
      Deputy Chief
      KATHRYN E. GILBERT
      Special Litigation Counsel
      950 Pennsylvania Ave., NW
      Washington, DC 20530
      (202) 616-2430
      kathryn.gilbert@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Forrest Christian, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

s/Forrest Christian  
FORREST CHRISTIAN

January 30, 2024