IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2:23-cr-20191-MSN |
| ) | |
| ) | |
| EMMITT MARTIN, III, et al., ) | |
| ) | |
| Defendants. ) | |

RESPONSE IN OPPOSITION
TO DEFENDANT HALEY'S MOTION FOR A CHANGE OF VENUE

The United States respectfully opposes the Defendant's Motion for a Change of Venue or Alternative Relief. (RE 131). The Defendant has failed to meet his heavy burden to demonstrate presumptive pretrial jury prejudice on any basis, including negative publicity. The use of a juror questionnaire, rigorous voir dire, and focused jury instructions are more than sufficient to address the Defendant's concerns. His motion should be denied.

**Factual and Procedural Background**

A.  Factual Background

On January 7, 2023, Tyre Nichols was the subject of a traffic stop by Memphis Police Department (MPD) officers, including two of the defendants. According to the officers, they stopped Nichols because he was speeding and committing traffic infractions. When the officers used force, Nichols ran from the scene. The officers, joined by the remaining defendants, pursued him. When the defendants caught Nichols, they struck, batoned, and kicked him, including in the head. Nichols was transported to the hospital where he succumbed to his injuries and died three

days later.

Local news media began reporting on Nichols' arrest shortly after he was hospitalized. After Nichols' death, the story became a topic of national news and was widely covered by print and broadcast media. On January 25, 2023, the State criminally charged the defendants in connection with Nichols' death. On January 27, 2023, just under three weeks after Nichols' arrest, MPD released SkyCop and some body-worn video footage of the arrest. Local and national news media reported extensively on this footage, as well as on the personnel and policy actions taken by MPD and other law enforcement entities in the wake of Nichols' death. On September 12, 2023, the defendants were federally charged. (RE 1).

B. Procedural History

The federal indictment charges each defendant with four felony counts stemming from the Nichols arrest. Count One charges the defendants with, while acting under color of law, willfully violating Nichols' Fourth Amendment right to be free from the use of unreasonable force by a police officer, resulting in his injury and death, in violation of 18 U.S.C. § 242. Count Two charges the defendants with violating the same statute by, while acting under color of law, willfully violating Nichols' Fourteenth Amendment right to be free from police officers' deliberate indifference to his serious medical needs, resulting in his injury and death. Count Three charges the defendants with conspiring to engage in witness-tampering by conspiring to withhold truthful information and to provide misleading information to their supervisor and others, in violation of 18 U.S.C. § 1512(k), while Count Four charges the defendants with so doing by in fact withholding information and providing false and misleading information to their supervisor and others, in violation of 18 U.S.C. § 1512(b)(3). (RE 1).

Trial in the case is set for May 6, 2024. (RE 51). Defendant Bean has previously moved

for a change of venue, or, in the alternative, an expansion of the venire. (RE 119). The Government filed a Response in Opposition. (RE 132). The Government incorporates that response fully herein.

**Law**

In addition to the cases and analysis in our Response at RE 132, the Government would point this Court to the line of cases dealing with the events at the Capitol on January 6, 2023. Courts handling those cases have uniformly rejected requests for change of venue, holding that adequate voir dire is the proper safeguard against jury prejudice. *See United States v. Eicher*, No. 22-cr-0038, 2022 WL 11737926 (D.D.C. Oct. 20, 2022); *United States v. Ballenger*, No. 21-cr-0719, 2022 WL 16533872 (D.D.C. Oct. 28, 2022).

The Supreme Court in *Skilling v. United States*, 561 U.S. 358, 378, 381 (2010) set out a three factor test to guide the inquiry into whether prejudice should be presumed before voir dire. Those factors are (1) the "size and characteristics of the community in which the crime occurred"; (2) whether press coverage of the crime "contain[s] [a] confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight"; and (3) the time that elapsed between the crime and the trial. 561 U.S. at 382–83. In applying the *Skilling* factors the courts presiding over the January 6 cases have uniformly denied change of venue motions, finding that the defendants failed to establish extraordinary local prejudice that would prevent a fair trial. *See, e.g.*, *Eicher*, 2022 WL 11737926, at *1 (denying motion to transfer by defendant charged in connection with January 6, 2021 "[l]ike every other court of this jurisdiction to consider the same argument").

In *United States v. Coffee*, 2023 WL 4450443 (D.D.C. July 11, 2023) the defendant moved for a change of venue, arguing that the District of Columbia's population of approximately 690,000 weighed in favor of a presumption of prejudice. The defendant claimed that it would be

3

"impossible" for prejudice not to attach. As the court pointed out, the *Skilling* court itself "recognized a 'reduced likelihood of prejudice where [the] venire was drawn from a pool of over 600,000 individuals.'" *United States v. Brock*, No. 21-cr-0140, 2022 WL 3910549, at *6 (D.D.C. Aug. 31, 2022) (quoting *Skilling*, 561 U.S. at 382); *see also United States v. Rhodes*, No. 22-cr-0015, 2022 WL 2315554, at *21 (D.D.C. June 28, 2022) (listing examples, including *Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991), in which the Supreme Court found no presumption of prejudice despite a jury pool of only approximately 182,000). As every other court to consider the question in connection with a January 6 prosecution held, the court in *Coffee* found that the size of D.C. did not weigh in favor of a presumption of prejudice. *Id.* at *3.

