IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. No. 2:23-cr-20191-MSN |
| ) | |
| EMMITT MARTIN, III ) | |

## MOTION TO TRANSFER TRIAL

The defendant, Emmitt Martin, III, through counsel and pursuant to U.S. Const. art. III § 2, amends. V, VI, and VIII; *Skilling v. United States*, 561 U.S. 358 (2010); *Mammone v. Jenkins*, 49 F.4th 1026 (6th Cir. 2022); and Fed. R. Crim. P. Rules 18 and 21, respectfully moves this Court for the trial of this case to be transferred to the Eastern Division of the Western District of Tennessee, or to another district, because so great a prejudice against the defendants exists in the Western Division that Mr. Martin cannot receive a fair and impartial trial.

For over a year, the Western Division has been saturated with prejudicial media and public commentary about the defendants and the underlying facts at issue in this case. A significant majority of residents surveyed in the Western Division have formed an opinion that the defendants are guilty, yet that is not so in the Eastern Division. While abundant evidence exists to transfer to another district, at minimum, an intradistrict transfer is necessary to ensure the constitutional integrity, fairness, and impartiality of the trial.

In further support, the following is submitted:

1.     The United States Constitution protects the right to due process and to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amends. V, VI, and VIII. *See generally Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) ("With his life at stake,

it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a wave of public passion and by a jury other than one in which two-thirds of the members admit, before hearing any testimony, to possessing a belief in his guilt."); *Reynolds v. United States*, 98 U.S. 145, 155 (1878) ("The theory of the law is that a juror who has formed an opinion cannot be impartial.").

        2.      Federal Rule of Criminal Procedure 18 requires the Court to "set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice" unless otherwise permitted by rule or statute. Fed. R. Crim. P. 18. "The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a basic requirement of due process." *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *in re Murchinson*, 349 U.S. 133, 136 (1955)) (internal quotation marks omitted); *United States v. Ford*, 812 F. Supp. 761, 771 (W.D. Tenn. 1991) (Horton, C.J.) ("Therefore, Rule 18 and case law interpreting Rule 18, and the American Bar Association recognize that in an appropriate high-profile case, a trial judge can and may select a jury in one division of a district and proceed to trial or retrial of a criminal case in another division of the district."). There is no requirement for the trial to take place within the particular division where the alleged crime occurred. U.S Const. amend. VI; Fed. R. Crim. P. 18, Advisory Committee Notes (1966 Amendments) ("The amendment eliminates the requirement that the prosecution shall be in a division in which the offense was committed and vests discretion in the court to fix the place of trial at any place within the district with due regard to the convenience of the defendant and his witnesses.").

3. Upon application of the defendant, and for good cause, this Court may transfer this case to another division within the district. *See* Fed. R. Crim. P. 18, Advisory Committee Notes (1944 Adoption); *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc) ("Although the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district.") (emphasis in original); *United States v. Ford*, 812 F. Supp. 761, 771–72 (W.D. Tenn. 1991) (Horton, C.J.) (granting motion for intradistrict transfer from Memphis to Jackson due to "avalanche of television, radio, and newspaper publicity" targeted at people in Memphis area).

4. Prejudicial publicity will render a trial constitutionally unfair whenever the trial atmosphere is utterly corrupted by press coverage, as when excessive exposure from zealous reporting efforts considerably disrupt the court's proceedings and deny the "judicial serenity and calm to which" the defendant is entitled. *Skilling v. United States*, 561 U.S. 358, 379–80 (2010). In *Skilling*, the Supreme Court held that sufficient inflammatory and pervasive pretrial publicity will require a presumption that prejudice tainted the jury pool. *Skilling* identified several factors for determining whether the pretrial publicity in a particular case is sufficient to presume juror prejudice: (1) the "size and characteristics of the community in which the crime occurred," (2) whether the news included memorable, "blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight" such as a confession and (3) the degree to which media attention diminished, or was sustained, while the case was pending.

*Skilling*, 561 U.S. at 382–83;[1] *see also Mammone v. Jenkins*, 49 F.4th 1026, 1043 (6th Cir. 2022) (citing *Skilling* factors, as recited by the Ohio Supreme Court, with approval).

