IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES,

    Plaintiff,

v.  No. 23-20191

DEMETRIUS HALEY,

    Defendant.

---

MOTION TO EXCLUDE "EXPERT" OPINIONS ON "USE OF FORCE ISSUES"
PURSUANT TO FRE 702,703,705

---

Comes now the defendant, Demetrius Haley, by and through his counsel of record, and, in response to the United States' Notice of Intent to Offer Hybrid or Expert Witness Testimony Regarding Use of Force Issues, R. 142, moves this court to prohibit the government from seeking to introduce any such expert opinion testimony pursuant to Fed. R. Evid. 702, 703, or 705.[1] In support thereof, Mr. Haley would show:

Two reasons exist to exclude any expert opinion on "use of force issues". First, the United States' Notice is insufficient because it fails to comply with Fed. R. Crim. P. 16(a)(1)(G)(iii). It doesn't make the necessary disclosures to Mr. Haley. Further,

---

[1] In view of the characterization of the witnesses it intends to call on "use of force issues" as presenting "Hybrid or Expert Testimony", Mr. Haley has filed a separate motion *in limine* seeking an order that any lay testimony on use of force be limited to officer's present on the scene consistent with FRE 701 and controlling case law.  (R. 158).

the insufficient notice prohibits this court from exercising its gatekeeping function. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); Kuhmo Tire Co., Ltd. V. Carmichael, 526 U.S. 137 (1999); Askew v. City of Memphis, 2016 WL 4536447 *3 (W.D. Tenn. 2016). Second, the Notice makes clear that the government knew as early as April and May, 2023 it intended to introduce expert testimony on what it describes as "use of force issues". This fact, combined with the insufficient notice filed demonstrates that the delay is inexcusable and outright exclusion of any expert testimony on "use of force issues" the least severe sanction necessary. United States v. Ganier, 468 F.3d 920, 927 (6th Cir. 2006).

When the government intends to call an expert witness to testify in a criminal case, it must disclose, in writing, the information required by Rule 16(a)(1)(G)(iii) for any testimony it intends to admit pursuant to FRE 702, 703, or 705. The disclosure for each expert must contain:

> A complete statement of all opinions that the government will elicit from the witness . . .;
>
> The bases and reasons for them;
>
> The witness's qualifications, including a list of all publications authored in the previous 10 years; and
>
> A list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.
>
> Fed. R. Crim. P. 16(a)(1)(G)(iii).

Herein, the United States' disclosure is inadequate and doesn't conform to the requirements of Rule 16(a)(1)(G). Conceding that the United States produced grand jury transcripts (Gonzalez US_00016202-32; Wright US_00015808-85; Kevin Barrett US_00015772-807; Saleem US_00016130-67); FBI 302 interview reports (Gonzalez US_00004420-29; Wright US_00004530-39; Kevin Barrett US_00004355-61; Saleem US_00004521-22; Branch US_00004363-65); training materials; and MPD policies none are a written report of all opinions the government will elicit from the witness. The training materials and MPD policies **may** constitute a portion of the "bases and reasons" for each witness's opinion, however, nothing disclosed references a specific class, training session, training material, or MPD policy which any of the prospective witness relied upon to form his or her opinion. Mr. Haley should not be forced to divine, from the large pile of discovery, what a potential expert witness relied upon to support his or her opinion, especially given the late disclosure relative to the discovery deadline and trial date.

Examining and comparing the Notice, R. 142, with the grand jury testimony and FBI 302 interview reports it incorporates reveals gaps and discrepancies. For instance, the notice states the government intends to call Juan Gonzalez "to testify about the MPD policies, practices, procedures, and training that were in

place . . . [and] the subjects of these policies and training include use of force, duty to intervene, duty to provide medical care, report-writing, handcuffing, and defensive tactics, **among others**". (R. 142, U.S. Notice, ID 609). "Mr. Gonzalez may testify about a range of training areas, including a detailed discussion of the use of force continuum, pain compliance techniques, handcuffing techniques, and vehicle stops, **among other subjects**". (R. 142, U.S. Notice, ID 609). The notice concludes that "Mr. Gonzalez will testify that he trained these defendants, and he did not train them 'that way'". (R. 142, U.S. Notice, ID 610).

