IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No. 2:23-cr-20191-MSN |
| | ) | |
| EMMITT MARTIN, III | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS 1 AND 2 FOR VAGUENESS AND INSUFFICIENCY**

The defendant, Emmitt Martin, III, through counsel, pursuant to U.S. Const. art. I, § 1, art. III, § 1, amends. V, VI, and VIII; *Ruan v. United States*, 213 L. Ed. 706, 142 S. Ct. 2370 (2022); *United States v. Davis*, 204 L. Ed. 2d 757, 139 S. Ct. 2319 (2019); Fed. R. Crim. P. 7 and 12; has respectfully moved this Court to dismiss Counts 1 and 2 of the indictment because the charged offense, 18 U.S.C. § 242, is unconstitutionally vague, both facially and as applied and because the indictment is unconstitutionally insufficient, implicating the constitutional protections of fair notice, preparing and presenting a defense, and the requirement that a grand jury hear evidence and determine the criminal accusation.

Nearly 80 years ago, the United States Supreme Court conceded that without what it would later term "judicial gloss," 18 U.S.C. § 242 was unconstitutionally vague. *Screws v. United States*, 325 U.S. 91, 103 (1945). The passage of time has brought into stark relief the folly of trying to save the statute. As the application and use of 18 U.S.C. § 242 has been expanded to a wider range of activity, courts have been forced to apply ever more coats of this "judicial gloss" such that no person can discern the actual elements of the offense by simply reading the statute. This Court should declare 18 U.S.C. § 242 unconstitutional on its face and dismiss Counts 1 and 2 because it is impossible for a person of common understanding to conform their conduct to comply with the statute. Even if the statute is constitutional on its face, it is unconstitutional as applied in this case.

Counts 1 and 2 are also unconstitutionally deficient because those counts fail to allege the facts constituting the charged offenses and otherwise fail to put Mr. Martin on notice of the charged offenses.

> I. **CRIMINAL OFFENSES MUST BE DEFINED TO ALLOW A PERSON OF COMMON UNDERSTANDING TO KNOW WHAT IS PROHIBITED, TO AVOID ARBITRARY ENFORCEMENT, AND TO PROTECT THE POWER OF THE LEGISLATIVE BRANCH TO DEFINE CRIMINAL OFFENSES.**

A statute is unconstitutional if it does not define the criminal offense with sufficient definiteness. The Supreme Court's "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (holding federal criminal statute unconstitutionally vague). The Due Process Clause of the Fifth Amendment prohibits enforcement of a statute that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement[.]" *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997) (stating that "the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'") (citations omitted).

The void-for-vagueness doctrine also "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 200 L. Ed. 2d 549, 138 S. Ct. 1204, 1207 (2018) (declaring federal statute defining "crime of violence" unconstitutionally vague); *accord Johnson v. United States*, 576 U.S. 591 (2015) (declaring federal statute defining "violent felony" unconstitutionally vague). Additionally, vague laws "undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected

representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *United States v. Hudson*, 11 U.S. 32 (1812)). If a statute is vague, it cannot form the basis for a criminal conviction because "a vague law is no law at all. *See United States v. Davis*, 139 S. Ct. 2319, 2323 (2019); *Skilling v. United States*, 561 U.S. 358, 409–12 (2010) (judicially limiting the scope of federal mail and wire fraud statutes; *Bouie v. Columbia*, 378 U.S. 347, 351 (1964) ("The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.").

    **II.**    **SECTION 242 IS VAGUE ON ITS FACE BECAUSE IT DESCRIBES THE PROHIBITED CONDUCT IN TERMS THAT FORCE CONJECTURE AS TO ITS MEANING AND INVITE DISCRIMINATORY APPLICATION.**

Counts 1 and 2 charge all defendants with aiding and abetting in the deprivation of Mr. Nichols's civil rights, 18 U.S.C. § 242, through the use of unreasonable force (Count 1), failure to intervene (Count 1), failure to render aid (Count 2), and failure to correctly communicate his condition to EMS (Count 2). The statute is facially vague, or at least vague as applied, and both counts must be dismissed. The elements of the offense are that the defendant acted: "(1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 US. 259, 265 (1997). "[T]he violation of a federally protected right and the specific intent to violate that right are separate elements of the crime established by the statute" and the questions they present "are logically, and legally, independent." *United States v. Reese*, 2 F.3d 870, 884 (9th Cir. 1993).