The defendant in *Coffee* also claimed that D.C. residents had been exposed to more local coverage about January 6 than residents of comparable districts, arguing that "District of Columbia newspapers have *already* published at least 500 articles about January 6, and local news syndicates have broadcast over 7000 stories about the day." (emphasis in original). The court observed as a general matter that local outlets do cover local crimes more than non-local outlets. It also noted that "much of the coverage of the events of January 6 has been national, not local, in nature." *Id.* As a result, the "influence of that coverage would be present wherever trial is held." *Id.*; *see also United States v. Chapin*, 515 F.2d 1274, 1288 (D.C. Cir. 1975) ("[P]recedent demands that the court take into account whether the publicity is sufficiently localized that potential jurors in another area would be free of any taint from exposure to the press, enabling the change to serve its purpose."); *Eicher*, 2022 WL 11737926, at *3 ("[M]ost communities throughout the country have been exposed to the exact same coverage."). The court found that "[t]he mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity." *Id.*

4

Finally, the defendant in *Coffee* pointed to the results of a survey and media analysis by Select Litigation, which had been commissioned by the defense to bolster his argument that press coverage had rendered D.C. residents incapable of reaching an impartial verdict. The court did not find the survey to be persuasive evidence that would support a decision to transfer the case without trying the voir dire process first. *Id.* at *4.

## Analysis

The Defendant in this case has failed to meet his heavy burden of demonstrating local prejudice so severe and widespread as to justify his prediction that an impartial jury cannot be impaneled. His alternative requests for relief are premature at best. The Defendant cannot establish presumptive prejudice, and the use of the juror questionnaire the Court has already indicated that it plans to use, *see* RE 113, together with a rigorous voir dire and focused jury instructions is more than adequate to address his concerns. The motion should therefore be denied.

It is undisputed that cases of presumptive prejudice are rare. *Mammone v. Jenkins*, 49 F.4th 1026, 1043 (6th Cir. 2022) (quoting *Murphy v. Florida*, 421 U.S. 794, 798 (1975)), *cert. denied*, 143 S. Ct. 2568 (2023). Under the applicable analysis, adequate voir dire, including the use of a juror questionnaire, should be sufficient to impanel an impartial jury. As the Defendant acknowledges, the population of the four counties of the Western Division from which the venire will be drawn is 1,057,847. (RE 131, PageID 455). This is almost twice the population size found sufficient in the January 6 cases. *See Rhodes*, 2022 WL 2315554, at *21 (D.D.C. June 28, 2022). "Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Skilling*, 561 U.S. at 382.

Second, the extent of the media coverage in this case militates strongly against finding presumptive prejudice. In *Coffee,* publication of approximately 7,000 stories about the events of January 6 was insufficient to establish presumptive prejudice. *Id.* at *3. The factual (*e.g.*, video footage of the charged conduct) and opinion (*e.g.*, officials' and experts' opining on the charged conduct) reporting cited by the Defendant in this case amounts to no more than the type of "intense pretrial publicity" that is not enough to make a trial unfair. *Eicher*, 2022 WL 11737926, at *3. In *United States v. Ballenger*, 640 F. Supp. 3d 34 (D.D.C. 2022), the court noted that in cases involving crimes of national interest featuring coverage that is "national in reach," "a change of venue [is] of only doubtful value." *Id*. at 36–37. "The fact that there has been ongoing media coverage of the breach of the Capitol and subsequent prosecutions, both locally and nationally, means that the influence of that coverage would be present wherever trial is held." *Id*. Such is true in this case.

Further, all the Defendant can do here is offer speculation that media coverage of the case has created a presumptive prejudice. The Defendant in *Coffee* had conducted a survey, which indicated the existence of some level of prejudice in the venire. However, the court still found that degree of evidence unpersuasive. *Coffee* at *4.

The final factor to consider is the amount of time elapsed between the underlying conduct and the trial and any ongoing publicity. In *Ballenger*, nearly two years had passed since January 6. Even with renewed attention on the events of that day because of the widespread coverage of the congressional hearings conducted by the Select Committee to Investigate the January 6th Attack on the United States Capitol, the court still did not find presumptive prejudice, concluding that the third factor "may be said to be in equipoise." *Id.* at 40.

The trial in this case is scheduled for nearly a year and a half after the charged conduct.

As in *Skilling*, "the decibel level of media attention diminished somewhat" in this case as time has passed. *Skilling*, 561 U.S. at 383. The Sixth Circuit and courts within it have recognized that the natural dimming of media attention that occurs in a year, and even less, militates against a finding of presumptive prejudice. *See, e.g.*, *DeLisle v. Rivers*, 161 F.3d 370, 385 (6th Cir. 1998).

    In conclusion, for the reasons stated above, the venire should be chosen here in the Western Division and the trial should occur here in the Western Division. Defendant Haley's motion should be denied without prejudice to file a motion based on actual prejudice during *voir dire*.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

By:    s/David Pritchard
DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103
901/544-4231

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

FORREST CHRISTIAN
KATHRYN E. GILBERT
Trial Attorneys
Civil Rights Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430

**CERTIFICATE OF SERVICE**

I, David Pritchard, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

s/David Pritchard  
DAVID PRITCHARD  
January 30, 2024

**CERTIFICATE OF SERVICE**

  I, Kathryn E. Gilbert, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

                   s/Kathryn E. Gilbert
                   KATHRYN E. GILBERT
                   January 30, 2024