     5.     The movant has a lower burden when requesting an intradistrict transfer, which is controlled by factors such as:

> [P]roximity of defendant's residence, proximity of witnesses and counsel, docket conditions which bear on whether a defendant receives a speedy trial, and proximity of records and documents[.]

*United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974). Ultimately, though, the test for intradistrict transfer is simple: a case may be transferred within the district whenever the case would generally be better off somewhere else. *See, e.g.*, *United States v. Marilyn Mosby*, Order, Case No. 1:22-cr-00007-LKG, Doc. 244 (D. Md) (Griddsby, J.) (attached hereto as **Exhibit 1**) (collecting cases; granting motion for intra-district transfer because "the Defendant has shown through its survey data that the pre-trial publicity about this case has, to a degree, negatively impacted the views held about the Defendant by potential jurors residing the Court's Northern Division more so than their counterparts in the Southern Division"); *United States v. Assad Nasr*, No. 7:18-cr-7-KKC, 2019 WL 6842540, 2019 U.S. Dist. LEXIS 215816 (E.D. Ky. Dec. 16, 2019) (Caldwell, J.) (granting motion for intradistrict transfer to more convenient division); *United States v. Lawson*, No. 3:08-21-S-DCR, 2009 WL 511935, 2009 U.S. Dist. LEXIS 16032, at *1–2 (E.D. Ky. Mar. 2, 2009) (Reeves, J.) (ordering intradistrict transfer because "pretrial publicity and general public sentiment within the Frankfurt jury division are so prejudicial as to deprive [defendants] of a fair and impartial jury").

---

[1] *Skilling* included a fourth factor relevant on direct appeal: whether the publicity appeared to yield an overwhelming victory for the government. *Skilling v. United States*, 561 U.S. 358, 383–84 (2010). This factor is premature for a pretrial motion for change of venue.

6.	In *United States v. Jeffrey Young*, the lead defendant filed a motion for a change of venue from the Eastern Division of the Western District of Tennessee to the Western Division based on prejudicial publicity. The *Young* case received national attention but garnered more significant press coverage in Jackson than in Memphis. Yet its coverage in Jackson pales in comparison to that of this case in Memphis. Judge Breen determined that the pretrial publicity in the *Young* case (concerning the negative reputation of a nurse practitioner in Jackson charged with unlawfully prescribing controlled substances) posed a concern and favored transferring the case "to a less challenging venue—that is, Memphis." *United States v. Jeffrey Young*, Case No. 1:19-cr-10040, Doc. 183 (attached hereto as **Exhibit 2**).

7.	Counsel engaged Bryan Edelman, Ph.D., to conduct a change of venue study in this case. Dr. Edelman's declaration is attached as **Exhibit 3** to this motion with his curriculum vitae, online community attitude survey, and media analysis. Dr. Edelman, "the co-founder of Trial Innovations, Inc., a national full-service jury research firm," has been a jury consultant for 20 years. Dr. Edelman's Declaration at p. 1. He has an MA and PH.D. in Social Psychology from the University of Nevada, Reno, and an LL.M. from the University of Kent in the United Kingdom. *Id*. at p. 3. In the majority of cases that Dr. Edelman has "been retained to conduct a change of venue study, [he has] recommended against a change of venue." *Id.* at p. 5. Dr. Edelman was retained to research and evaluate: "(1) whether there was extensive and prejudicial pretrial publicity regarding the death of Tyre Nichols; (2) determine if the media coverage has impacted the defendants' ability to obtain a fair and impartial jury in the Western Division of the Western District of Tennessee; and (3) based on the findings, recommend appropriate remedial measures—for example, a change of venue or intra-district transfer—to protect the defendants' ability to be tried by a fair and impartial jury." *Id.* at p. 1. He concluded:

> [G]iven the nature of the pretrial publicity—and its negative impact on bias—it is my opinion that the presumption of innocence has been undermined. As such, remedial measures are necessary to protect the defendants' right to a fair and impartial jury. An intra-district transfer or a change of venue to an alternate district less familiar with these events would be an appropriate and efficient measure for ensuring a fair and impartial jury.