Clearly the notice does not describe "all opinions the government will elicit" when it includes "among others" as the topics for his testimony. Further, the report of his April 20, 2023 interview documents that he taught only defensive tactics and physical training at the Academy. (US_00004420). He states he covered use of force, but the FTU takes use of force training much further during the Academy. The report of his May 8, 2023 interview indicates that he viewed Skycop and body worn camera (BWC) footage of the confrontation with Nichols. Some of his criticism was "not a training issue, but a behavioral issue"; criticism of Officer Hemphill's actions; and based upon alternative facts – "he was cuffed, and even if not cuffed . . .". (US_00004424-26). During his grand jury appearance, Gonzalez offers an opinion on traffic

stop procedure without any indication he taught or trained in that area. Further, based upon his review of video, he offers an inadmissible legal conclusion 20 times. DeMerrell v. City of Cheboygan, 206 Fed.Appx. 418, 426 (6th Cir 2006); Askew v. City of Memphis, 2016 WL 4536447 *10 (W.D. Tenn. 2016).

In addressing Larnce Wright, the *cv* provided doesn't provide any qualifications for him to teach at the MPD Academy. All relevant certifications are listed as having been obtained after January 7, 2023, which appears to conflict with his grand jury testimony indicating that, at some time, he became a basic instructor through instructor development and then had separate outside classes. (US_00015812-14). Without stating a specific area of expertise, the notice suggests that his testimony "will include a detailed discussion of the use of force continuum, responses to resistance, hand control, pain compliance techniques, deadly force, and vehicle stops, **among other subjects**". (R. 142, U.S. Notice, ID 614). During his grand jury testimony, Wright offers an inadmissible legal conclusion 5 times.

Next, the United States provides notice that Kevin Barrett "may testify about the MPD policies, procedures, and training that were in place when the defendants attended MPD's academy". (R. 142, U.S. Notice, ID 617). Lt. Barrett left his position as an academy instructor in "June or July 2017", long before Haley was

a police recruit attending the academy. (US_00004355; US_00028848). In fact, none of the defendants currently scheduled for trial attended the MPD academy until after Barrett left. (US_00028656, US_00029705, US_00030569). Anything that Barrett taught at the academy is irrelevant to the training these defendants received. Any opinion on the propriety of force used against Tyre Nichols must be based upon his qualification as an expert since he wasn't present during either confrontation and cannot include an impermissible legal conclusion. Barrett does offer inadmissible legal conclusions during the interviews according to the FBI 302 reports furnished.

When it comes to the government's notice that it intends to call Zayid Saleem and Tracey Branch, Haley concedes that, like the others, they can testify about training they provided to him at the MPD Academy. Other than training provided, the notice is unclear as to whether it intends to get either qualified as an expert, if so, in what area, and what opinion(s) it would seek to elicit. For instance, the "report" from Saleem (R. 142-4, U.S. Notice, ID 623-24) states that he "opined that he taught officers more than enough to avoid litigation" and may seek to testify on "police liability issues". Upon review of the FBI 302 interview report and grand jury testimony, incorporated by reference into the Notice with respect to call Saleem, it is difficult to tell

whether the United States will seek to elicit an opinion(s) from him and, if so, in what area. The description that he provided training on "police liability" and "taught officers more than enough to avoid litigation" comes perilously close to suggesting that the United States will seek to elicit his opinion on an inadmissible legal conclusion, rather than a simple factual conclusion. Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994); DeMerrell, *supra,* at 426; Gregg v. Hatmaker, 2013 WL 7141737 (E.D. Tenn. 2013).

Finally, addressing the notice with respect to Tracey Branch, Haley concedes that she can testify to any training she provided him at the MPD Academy, however, it is difficult to discern whether the government intends to elicit any opinion testimony and, if so, in what area. A review of the FBI 302 report of interview could be read to indicate that the government intends to elicit specific examples of cases involving MPD officers that resulted in civil rights convictions. Haley would suggest that such statements would result in presenting an inadmissible legal conclusion, invading the province of the jury by suggesting that Haley and his co-defendants are likewise guilty of civil rights violations.

In addition to excluding any proposed expert opinions on "use of force issues" from the five proposed witnesses listed due to the failure to comply with Rule 16(a)(1)(G), this court should

exclude such testimony as the least severe sanction necessary. United States v. Ganier, 468 F.3d 920, 927 (6th Cir. 2006).

Haley previously moved this court to prohibit the United States from calling any expert witnesses. (R. 95, Motion to Exclude Opinion Testimony). After both parties filed additional pleadings (R. 105, U.S. Response; R. 109, Haley Reply) the court conducted a hearing and entered an order, allowing the United States until January 31, 2024 to provide notice of intent to call experts and comply with Fed. R. Crim. P. 16(a)(1)(G). (R. 149, Order Denying Motion to Exclude Opinions Pursuant to FRE 702, 703, 705.). The order explicitly stated that it was entered without prejudice and reserved judgment regarding the imposition of sanctions. *Ibid.*

Based upon the government's disclosure of "Hybrid and Expert Testimony on Use of Force Issues", R. 142, Haley renews his motion to exclude these proposed expert opinions as the least severe, appropriate sanction. This sanction is less severe than outright dismissal of the case and still allows the government to rely upon lay use of force testimony admissible pursuant to FRE 701.