    **A.**    **The text of the statue does not define the essential "deprivation of rights" element, and that element has instead been outsourced to common law determinations.**

Section 242 does not "describe[e] the specific conduct" forbidden by the "deprivation of rights" element but instead "incorporate[s] constitutional law by reference, and many of the incorporated constitutional guarantees are, of course, themselves stated with some catholicity of

phrasing." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (citations omitted). "The result is that neither the statutes nor a good many of their constitutional referents delineate the range of forbidden conduct with particularity." *United States v. Lanier*, 520 U.S. 259, 265 (1997). To remedy this obvious vagueness, the United States Supreme Court resorted to applying "judicial gloss" to interpret 18 U.S.C. § 242 to apply only to those rights "made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them." *Screws v. United States*, 325 U.S. 91, 103, 104 (1945). *Screws* has long been the subject of criticism, and the "made specific" standard was the subject of a strong dissent in *Screws* by Justice Roberts, who questioned how a court could determine whether a provision is "deemed specific" enough for criminal liability. *Id.* at 150 (Roberts, J., dissenting); *see also Koehler v. United States*, 342 U.S. 852, 852 (1951) (Jackson, J., dissenting from denial of certiorari) ("The statute, 18 U.S.C. § 242, is vague and general in the extreme."); *see also* Frederick M. Lawrence, *Civil Rights and Criminal Wrongs: the Mens Rea of Federal Civil Rights Crimes*, 67 Tul. L. Rev. 2113, 2180 (June 1993) (arguing that the *Screws* plurality "attempted, unsuccessfully, to solve the vagueness problem" in § 242). Although the Court reaffirmed the *Screws* test in *United States v. Lanier*, the reality is that, even before *Lanier*, the test had become unworkable, and its continued validity considering more recent Supreme Court vagueness decisions is in serious doubt.

      **B. Section 242 is unconstitutionally vague because it does not provide a person of common intelligence fair notice of what is prohibited.**

The purpose of the fair notice element of the void-for-vagueness doctrine "is to enable the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (plurality opinion); *see also Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."). A criminal law provides inadequate notice when it lacks "any ascertainable standard,"

*Smith v. Goguen*, 415 U.S. 566, 578 (1974), and when the meaning of its terms depends on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008). Importantly, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope," and "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 266-67 (1997). Despite acknowledging the imprecision of the *Screws* test, *Lanier* upheld the made specific standard, likening it to the clearly established standard required for qualified immunity. *United States v. Lanier*, 520 U.S. 259, 270-71 (1997). The language of *Lanier* limiting "criminal liability under § 242" to the "deprivation of a constitutional right if, but only if, in the light of pre-existing law the unlawfulness [under the Constitution is] apparent" exemplifies the statutes vagueness instead of remedying it. *Id.* (citations omitted). Under this interpretation, to determine whether conduct is prohibited by 18 U.S.C. § 242, one must first ascertain whether a particular right has been "made specific," and then must ascertain whether the unlawfulness of his conduct "under the constitution" is "apparent." The *Lanier* Court's conclusion that judicial decisions, including appellate court decisions, meet the *Screws* standard even when the facts are not "fundamentally similar" to the criminal offense further muddies the waters. *United States v. Lanier*, 520 U.S. 259, 270-71 (1997). As the Court later explained, "Our opinion in *Lanier* thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). The result is circular reasoning that

says, essentially, that the defendant has fair notice that his conduct is prohibited when he has fair notice that his conduct is prohibited. Such a standard cannot satisfy Fifth Amendment due process.

As recently explained by the Supreme Court: "When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, *but to treat the law as a nullity and invite Congress to try again*." *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019) (emphasis added). In *United States v. Davis*, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(c), which provided a sentencing enhancement for anyone who used a firearm in connection with crimes of violence. *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019). The Court recognized that similar clauses were invalidated in recent years because the judicial inquiry required to determine whether another offense was incorporated in by reference was unpredictable, arbitrary, and vague. *United States v. Davis*, 139 S. Ct. 2319, 2325-26 (2019) (citing *Sessions v. Dimaya*, 584 U.S. 148 (2018); *Johnson v. United States*, 576 U.S. 591 (2015)). In *Davis*, the government suggested that the residual clause could be saved by requiring the courts to consider a "case-specific approach." *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019). Much like the *Screws* plurality, the *Davis* majority agreed that "a case-specific approach would avoid the vagueness problems that doomed the statutes in *Johnson* and *Dimaya*." *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019). Unlike the *Screws* plurality, though, the Supreme Court held the statute was void for vagueness while recognizing that "this just tells us that it might have been a good idea for *Congress* to have written a residual clause for § 924(c) using a case-specific approach. It doesn't tell us whether Congress actually wrote such a clause." *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019) (emphasis added).