*Id.* at p. 3; *see Estes v. Texas*, 381 U.S. 532, 536 (1965) ("Pretrial can create a major problem for the defendant in a criminal case. Indeed, it may be more harmful than publicity during the trial for it may well set the community opinion as to guilty or innocence.").

### Size and Characteristics of the Community

8. Dr. Edelman's online community attitude survey shows that the pretrial publicity has undermined the presumption of innocence and effectively shifted the burden of proof to the defendant. In the Western Division, 91% of survey participants recognized the case, while 72% of survey participants recognized the case in the Eastern Division. Among those familiar with the case, 69% of respondents in the Western Division believed the defendants were "definitely guilty" compared to 46% of respondents in the Eastern Division. *See* **Exhibit 3**, Dr. Edelman's Declaration, pp. 2–3. Despite the size of the Western Division, it is clear that a presumption of guilt has settled into the jury pool. *See Skilling v. United States*, 561 U.S. 358, 382 n.15 (2010) (change of venue study indicated "only 12.3% of Houstonians named him when to list Enron executives they believed guilty of crimes […] "two-thirds of respondents failed to say a single negative word,, […] 43% either had never heard of Skilling or stated nothing came to mind when they heard his name, and another 23% knew Skilling's name was associated with Enron but reported no opinion about him").

9. Given the involvement of city officials in this matter, intradistrict transfer is also warranted because the jury pool in the Eastern Division would necessarily have less city employees and their family members, who are more likely to be biased in this case given the city's response

to Mr. Nichols's death, the continued public statements of city officials about the underlying facts of this case, and the ongoing civil lawsuit. *See, e.g.*, *United States v. Lawson*, No. 3:08-21-S-DCR, 2009 WL 511935, 2009 U.S. Dist. LEXIS 16032, at *6 (ED. Ky. Mar. 2, 2009) (Reeves, J.) (ordering intradistrict transfer in part because jury pool would have the highest population of "state employees and/or their family members").

### **Memorable, Blatantly Prejudicial Information**

10. Prejudice can be presumed whenever press coverage would "utterly corrupt" the atmosphere of trial, which requires something beyond "[e]xtensive media coverage and knowledge within the community." *Mammone v. Jenkins*, 49 F.4th 1026, 1043 (6th Cir. 2022) (quoting *Murphy v. Florida*, 421 U.S. 794, 798 (1975) and citing *Dobbert v. Florida*, 432 U.S. 282, 303 (1977)). "Presumption prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007); *Sheppard v. Maxwell*, 384 U.S. 333, 356 (1966) (deploring the "manner in which the news media inflamed and prejudiced the public," including information never admitted at trial). While such cases are admittedly rare, the presumption that an impartial jury could not be empaneled will attach when local prejudice is particularly severe and widespread. *Mammone v. Jenkins*, 49 F.3d 1026, 1043 (6th Cir. 2022); *see also United States v. Burr*, 25 F. Cas. 49, 49 (C.C.D. Va. 1807) (No. 14692G) ("[T]he public mind had been so filled with prejudice against [the defendant] that there was some difficulty in finding impartial jurors [because of the] inflammatory articles which had been published against [him] in the Alexandria Expositor and other newspapers.").

11. The media coverage in this case has been blatantly prejudicial and includes memorable images and video footage. *See* **Exhibit 3**, Dr. Edelman's Declaration, p. 9 ("The

pretrial publicity to date includes prejudicial details surrounding the death of Tyre Nichols which may undermine the 'presumption of innocence' by creating a 'presumption of guilt'"); *see Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991) (explaining that while media was not favorable to defendant, it was not unfairly prejudicial because it did not include damaging information such as opinions as to his guilt or the appropriate punishment); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (holding adverse pretrial publicity can create a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed).