The sanction is appropriate because it is clear that, while restricted to the confines of FRE 701, use of force testimony is admissible as a lay opinion if the officer with specialized training/knowledge was present at the scene. United States v. Perkins, 470 F.3d 150 (4th Cir. 2006); United States v. Freeman,

730 F.3d 590, 595 (6th Cir. 2013). In view of the elements of count 1 and the government's discovery response,[2] it clearly intended to introduce lay opinion testimony on the use of force against Tyre Nichols, which is only admissible if the officers were present at the scene of the use of force. United States v. Perkins, *supra*; United States v. Freeman, *supra*.

Concurrently, during the investigation, the government was interviewing potential witnesses Kevin Barrett (4/21/23 interview US_00004355, 5/8/23 interview US_00004358), Juan Gonzalez (4/20/23 interview US_00004420, 5/8/23 interview US_00004424, 6/12/23 interview US_00004428), and Larnce Wright (4/20/23 interview US_00004530, 5/8/23 interview US_00004535) and eliciting grand jury testimony from each about the use of force against Tyre Nichols. Mssrs. Barrett and Wright testified before the grand jury on May 9, 2023 while Mr. Gonzalez appeared and testified before it on June 13, 2023. All offered opinions on the use of force against Tyre Nichols, which were elicited by the AUSA's prosecuting this case. None of these potential witnesses were present on the scene of Haley's January 7, 2023 interaction/confrontation with Tyre Nichols and offered their opinion based upon a review of the skycop

---

[2] As to Rule 16(a)(1)(G), the United States does not at this time intend to introduce any expert testimony as defined by the Federal Rules. We will advise you should that change and provide the appropriate information to you. (R. 47, U.S. Discovery Response, ¶ 5).

and BWC footage. Since each lacks the personal knowledge required to give a lay opinion pursuant to FRE 701, any opinion about the use of force against Tyre Nichols is admissible only as an expert opinion pursuant to FRE 702, 703, 705.

The United States knew that any use of force opinion regarding Tyre Nichols from these three potential witnesses was only admissible if it qualified as an expert opinion. It elicited these opinions from these three prior to the return of the Indictment on September 12, 2023 (R. 2, Indictment) and prior to the discovery response noting that it "does not at this time intend to introduce any expert testimony as defined by the Federal Rules." (R. 47, U.S. Discovery Response, ¶ 5).

This chronology with a May 6, 2024 trial setting, eliciting opinions only admissible pursuant to FRE 702, 703, 705 in April – June 2023; denying an intent to rely on testimony pursuant to FRE 702, 703, 705 on September 21, 2023; not providing any expert disclosure prior to the discovery deadline; and opposing the motion to exclude filed on November 6, 2023 on the grounds that no deadline for expert disclosure had been set merits this sanction. Haley concedes that the sanction is harsh, but it isn't a dismissal[3]

---

[3] Dismissal of an indictment is an authorized sanction for a discovery violation. United States v. Carter, 2022 WL 1292121 (S.D. Ohio 2022).

and the United States still has the availability of lay opinion testimony on the use of force against Nichols.

In accordance with L.Cr.R. 12.1(a), counsel has consulted with the prosecutors and confirmed that the United States opposes this motion.

WHEREFORE, PREMISES CONSIDERED, Mr. Haley prays this court grant his motion and prohibit the United States from seeking to introduce any evidence on "use of force issues" pursuant to Fed. R. Evid. 702, 703, or 705 against him.

Respectfully submitted,

S/Michael J. Stengel
_____
Michael J. Stengel (12260)
Lawyer for Demetrius Haley
619 South Cooper Street
Memphis, TN 38104
(901) 527-3535

S/Stephen R. Leffler
_____
Stephen R. Leffler (11038)
Lawyer for Demetrius Haley
2670 Union Ave. Extd., Ste. 819
Memphis, TN 38112
(901) 509-9112

Certificate of Service

I hereby certify that I have served a copy of the foregoing Motion to Exclude Opinion Testimony on "Use of Force Issues" by

electronic means, via the Court's electronic filing system, on AUSA's David Pritchard, Libby Rogers, Kathryn Gilbert, and Forrest Christian this 7th day of February, 2024.

                                        S/Michael J. Stengel