The deprivation of rights clause in 18 U.S.C. § 242 is even more attenuated than the residual clauses struck down in *Johnson*, *Dimaya*, and *Davis*. The text of 18 U.S.C. § 242 provides

no guidance whatsoever for defining "the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" required for criminal conviction. This Court should declare 18 U.S.C. § 242 unconstitutionally vague and dismiss Counts 1 and 2.

### C. Section 242 is unconstitutionally vague because the scienter requirement of willfulness is open to differing definitions and is, thus, insufficient to define the prohibited conduct and prone to arbitrary application.

Generally, a statute that is otherwise vague may be saved by the inclusion of a scienter element. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982). However, the presence of a *mens rea* element of a statute does not mean that a statute is automatically constitutional. *See Skilling v. United States*, 561 U.S. 358, 409–12 (2010); *United States v. Ford*, 639 F.3d 718, 722–23 (6th Cir. 2011) (vacating wire fraud convictions based on failure to disclose financial interests because that conduct was outside the scope of conduct criminalized by honest services fraud statute) (citing *Skilling*). Section 18 U.S.C. § 242 relies on the mens rea of willfulness, but the term "willful" is notorious for holding several definitions and is unconstitutionally vague.

The *Screws* Court upheld the constitutionality of the precursor to 18 U.S.C. § 242 against vagueness grounds in part because of the willfulness requirement. *See Screws v. United States*, 325 U.S. 91, 103 (1945) ("We do say that a requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of constitutionality on the grounds of vagueness."). Willfulness, however, defies consistent definition and is insufficient to satisfy constitutional notice requirements. *See also Bryan v. United States*, 524 U.S. 184, 202 (1998) (Scalia, J., dissenting) (referring to "willfully" as a "notoriously malleable word"); Misty D. Shannon, *The Willfulness Requirement: A Chameleon in the Legal Arena*, 60 La. L. Rev. 563, 563 (Winter 2000) (recognizing significant variability in definition of

willfulness). Historically, however, willfulness has carried several different meanings: recklessness, knowledge, or intent with an evil purpose, with no clear guidance for which meaning attaches for a particular criminal offense. *See Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (knowledge conduct was unlawful); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (intentional violation of known legal duty); *United States v. Thao*, 76 F.4th 773, 777 (8th Cir. 2023) (specific intent); *United States v. Bradfield*, No. 98-2407, 2000 U.S. App. LEXIS 17556, at *29 (6th Cir. 2000) (specific intent). Tellingly, the Pattern Jury Instructions for the Sixth Circuit do not have a definition for willfulness "because no single instruction can accurately encompass the different meanings that this term has in federal criminal law." 6th Circuit Pattern J. Instr. 2.05 (2021) (willfully). The *Screws* Court willfulness as "specific intent to deprive a person of a federal right made definite by decision or other rule of law." *Screws v. United States*, 325 U.S. 91, 103 (1945 but even this definition does not assuage the vagueness of the statute because it necessarily relies on incorporation of constitutional rights as judicially defined.

### D. Section 242 is unconstitutionally vague because it violates separation of powers.

The Supreme Court's "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers." *United States v. Davis*, 204 L. Ed. 2d 757 (2019) (holding federal criminal statute unconstitutionally vague). The *Screws* test is a prime example of judicial legislation, which is barred by the Separation of Powers clauses of the United States constitution. *See* U.S. Const. art. I, § 1 (legislative powers belong to congress), art. III § 1 (judicial powers belong to the courts). "When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, *but to treat the law as a nullity and invite Congress to try again*." *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019) (emphasis added). When the Court attempts to salvage an otherwise vague statute by

application of judicial interpretation not apparent from the face of the statute, it invades the province of the legislative branch." Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *United States v. Hudson*, 11 U.S. 32 (1812)).