12. The media cycle has been perpetuated by officials for the City of Memphis, including former Memphis Mayor Jim Strickland, Memphis Police Chief Cerelyn "C.J." Davis, and Shelby County District Attorney Steve Mulroy. *See* **Exhibit 3**, Dr. Edelman's Declaration, pp. 9–12. The publicity "often employs emotional, powerful, sensational, and inflammatory language when describing Tyre Nichols' death, reactions to the police encounter, and the aftermaths." *See* **Exhibit 3**, Dr. Edelman's Declaration, p. 13. The media coverage has included video footage from Mr. Nichols's arrest and encounter with the defendants, often accompanied by commentary indicating outrage and a presumption of guilt. *See* **Exhibit 3**, Dr. Edelman's Declaration, pp.15–18. The media reports also include information inadmissible at trial, like an unrelated shooting and a $500 million lawsuit pending against the City of Memphis. *See* **Exhibit 3**, Dr. Edelman's Declaration, pp. 18–20. "In contrast to the negative coverage surrounding the defendants and their act of brutality, the media serves to cultivate a powerful positive impression of the victim as an empathetic, loving, non-violent, and deeply spiritual person[.]" *See* **Exhibit 3**, Dr. Edelman's Declaration, pp. 20–21.

**Sustained Media Attention**

13. This case has sustained significant media coverage. *See Skilling v. United States*, 561 U.S. 358, 383 (2010). In the Commercial Appeal alone, 149 articles were published between January 11, 2023, and January 19, 2024. *See* Dr. Edelman's Declaration, p. 9 (**Exhibit 3**). The media ticks up for every filing and report date in this case, and as the City of Memphis releases additional video footage and other information to the public. On the one-year anniversary of Mr. Nichols's death, there was an additional round of significant media coverage and a highly publicized vigil. *See* **Exhibit 3**, Dr. Edelman's Declaration, Attachment B: Media Analysis, p. 1222 (documenting media coverage relating to anniversary of Tyre Nichols's death). The media attention in this case has persisted for the duration of this case, and the onslaught of negative press shows no signs of stopping. *See id.*; *Patton v. Yount*, 467 U.S. 1025, 1033–34 (1984) (no barrage of publicity because newspaper articles slowed to less than one article per month during the year and a half preceding retrial, weakening claims of jury bias).

**Conclusion**

14. The pretrial publicity in this case is pervasive across written and broadcast news, podcasts, and social media, such that Mr. Martin and his co-defendants have already been judged guilty within the Western Division. A fair trial cannot be conducted with a jury pool from the Western Division of the Western District of Tennessee, and a change of venue to the Eastern Division of the Western District of Tennessee is necessary to protect the integrity of the trial because the Western Division is less saturated with negative publicity and jurors are less likely to have preconceived notions of guilt. *See* U.S. Const. amends. V, VI, and VIII; Fed. R. Crim. P. 18.

15. This motion is filed based on undersigned counsel's efforts to comply with the Court's current scheduling order. (ECF No. 122.) However, it remains counsel's position that it is

unreasonable to expect adequate preparation for pretrial proceedings or the trial itself within the current schedule and that the constitutional protections afforded persons accused, and the essential requirements of the defense function, cannot be met without additional time to prepare. (ECF No. 120.) Mr. Martin, through counsel, is separately filing a motion to continue the trial and all corresponding deadlines, in part due to recent discovery productions by the government, including but not limited to the government's opinion testimony disclosures made January 31, 2024. (ECF Nos. 142 and 144); *see also* (Order Denying Motion to Exclude, ECF No. 149.)

Respectfully submitted this 6th day of February, 2024.

RITCHIE, DAVIES, JOHNSON, & STOVALL, P.C.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON [TN BPR No. 022140]
CATALINA L.C. GOODWIN [TN BPR No. 038660]
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
www.rdjs.law
johnson@rdjs.law
goodwin@rdjs.law

MASSEY MCCLUSKY FUCHS & BALLENGER

/s/ William D. Massey
WILLIAM D. MASSEY [BPR No. 9568]
3074 East Road
Memphis, TN 38128
(901) 384-4004
w.massey3074@gmail.com

*Counsel for Emmitt Martin III*

## CERTIFICATE OF SERVICE

I certify that on February 6, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Stephen Ross Johnson