Even if the *Screws* test passes constitutional muster under separation of powers, it is vague because the test itself is unpredictable, confusing, and ambiguous. *See United States v. Johnstone*, 107 F.3d 200, 208 (3rd Cir. 1997) ("As is evident from the text, and has oft been noted, *Screws* is not a model of clarity."); Edward F. Malone*, Comment: Legacy of the Reconstruction: the Vagueness of the Criminal Civil Rights Statutes*, 38 UCLA L. Rev. 163, 171 (Oct. 1990) ("The dilemmas created by the statutes' amorphous contours were evident at the moment enforcement began, but the statutes have carried their structural deformities into the twentieth century unaccompanied by the political exigencies that originally justified those deformities."). The *Screws* test violates separation of powers, is not sufficiently tailored to narrow the scope of criminal liability, and does not absolve the facial vagueness in 18 U.S.C. § 242. Accordingly, Counts 1 and 2 must be dismissed because they rest on an unconstitutional statute.

## III. EVEN IF FACIALLY VALID, 18 U.S.C. § 242 IS VAGUE AS-APPLIED IN THIS INDICTMENT BECAUSE IT DOES NOT ADEQUATELY DEFINE THE CRIMINAL CONDUCT "MADE SPECIFIC" FOR PURPOSES OF THE DEPRIVATION ELEMENT.

Requiring a person to guess at what conduct is criminalized based on subjective language and elastic standards is not constitutionally permitted, though that is exactly what is required to determine the scope of the charges as applied in this case. Counts 1 and 2 rely on 18 U.S.C. § 242, which is vague and does not provide clear standards for compliance, particularly for law enforcement officers often forced to make split-second decisions. Even if the facts in Counts 1 and 2 are true, Mr. Martin lacked notice that his alleged conduct would be criminalized as a deprivation

of civil rights, and the vague scope of 18 U.S.C. § 242 leads to arbitrary enforcement and a risk that a jury will convict based on their individual interpretation of the ambiguity in the law and the "made specific" standard imposed by *Screws*.

> **A. Determining application of 18 U.S.C. § 242 to the conduct charged in this case requires a resort to judicial interpretations which are themselves vague and imprecise, inviting arbitrary and discriminatory application.**

A vague law "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586 (6th Cir. 2013); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[P]recision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."); *United States v. Bryant*, 556 F.Supp.2d 378, 431–33 (D.N.J. 2008) (holding that mail fraud statute was unconstitutional as applied in defendant's case because there was no standard by which the defendant could have known whether his conduct would have been prohibited, and the ambiguous language of the indictment invited the jury to apply their own predilections in determining if defendant's conduct was illegal); *see also United States v. Biberfeld*, 957 F.2d 98 (3d Cir. 1992) (reversing and remanding for evidentiary hearing in habeas proceeding where fraud conviction was based on arbitrary and selective enforcement of government contract domestic preference clauses). Prohibited conduct must be clearly within the scope of a statute to satisfy due process, not *potentially* within the scope of the statute based on interpretations of flexible standards found in regulations and interpreting authority. *Skilling v. United States*, 561 U.S. 358, 409–12 (2010). It is based on these principles that the Supreme Court has prohibited the use of vague regulations to form the basis of criminal charges. *See United States v. Pennsylvania Indus. Chemical Corp.*, 411 U.S. 655, 673–74 (1973) ("Thus, to the extent that the regulations deprived [defendant] of fair

warning as to what conduct the Government intended to make criminal, we think there can be no doubt that traditional notions of fairness inherent in our justice system prevent the Government from proceeding with the prosecution."); *United States v. Ford*, 639 F.3d 718, 722–23 (6th Cir. 2011).

Mr. Martin is charged under three theories of depriving civil rights: use of unreasonable force, failure to intervene, and deliberate indifference to serious medical needs. 18 U.S.C. § 242 is vague as applied to Mr. Martin because the alleged constitutional violations are not "made specific" enough to have put Mr. Martin on notice about the constitutionality of his conduct.

> **B. Because the constitutional authority incorporated into the civil rights offenses charged in Counts 1 and 2 is not clearly raised, this offense is vague as applied.**

The Fourth Amendment protects the right to a reasonable seizure, which requires balancing the constitutional interests of the suspect against the governmental interests in his arrest. *See Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (citing *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985)). It is well-established that law enforcement officers have the right to use force to effectuate an arrest, *see Rudlaff v. Gillispie*, 791 F.3d 638, 641, 642 (6th Cir. 2015) (force may be used to effectuate a seizure); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (recognizing "the right to use some degree of physician coercion or threat thereof" for an arrest), and that even the use of deadly force by a police officer is constitutionally permissible under some circumstances, *see Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989); *see also Mullenix v. Luna*, 577 U.S. 7, 12-13 (2015) (recognizing that the use of deadly force is reasonable under certain circumstances). Force with "no legitimate law enforcement purpose" is unreasonable under the Fourth Amendment. *United States v. Carson*, 560 F.3d 566, 578 (6th Cir. 2009). Reasonableness is a fact-specific inquiry based on the individual officer's perspective. *See White v. Pauly*, 580 U.S. 73, 80 (2017) (explaining that clearly established law does not require a

late arriving "officer to second-guess the earlier steps already taken" before employing force); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable."). If an officer's actions fall along the "hazy border between excessive and acceptable force," there can be no showing that a constitutional violation was clearly established. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)); *see also Wilson v. Layne*, 526 U.S. 603 (1999) (holding that bringing media along for execution of search warrant was an unreasonable search and seizure, but applying qualified immunity because right was not clearly established).

Mr. Martin, with his codefendants, arrested Mr. Nichols, but it is not clear whether the amount of force used by the defendants, from their individual perspectives, is "made specific" for purposes of 18 U.S.C. § 242 and the *Screws* standard because the standard for an "unreasonable seizure" is entirely fact-dependent and the indictment does not include any indication of how the defendants' conduct meets this standard. Stated plainly, the application of criminal liability when the boundaries of permissible conduct are "hazy" meets the very definition of constitutionally deficient notice. Because it is not clear whether the use of force in this case was unreasonable, 18 U.S.C. § 242 is unconstitutionally vague as applied.

**IV. THE ONLY WAY THAT 18 U.S.C. § 242 CAN BE CONSTITUTIONALLY APPLIED IS IF THIS COURT APPLIES THE MENS REA OF WILLFULNESS TO EVERY FACTUAL AVERMENT IN THE INDICTMENT.**

As indicated, 18 U.S.C. 242 is unconstitutionally vague both on its face and as applied. To make at least an attempt to salvage it, this Court must require the government to prove that Mr. Martin acted with the specific intent to engage in force that he knew to be unreasonable with the intended purpose of violating Mr. Nichols's Fourth Amendment right to be free from unreasonable

seizure. As to both counts, the government will have to prove, beyond a reasonable doubt, that the defendants: (1) willfully, (2) acting under color of law, (3) subjected Mr. Nichols, (4) within the United States, (5) to "the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States," (6) resulting in the bodily injury and death of Mr. Nichols. *See* 18 U.S.C. § 242; *United States v. Lanier*, 520 U.S. 259, 264 (1997) (citing *Screws v. United States*, 325 U.S. 91 (1945)). The deprivation of rights element differs by the alleged constitutional injury, but the elements are otherwise the same for Counts 1 and 2. *See United States v. Lanier*, 520 U.S. 259, 264 (1997). To cut through the "hazy" layers of "reasonableness" under the circumstances, this Court must require the government to apply the scienter of willfulness to every factual averment in the indictment. *See Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009) (holding *mens rea* element modifies all subsequent elements); *United States v. Ruan*, 142 S. Ct. 2370 (2022) (holding that *mens rea* element modifies preceding "except as authorized" clause and all regulations imported by specific reference into drug distribution statute).

### A. Application of a strong scienter requirement to every element in the proscriptive statute is necessary to avoid punishing otherwise innocent conduct.

"[A]s a general matter, our criminal law seeks to punish the vicious will." *Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2376 (2022) (quoting *Morissette v. United States*, 342 U. S. 246, 250, n. 4, 251 (1952)). Thus, courts "normally 'start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state.'" *Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019)). When a statute "'*includes* a general scienter provision,' 'the presumption applies with equal or greater force" to the scope of that provision. *Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019)) (emphasis in *Ruan*). To comply with the constitution and separate culpable from

innocent conduct, the *mens rea* must be read to modify not only the term that immediately follows it but also all the elements of the offense. *Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2377, 213 L.Ed.2d 706, 716 (2022) ("We have accordingly held that a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'"); *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009) (stating that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element"). "A strong scienter requirement helps to diminish the risk of 'overdeterrence,' i.e., punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line." *Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2378 (2022).

### B. Application of the mens rea of willfulness, despite the obvious limitations of that term, is necessary to avoid punishing conduct that is not criminal.

Although "'willful' is a word 'of many meanings,'" "the word denotes an act which is intentional rather than accidental," and, "when used in a criminal statute it generally means an act done with a bad purpose." *Screws v. United States*, 325 U.S. 91, 101 (1945) (citations omitted). In *Screws*, the Court ruled that one acts "willfully" as that term appears in 18 U.S.C. § 242 when he "act[s] with such specific intent is aware that what he does is precisely that which the statute forbids. . . . for he either knows or acts in reckless disregard of its prohibition of the deprivation of a defined constitutional or other federal right." *Screws v. United States*, 325 U.S. 91, 104 (1945); *see id.* at 103 (describing willfulness as "specific intent to deprive a person of a federal right made definite by decision or other rule of law"). Examining this definition through the lens of *Ruan* and *Flores-Figueroa*, it becomes clear that, in order to satisfy constitutional requirements, the scienter of willfully as defined by *Screws* as specific intent must be applied to every element of the offense,

including the underlying modes alleged. *See Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).

## V. COUNTS 1 AND 2 ARE CONSTITUTIONALLY DEFICIENT BECAUSE THEY DO NOT ALLEGE ALL THE NECESSARY ELEMENTS.

Criminal prosecutions must begin with a valid indictment, returned by an impartial grand jury, that provides fair notice about the allegations raised. *See* U.S. Const. amends. V and VI; *United States v. Blandford*, 33 F.3d 685, 704–05 (6th Cir. 1994) (indictment set forth sufficient facts to provide adequate notice to the accused). All elements necessary to the conviction and punishment of the defendant must be charged in an indictment and proven to a jury beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99 (2013); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Landham*, , 251 F.3d 1072, 1081 (6th Cir. 2001) (citing and applying *Hamling* standard, finding indictment insufficient and reversing convictions where government did not allege specific facts to support each count); Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise and definite written statement of the essential facts constituting the offense charged."). The standard is (1) whether the indictment "contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet," and (2) "in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005) (citation omitted). Counts 1 and 2 should be dismissed because they violate Mr. Martin's right to due process of law because they fail to allege the facts constituting the charged offenses and otherwise fail to put him on notice of the charged offenses. *See* Fed. R. Crim. P. 12(b)(3)(B)(v) (defects in the indictment must be raised prior to trial); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (affirming pretrial dismissal of indictment

"because the government was, as a matter of law, incapable of proving beyond a reasonable doubt" the elements of the offense).

### A. Count 1 does not contain sufficient factual averments to determine that Mr. Martin violated Mr. Nichols's constitutional rights by the use of unreasonable force and by failing to intervene.

An indictment will usually be sufficient if it states the offense using the words of the statute itself, so long as the statute fully and unambiguously states all the elements of the offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Farah*, 766 F.3d 599, 613 (6th Cir. 2014). The Supreme Court has cautioned, however, that "[u]ndoubtedly the language of the statute may be used in the general description of the offense, *but it must be accompanied with such a statement of facts and circumstances* as will inform the accused of the specific offense, coming under the general description with which he is charged." *Hamling v United States*, 418 U.S. 87, 117–18 (1974) (emphasis added). As indicated above, the *Screws* test informs the elements of 18 U.S.C. § 242, but Count 1 does not allege facts to indicate how Mr. Martin's conduct satisfies the *Screws* test.

As police officers, the defendants were permitted to exert some degree of force to effectuate the arrest of Mr. Nichols. *See, e.g.*, *Rudlaff v. Gillispie*, 791 F.3d 638, 641, 642 (6th Cir. 2015) (stating force may be used when a suspect is actively resisting arrest). Whether force employed, even in the case of deadly force, during a seizure is unreasonable is a fact-specific inquiry from the perspective of the defendant. *See, e.g.*, *Mullenix v. Luna*, 577 U.S. 7, 12-13 (2015) (stating that "this area is one in which the result depends very much on the facts of each case"); *see also Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) ("What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure."); *Cf. Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020) (stating in qualified immunity case that court "must examine the particular situation that [the defendants] confronted and ask

whether the law clearly established that their conduct was unlawful"). If an officer's actions fall along the "hazy border between excessive and acceptable force," there can be no showing that a constitutional violation was clearly established. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

The indictment in this case contains only the legal conclusion that the defendants used unreasonable force. *See United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993) (stating that "mere intention to use force that the jury ultimately finds unreasonable - that is, general criminal intent - is insufficient for conviction under section 242"), but alleges no facts to support the legal conclusion. At minimum, the indictment should have charged the defendants separately as to the unreasonable force allegation to assert *how* each individual officer acted unreasonably based on what they would have known at the time of the seizure. As written, Count 1 fails to allege whether the force was wholly unacceptable or became unacceptable at a later date, or whether the officers acted in accordance with their training. Count 1 is constitutionally and statutorily deficient and must be dismissed.

Count 1 also charges Mr. Martin with failure to intervene in the use of unreasonable force but does not allege that Mr. Martin knew the use of force against Mr. Nichols was unreasonable and that he knew he had a duty to intervene in the other officers' unreasonable use of force. *See United States v. Thao*, 76 F.4th 773, 777–78 (8th Cir. 2023) (citations omitted); *see also e.g.*, *United States v. Reece*, 2 F.3d 870, 890 (9th Cir. 1993) (stating "that a police sergeant who stands by and watches while officers under his command use excessive force and refuses to order them to stop may thereby 'subject' the victim to the loss of his or her right to be kept free from harm while in official custody or detention"). The absence of a basis to support the legal conclusion that

the officers used unreasonable force against Mr. Nichols similarly prohibits a conclusion that Mr. Martin knew that the force used was unreasonable and that he had a duty to interfere.

### B. Count 2 is constitutionally insufficient because it neither defines deliberate indifference nor provides sufficient factual allegations to support the legal conclusion that the officers showed a deliberate indifference to Mr. Nichols's medical need.

Due process mandates that government actors provide "medical care" to individuals "who have been injured while being apprehended by the police." *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The failure to provide medical care results in criminal culpability only when the actor shows "deliberate indifference to serious medical needs." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 835 (1970). The "seriousness" of the medical need must be significant and "obvious even to a lay person[.]" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004) (citation omitted). Count 2 does not allege that the seriousness of Mr. Nichols's medical need would have been obvious to a lay person or that he failed to act when Emergency Medical Technicians were *en route* to the scene of the arrest. Count 2, as written, prejudices Mr. Martin's ability to prepare a defense, to discern the factual basis for the grand jury's charge, and is insufficient to protect against double jeopardy.

### C. Counts 1 and 2 are constitutionally insufficient because they do not allege the facts necessary to apply either of the sentencing enhancements in 18 U.S.C. § 242.

A violation of 18 U.S.C. § 242 that results in bodily injury is punishable by a term of imprisonment of "not more than ten years" while a violation of that same statute that results in death carries with it imprisonment "for any term of years or for life" or even a sentence of death.

18 U.S.C.S. § 242. To establish that the bodily injury or death resulted from the defendant's violation of the statute, the government must prove that the violation of the statute was the proximate cause of the result. *See Burrage v. United States*, 571 U.S. 204, 210–11 (2014); *see also United States v. Martinez*, 588 F.3d 301, 318 (6th Cir. 2009) (requiring death to be proven by proximate cause for "results in death" provision); *United States v. Rebmann*, 226 F.3d 521 (6th Cir. 2000) (reversing and remanding for determination of causation element where death was an aggravating factor based on "if death results" language in drug distribution statute). Generally, a fact that "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" is an element of a crime, *Apprendi v. New Jersey*, 530 U.S. 466, 490, that must be sufficiently plead in the indictment, *Hamling v. United States*, 418 U.S. 87, 117 (1974). As discussed more fully in the memorandum in support of the motion to dismiss Counts 1 and 2 as duplicitous, specifically incorporated herein by reference (ECF Nos. 151, 152), neither count contains any factual allegations that would support the application of either provision, and, in consequence, both counts must be dismissed.

 Respectfully submitted this 7th day of February, 2024.

         RITCHIE, DAVIES, JOHNSON, & STOVALL, P.C.

         /s/Stephen Ross Johnson
         STEPHEN ROSS JOHNSON [TN BPR No. 022140]
         CATALINA L.C. GOODWIN [TN BPR No. 038660]
         606 W. Main Street, Suite 300
         Knoxville, TN 37902
         (865) 637-0661
         www.rdjs.law
         johnson@rdjs.law
         goodwin@rdjs.law

THE LAW OFFICE OF MASSEY MCCLUSKY FUCHS & BALLENGER

/s/ William D. Massey
WILLIAM D. MASSEY [BPR No. 9568]
3074 East Road
Memphis, TN 38128
(901) 384-4004
w.massey3074@gmail.com

## CERTIFICATE OF SERVICE

  I certify that on February 7, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

      s/Stephen Ross Johnson