**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Criminal No. 2:23-cr-20191-MSN** |
| ) | |
| ) | |
| **EMMITT MARTIN, III,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**UNITED STATES' RESPONSE**
**TO DEFENDANT MARTIN'S MOTION TO DISMISS COUNTS 1 AND 2**
**FOR VAGUENESS AND INSUFFICIENCY**

The United States respectfully opposes Defendant Martin's Motion to Dismiss Counts 1 and 2 for Vagueness and Insufficiency, as joined by defendants Bean, Haley, and Smith.   (ECF Nos. 167 (Motion) and 168 (Supporting Memorandum); ECF Nos. 171, 182, and 186 (Notices of Joinder)).   These Counts each charge that the defendants, acting under color of law, willfully deprived Tyre Nichols of a right secured and protected by the Constitution and laws of the United States, in violation of 18 U.S.C. § 242.   The Court should deny the motion because controlling case law conclusively establishes that § 242 is not vague, the rights the defendants are charged with violating are clearly established, and Counts One and Two easily meet the standards for indictment sufficiency set forth in the Federal Rules and caselaw.

**<u>Factual and Procedural History</u>**

On January 7, 2023, five Memphis Police Department (MPD) officers assaulted Tyre Nichols after he fled from them following a traffic stop.   Three days after the incident, Mr.

Nichols died because of the blunt force trauma injuries he suffered during the assault.

On September 12, 2023, a federal grand jury issued a four-count indictment against the five MPD Officers.   Count One charges that the defendants, acting under color of law both as principals and as aider and abettors, willfully deprived Mr. Nichols of rights secured and protected by the Constitution and laws of the United States by using excessive force during a seizure. Specifically, Count One charges that the defendants used excessive force against Mr. Nichols, aided and abetted the use of excessive force by codefendants, and failed to intervene to stop codefendants from using excessive force.

Count Two charges that the defendants, acting under color of law both as principals and as aider and abettors, willfully deprived Mr. Nichols of rights secured and protected by the Constitution and laws of the United States by being deliberately indifferent to his serious medical needs.   Both counts allege that the offense resulted in bodily injury to Mr. Nichols and that the offense resulted in his death.[1]

## Law and Argument

This Court should join every court to have considered this issue, including the Supreme Court, and reject the defendants' argument that § 242 is unconstitutional.   This Court should likewise rely on well-settled authority and reject the defendants' arguments that Counts One and Two of the indictment are legally insufficient to allege a violation of § 242.

### I.      Section 242 is Constitutional Both on its Face and As Applied

For well over a century, 18 U.S.C. § 242 (both as currently codified and in previous incarnations) has been the primary criminal enforcement tool for bringing to justice government officials who engage in violations of constitutional rights.   In all this time, no federal court has

---

[1] Counts Three and Four, not at issue in the instant motion, charge the defendants with conspiracy to engage in witness tampering and witness tampering.

struck down the statute as vague.  In fact, as set forth below, the Supreme Court has squarely rejected a vagueness challenge to § 242.  The statute is not vague because § 242 prosecutions require the government to prove that (1) the right that the defendants violated is one that is clearly established and (2) the defendants acted willfully, with awareness of the wrongfulness of their conduct.  Courts have repeatedly found that these requirements fully protect defendants' rights while providing a mechanism for enforcement of the nation's most essential rights.  Binding precedent requires the Court to hold that § 242 is constitutional.

A.    **Legal Standard: Void for Vagueness**

Criminal statutes must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *United States v. Messer*, 71 F.4th 452, 458 (6th Cir. 2023), *cert. denied*, No. 23-5995, 2023 WL 8532089 (U.S. Dec. 11, 2023), and *cert. denied*, No. 23-6061, 2024 WL 72294 (U.S. Jan. 8, 2024).  "[F]ew statutes meet the void-for-vagueness threshold" because a "strong presumptive validity" applies to all acts of Congress and mere "difficulty" in determining a statute's meaning does not render it unconstitutional.  *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020).  "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  *United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005).

Because § 242 provides criminal penalties, the defendants may mount a facial challenge as well as an "as-applied" challenge.  *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) ("[E]ven in cases not involving First Amendment rights, we have recognized that courts may engage in a facial analysis where the enactment imposes criminal sanctions."); *see also Frese v. Formella*, 53 F.4th 1, 6 (1st Cir. 2022) ("[I]f criminal penalties may

3

be imposed for violations of a law, a stricter standard is applied in reviewing the statute for vagueness."), *cert. denied*, 144 S. Ct. 72 (2023).[2]

The defendants can prevail only if they demonstrate that § 242 either "(1) defines the offense in such a way that ordinary people cannot understand what is prohibited, or (2) encourages arbitrary or discriminatory enforcement." *Kettles*, 970 F.3d at 650 (internal quotations, citations, and alteration omitted); *see also United States v. Carpenter*, No. 3:21-CR-38-KAC-DCP, 2022 WL 17834330, at *5 (E.D. Tenn. Aug. 25, 2022), *report and recommendation adopted*, No. 3:21-CR-38-KAC-DCP, 2022 WL 17450713 (E.D. Tenn. Dec. 6, 2022). The defendants cannot prevail if they demonstrate merely a "possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1303 (D.C. Cir. 2023).

### B.    Section 242 is Facially Constitutional

*1.    Decades of Controlling Authority Establish that § 242 is Facially Constitutional*

Decades of controlling authority require this Court to reject the defendants' facial challenge. Section 242 criminalizes the willful violation of a constitutionally or federally protected right by someone acting under color of law. 18 U.S.C. § 242; *United States v. Lanier*, 520 U.S. 259, 264 (1997); *United States v. Lanham*, 617 F.3d 873, 885 (6th Cir. 2010) (reciting elements). Over seventy-five years ago, the Supreme Court fully considered, then squarely rejected, the argument that § 242 was unconstitutionally vague. *Screws v. United States*, 325

---

[2] Some Sixth Circuit cases have stated that a facial vagueness challenge cannot be raised, even to criminal laws, unless those laws implicate the First Amendment. *See, e.g.*, *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (evaluating 28 U.S.C. § 922(g) and explaining that "[f]or challenges to the statute that do not implicate First Amendment concerns, the defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation" ). Assuming the challenge *can* be raised in this case, it fails for the reasons explained herein.

U.S. 91, 104 (1945).

The *Screws* court explained that § 242, while broad, is not vague because it requires that (1) the right the defendant is accused of violating is one that is clearly established, and (2) the jury determine that the defendant was acting willfully, meaning that he understood his conduct was wrongful, even if he was unfamiliar with the legal contours of the right at issue. *Id.* at 103 (holding that the "requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness"). The Court has not retreated from this holding and, in fact, has reiterated it multiple times. *Lanier*, 520 U.S. at 265; *United States v. Kozminski*, 487 U.S. 931, 941 (1988); *Williams v. United States*, 341 U.S. 97 (1951); *United States v. Guest*, 383 U.S. 745 (1966); *United States v. Price*, 383 U.S. 787 (1966); *see also United States v. Reese*, 2 F.3d 870, 880 & n. 16 (9th Cir. 1993) (noting that *Screws* "remains the touchstone for analysis" and citing cases).

The Sixth Circuit has endorsed this result by relying on the *Screws* analysis in analyzing arguments that other statutes were vague. *United States v. Caseer*, 399 F.3d 828, 854–55 (6th Cir. 2005) (applying *Screws* to analyze whether drug laws survived a vagueness challenge and emphasizing that striking down § 242 for vagueness would have been a "very undesirable result"). Other federal courts have also recognized *Screws*' continuing validity. *See, e.g.*, *United States v. Ehrlichman*, 546 F.2d 910, 920 (D.C. Cir. 1976) (explaining *Screws*); *United States v. Jackson*, 235 F.2d 925, 928 (8th Cir. 1956) (same); *United States v. Teel*, 299 F. Apex 387, 389 (5th Cir. 2008) ("The facial constitutionality of § 242 was settled long ago."); *United States v. Glover*, No. 3:22-CR-00057-HZ, 2023 WL 3304311, at *2 (D. Or. May 7, 2023) (rejecting vagueness challenge to § 242); *United States v. Buntyn*, No. 1:20-CR-708-KWR, 2020 WL 7342688, at *3 (D.N.M.

5

Dec. 14, 2020) (rejecting argument that § 242 is unconstitutionally vague); *United States v. Peterson*, No. 4:15-cr-3076, 2015 WL 8793799, at *3 (D. Neb. Nov. 23, 2015) (same); *United States v. McCoy*, No. 5:08-cr-135, 2016 WL 1248743, at *12 (E.D. Ky. Mar. 29, 2016) (citing *Screws* to reject a void for vagueness challenge to § 242).

The defendants' challenge boils down to a complaint that merely scanning the text of § 242 does not fully inform a reader of all conduct it prohibits.   Defendant's Mem. in Support of Mot. to Dismiss Counts 1 and 2 for Vagueness and Insufficiency (ECF 168) (hereinafter "Mem.") at 1. In *Lanier*, the Supreme Court explained the way § 242 operates, noting that, instead of explicitly describing the conduct it forbids, it incorporates, by reference, the violation of all clearly established constitutional or federal rights.   *Lanier*, 520 U.S. at 265 ("Thus, in lieu of describing the specific conduct it forbids, [§§ 241 and 242's] general terms incorporate constitutional law by reference.").   The *Lanier* court did not hold, or even suggest, that this feature of § 242 rendered it unconstitutional.   Instead, it held that prior judicial decisions provide fair warning that the charged conduct is unconstitutional.   *Id.* at 267.

In other words, once a right "has been defined and made specific by court decisions," that right is encompassed by § 242 as though written into its text.   *United States v. Epley*, 52 F.3d 571, 576 (6th Cir. 1995) ("[O]nce a due process right has been defined and made specific by court decisions, that right is encompassed by § 242."); *see also United States v. Hayes*, 589 F.2d 811, 820 (5th Cir. 1979) (same); *United States v. Bradfield*, 225 F.3d 660 (6th Cir. 2000) (unpublished) (same).   Willful violators of such a settled right "are in no position to say that they had no adequate advance notice that they would be visited with punishment."   *Lanier*, 520 U.S. 259 at 267 (quoting *Screws*).   This is especially true for the very well-established rights at issue in Counts One and Two.

The fact that § 242 requires application of cross-references to fully elucidate its meaning does not make it vague.   *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir. 2013) (holding that even an awkwardly phrased cross-reference "does not introduce confusion").   The defendants have cited no law, and the government has found none, suggesting that a statute must be struck down as vague unless the four corners of the statute itself contain all information a defendant needs to appreciate the wrongfulness of his conduct.

Contrary to the defendants' argument (Mem. at 4-7), a person of ordinary intelligence can understand what conduct is prohibited by consulting a fully developed body of caselaw.   A law enforcement officer of ordinary intelligence can easily understand what the law allows, and what it does not.   This body of case law guards against arbitrary enforcement, as it precludes the government from prosecuting a defendant for engaging in conduct in the absence of a determination that that conduct is unconstitutional.[3]

> 2.   *This Court Should Decline the Defendants' Invitation to Overrule The Supreme Court's Decision that § 242 is Not Vague Because it Lacks the Power to Do So.*

Relying on two dissenting opinions from over seventy years ago and a thirty-year-old law review article, the defendants assert that *Screws* "has long been the subject of criticism."   Mem. at 4.   Based upon this "criticism," the defendants encourage this Court to do what it may not: overrule settled Supreme Court precedent.   *See* Mem. at 1 ("*This Court* should declare 18 U.S.C. § 242 unconstitutional on its face and dismiss Counts 1 and 2") (emphasis added).

The defendants assert only that *Screws* has been *criticized*; they nowhere assert that it has been overruled, or even limited, nor can they.   The defendants' best argument for questioning the "continued validity" of *Screws* lies in their reading of "more recent Supreme Court vagueness

---

[3]  The defendant's own authorities undermine his argument.   *See* Mem. at 7-9 (citing law *upholding* the constitutionality of § 242 due to its scienter requirement yet arguing that § 242's scienter requirement is insufficient to guard against arbitrary enforcement).

decisions." Mem. at 4. But these decisions concern the term "crime of violence." The cases cited by the defendants do not cast doubt upon the holding of *Screws* or the constitutionality of § 242.[4] *See Buntyn*, 2020 WL 7342688, at *3 (declining to hold *Screws* vague based upon Supreme Court decisions holding that the definition of a crime of violence is vague as used in the Armed Career Criminal Act (ACCA)).

In short, the defendants ask this Court to strike down § 242 because, based on inapposite cases, the Supreme Court theoretically *could* overturn *Screws*, given the opportunity. *Screws* has been upheld by the Supreme Court and federal courts for decades. *See Lanier*, 520 U.S. at 265; *United States v. Lanham*, 617 F.3d 873 (6th Cir. 2010), *cert. denied*, 563 U.S. 1002 (2011); *United States v. Epley*, 52 F.3d 571, 576 (6th Cir. 1995) (noting that "[c]ourts have applied § 242 to punish police officers who have abused their authority") (citing, *inter alia*, *United States v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990), *cert. denied*, 500 U.S. 904 (1991); *United States v. Alonso*, 740 F.2d 862, 872-73 (11th Cir. 1984), *cert. denied*, 469 U.S. 1166 (1985)). More fundamentally, lower courts may not overturn Supreme Court decisions, even in the face of more persuasive criticism of settled law than provided by the scant authorities cited in the defendants' motion. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decision, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.") (internal citation omitted); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (same); *see also Ohio v. Becerra*, 87 F.4th 759, 770 (6th Cir. 2023) (same, quoting *Agostini* and *Rodriguez*).

     3.     *The Defendants' Argument that § 242 Violates Separation of Powers Lacks Merit*

---

[4] In fact, one of the recent vagueness decisions relied upon by the defendant, while not discussing § 242, cites with approval *Lanier*, which applied the *Screws* standard. *United States v. Davis*, 139 S. Ct. 2319, 2332-33 (2019).

The defendants next assert that § 242 violates Separation of Powers principles.   Mem. at 8.   The defendants have cited no case holding, or even suggesting, that § 242 violates Separation of Powers principles.   They likewise cite no case holding that § 1983—§ 242's civil analogue—violates Separation of Powers principles, even though § 1983 has been frequently litigated.[5]   In fact, they provide no analysis for this argument at all.[6]   The motion cites cases standing for the general proposition that vague laws can encroach on Separation of Powers principles, then asserts that "[t]he *Screws* test is a prime example of judicial legislation, which is barred by the Separation of Powers clauses of the United States constitution."   Mem. at 8.   Because this argument rests on the rationale that vague laws are unconstitutional, it necessarily folds back into the earlier assertion that § 242 is vague and fails for the reasons cited above.

The defendants may be suggesting that through its incorporation by cross reference to clearly established law, § 242 provides for legislation by the courts, not Congress.   The defendants, however, have been charged with violating *a statute*—not with running afoul of a judicially created doctrine.   Section 242 provides punishment for the violation of the most fundamental rights enshrined in America's founding document.   These rights are judicially *interpreted*, but they were not created by the courts.   They flow directly from the Constitution.

### C.    Section 242 is Constitutional as Applied to Counts One and Two

The as-applied challenges fare no better.   When a constitutional right has been clearly established, a defendant necessarily has notice of what the law forbids.   *Lanier*, 520 U.S. 259,

---

[5] Section 1983 provides civil damages for the deprivation of constitutional rights by state actors.   *See* 18 U.S.C. § 1983.   Section 1983, like § 242, incorporates those rights by reference, instead of spelling out, in its text, the myriad ways in which a defendant might violate the Constitution.

[6] Their argument may be denied on that basis alone.   Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997); *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999).

271–72 (holding that if, "in the light of pre-existing law the unlawfulness under the Constitution is apparent," the fair warning requirements of § 242 are satisfied) (internal quotations, citation, and alteration omitted).   The defendants may prevail on an as-applied challenge only if they show that the rights set forth in each count were not clearly established at the time of their offenses.[7] The constitutional rights at issue in Counts One and Two are among the most well-known and clearly established rights of our Constitution.

1.   *The Caselaw Establishing an Arrestee's Right to be Free from Excessive Force, Including Assaults, is Clearly Established*

Law enforcement officers have been aware at least since *Graham* was decided in 1989 that they may not use excessive force during a seizure.[8]   *Graham v. Connor*, 490 U.S. 386, 396, (1989) ("[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ...."); *Schreiber v. Moe*, 596 F.3d 323, 331–32 (6th Cir. 2010) (same, citing *Graham*).   To determine whether a use of force was excessive and thus in violation of the Fourth Amendment, the factfinder must consider whether his actions were "objectively reasonable in light of the facts and circumstances confronting him."   In assessing a

---

[7]  The defendants generally complain that § 242 lacks "clear standards for compliance, particularly for law enforcement officers often forced to make split-second decisions."  Mem at 9.   Yet, the jurisprudence that interprets the rights at issue has been developed in cases involving the use of force by law enforcement officers.   In analyzing these cases, the courts have been expressly concerned with difficulties inherent in policing, including the need to make split-second decisions, and case law already incorporates these concerns.   *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (explaining the standard for determining whether force is excessive); *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (same); *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 448 (6th Cir. 2023) (same).

[8]  To determine the objective reasonableness of an officer's use of force, the finder of fact must pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Barton v. Martin*, 949 F.3d 938, 952 (6th Cir. 2020) (explaining *Graham*).   To be sure, the test is not capable of "precise definition or mechanical application."   *Graham v. Connor*, 490 U.S. 386, 394, 396-97 (1989); *Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019).   The fact that the test is not "mechanical" does not render the Fourth Amendment vague.   Instead, it makes it appropriate for resolution by a properly instructed jury, which can consider all the facts and circumstances and then apply standard clearly set forth in *Graham* and its progeny to render a decision.

claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable'" in light of the facts and circumstances confronting them. *Lombardo v. City of St. Louis*, 594 U.S. 464, 466 (2021); *Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 753 (6th Cir. 2020) (internal quotations, citation, and alteration omitted).

When determining whether a right is clearly established, courts look beyond broad principles to determine whether the right is clearly established at a more specific level of generality. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("This Court has repeatedly told courts ... not to define clearly established law at a high level of generality."). However, a right must not be defined at such a narrow level of generality that it requires prior cases to be on "all fours" with the conduct set forth in the Indictment. *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508–09 (6th Cir. 2012) (holding "it defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas)"); *see also Lanier*, 520 U.S. at 269 ("Nor have our decisions demanded precedents that applied the right at issue to a factual situation that is fundamentally similar").

Here, the indictment alleges that the defendants assaulted Mr. Nichols. Contrary to the defendants' implication, they are not charged with using reasonable force to take a resisting person into custody. *See* Mem. at 11. The right to be free from the kinds of assault described in the indictment is clearly established. *Williams v. Maurer*, 9 F.4th 416, 440 (6th Cir. 2021) ("[I]t is clearly established that '[g]ratuitous violence is never reasonable' because there is 'simply no governmental interest' justifying gratuitous violence."); *Meadows v. City of Walker*, 46 F.4th 416, 422 (6th Cir. 2022) ("[O]ur precedent clearly establishes that taking [a suspect] to the ground, beating him, and fracturing his wrist when he did not actively resist arrest constitutes excessive

11

force.   It has been clearly established for several years in the Sixth Circuit that an officer cannot use injurious physical force to subdue a suspect that is not actively resisting arrest.").   The Indictment in this case breaks no new ground; most cases involving excessive force are ones involving beatings and similar assaults.[9]

The defendants complain that it is "not clear whether the amount of force used by the defendants, from their individual perspectives, is 'made specific' for purposes of 18 U.S.C. § 242." *See* Mem. at 12.   The Fourth Amendment standard for excessive force is purely an objective standard.   *VanPelt v. City of Detroit, Michigan*, 70 F.4th 338, 341 (6th Cir. 2023) ("[O]ur excessive-force analysis is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").   A defendant's individual "perspective" is irrelevant to the question of whether the Fourth Amendment has been violated.   Of course, the government will separately have to prove that the defendants acted willfully, knowing their conduct was wrongful, but this is not part of the reasonableness inquiry.   *See Reese*, 2 F.3d at 884 ("The violation of a federally protected right and the specific intent to violate that right are separate elements of the crime established by the statute.").

Defendant Martin may be suggesting that the indictment should have been more specific about what precise force he himself used during the assault of Mr. Nichols.   If this is his argument, it overlaps with his argument about the sufficiency of the Indictment, and fails for the reasons explained below.   Moreover, this argument ignores that the defendant is also charged with aiding

---

[9] The assault alleged in the indictment is by no means a novel use of force such that a reasonable officer could not predict that the conduct could subject him to prosecution.   *See, e.g.*, *Koon v. United States*, 518 U.S. 81, 86 (1996) (beating of Rodney King); *United States v. Bean*, No. 22-5814, 2023 WL 6623196, at *5 (6th Cir. Oct. 11, 2023) (affirming conviction of defendant who punched arrestee); *see also United States v. Boone*, 828 F.3d 705, 708 (8th Cir. 2016) (describing assault); *United States v. Rodella*, 804 F.3d 1317, 1322 (10th Cir. 2015) (describing assault).

and abetting his codefendants' unconstitutional uses of force and with failure to intervene.   The argument also logically fails: everyone knows, because it is captured on video, that defendant Martin punched the victim in his head over and over again.   The defendant admitted as much when, as alleged in Count Three, he bragged about striking Nichols with "straight haymakers."

The defendants argue that there can exist a "hazy border" in which the law is not clearly established and when it is therefore unclear whether a particular use of force is unconstitutional. Mem. at 12 (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).   The fact that there may be *some* hazy cases in which a prosecution is barred by the fair warning doctrine provides no basis to dismiss in *this* case Count One, which falls squarely in the heartland of conduct prohibited by the Fourth Amendment.   *See Barton v. Martin*, 949 F.3d 938, 954 (6th Cir. 2020) ("The facts here do not present one of the hazy cases where an officer should be entitled to qualified immunity for making an objectively reasonable mistake as to the amount of force that was necessary.").   The defendants cannot, in raising an as-applied challenge, move to dismiss this indictment because, in some other, hypothetical case, a defendant might be charged with a use of force that falls into such a hazy area.   *Kernell*, 667 F.3d at 750 ("Even if a statute might be vague as it relates to other, hypothetical defendants, courts will not entertain vagueness challenges on behalf of a defendant whose conduct clearly falls within the ambit of the statute.").

   2.   *The Caselaw Clearly Establishes an Arrestee's Right to be Free From an Officer's Failure To Intervene to Prevent the Use of Excessive Force*

It is also clearly established that when an officer acquiesces in an unconstitutional use of force against another, that officer violates the Fourth Amendment.   *See, e.g.*, *United States v. Thao*, 76 F.4th 773, 778 (8th Cir. 2023) (upholding convictions of officers who failed to intervene to prevent Derek Chauvin from using excessive force against George Floyd and collecting cases), *cert. denied*, No. 23-6109, 2024 WL 72331 (U.S. Jan. 8, 2024); *United States v. Broussard*, 882

F.3d 104, 110 (5th Cir. 2018) ("A law enforcement officer may be held liable under Section 242 for the substantive offense if the evidence shows awareness of a constitutional violation and no effort to prevent the violation."); *Durham v. Nu'Man*, 97 F.3d 862, 867 (6th Cir. 1996) (reviewing cases holding that law enforcement officers and prison guards can be held liable for failing to stop an assault by fellow officers); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("The foregoing authority clearly counsels that it is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff.").

3.    *The Caselaw Clearly Establishes the Right to Be Free From Deliberate Indifference*

Count Two is not vague as applied because it has been clearly established for decades that law enforcement officers may not be deliberately indifferent to the serious medical needs of a person in custody.   *See, e.g.*, *Mercer v. Athens Cnty., Ohio*, 72 F.4th 152, 164 (6th Cir. 2023) ("[W]e have acknowledged that as early as 1972, where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process."); *Jackson v. Wilkins*, 517 F. App'x 311, 319 (6th Cir. 2013) (holding, in case in which officer did not provide arrestee immediate medical care or tell nurse full extent of injuries, that the "right to adequate medical care was clearly established at the time of the injury").[10]    The defendants cite no cases and make no argument that the right to be free from deliberate indifference was not clearly established at the time of the offense.    *See* Mem. at 11-12 (captioned as an argument that *both* counts One and Two are vague "as-applied" but containing textual support only for his argument that Count One, alleging excessive force, is

---

[10] Appellate courts have upheld § 242 criminal convictions of defendants charged with deliberate indifference. *United States v. Gray*, 692 F.3d 514, 523 (6th Cir. 2012) (upholding conviction of an officer who put a pretrial detainee "into a position requiring medical attention" by applying a sleeper hold, and then "acted with indifference toward [the detainee's] injured state"); *see also Thao*, 76 F.4th at 778 (upholding § 242 conviction for officer who was deliberately indifferent to serious medical needs of George Floyd).

vague).    Again, the Court may reject this claim on the basis that it is waived alone.

**D.    There is No Authority for Defendant's Alternate Argument that Willfulness Modifies "every element of § 242."**

The defendants next argue that the only way this Court can hold that § 242 is *not* vague is to incorporate the *mens rea* of willfulness into "every factual averment" in the indictment (Mem. at 12) and to "every element of the offense" (Mem. at 14).    The defendants have not offered any authority indicating that a court has reached this conclusion in any of the many § 242 cases prosecuted across the country.    The Sixth Circuit's pattern instruction makes clear that the willfulness *mens rea* is only one element of an offense.    *See* Sixth Circuit Pattern Jury Instructions - Instruction 2.02 (2023).    The defendants cite no case or pattern instruction requiring a court to pepper the jury instructions with the word "willful" for a defendant to be convicted of a § 242 offense.    Adding the word to modify *every* factual allegation and *every* element would require the court to parrot the word in every sentence of the instruction.    At any rate, the Court may resolve the issue of how the jury should be instructed, with input from all parties, at the appropriate time.    The defendant's argument provides no basis for dismissing the indictment.

**II.    Counts One and Two of the Indictment Clearly State an Offense**

The defendants argue that if Counts One and Two are not dismissed for vagueness, they should be dismissed for failure to state an offense.    The Court should reject this argument because precedential case law makes clear that the indictment is sufficient.

**A.    Legal Standard:   Sufficiency**

An indictment is to be construed liberally in favor of its sufficiency.    *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).    Rule 7 of the Federal Rules requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."    Fed. R. Crim. P. 7(c)(1).    The standard for examining the sufficiency of

an indictment is governed by the Supreme Court's decision in *Hamling*.  *Hamling v. United States*, 418 U.S. 87, 117 (1974).   The Court explained that an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Id.*; *McAuliffe*, 490 F.3d at 531 ("To be sufficient, the indictment must (1) detail each element of the charged offense and give the defendant notice of the charges he faces, and (2) "be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.");  *United States v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020) (same); *United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at *2 (6th Cir. Feb. 1, 2022) (same).   In other words, an indictment is generally sufficient if it "fully, directly, and expressly sets forth all the elements necessary to constitute the offense intended to be punished."  *McAuliffe*, 490 F.3d at 531 (6th Cir. 2007) (internal quotations, citations, and alteration omitted); *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005) (same).

The Federal Rules of Criminal Procedure require that indictments be concise.   Fed. R. Crim. P. 7(c)(1).   The government "need not recite all of its evidence in the indictment."   *United States v. Davila-Reyes*, 84 F.4th 400, 417 (1st Cir. 2023); *see also United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) ("When courts go beyond the face of the indictment, they are testing the sufficiency of the evidence, not whether the indictment stated an offense."). For this reason, indictments cannot be challenged on the basis they are not supported by adequate or competent evidence.   *Costello v. United States*, 350 U.S. 359, 363–64 (1956); *see also United States v. Palma*, 58 F.4th 246, 249 (6th Cir. 2023) (holding that courts may not "evaluate the evidence upon which the indictment is based.").

16

**B.      Count One of the Indictment Is Clearly Sufficient Under Rule 7(c) and *Hamling***

Count One more than satisfies the requirements of Rule 7(c)(1) and *Hamling*.   Count One alleges that, while acting under color of law, the defendants willfully deprived Mr. Nichols of a right secured and protected by the Constitution and laws of the United States, thus tracking the statutory language.   The indictment alleges that the defendants were acting as detectives with the Memphis Police Department, and it provides the "on or about" date of the offense and the name of the victim, thus allowing each defendant to distinguish his interaction with Mr. Nichols from any other arrests he has made during his law enforcement career.   *Cf. United States v. Lee*, No. 3:12-00055, 2012 WL 4131614, at *2 (M.D. Tenn. Sept. 17, 2012) (denying defense motion for a bill of particulars in § 242 case where defendant "underst[ood] that he is charged with an assault that occurred outside a residence" at a particular address).

The indictment identifies the constitutional right at issue with particularity, describing it as the right to be free from unreasonable seizure.   It then identifies the precise nature of the Fourth Amendment violation at issue, explaining that the defendants violated Mr. Nichols' right to be free from unreasonable *force.*   This language would, alone, be more than sufficient to satisfy the federal rules and *Hamling*, but the indictment goes further, "specifically" alleging that the defendants assaulted Mr. Nichols, aided and abetted codefendants in their assault of Mr. Nichols, and failed to intervene to prevent codefendants from assaulting Mr. Nichols.   Finally, the indictment includes two sentencing elements, alleging that the offense resulted in bodily injury and in the death of Mr. Nichols.   *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum" as determined by the statute of conviction "must be submitted to a jury, and proved beyond a reasonable doubt."); *United States v. Belcher*, No. 22-1650, 2024 WL

17

506264, at *3 (6th Cir. Feb. 9, 2024) (applying *Apprendi*).

The defendants do not explain what missing details prohibit them from understanding the charges, nor do they explain why this indictment would not protect them from double jeopardy. The claim that the indictment contains only legal conclusions is contravened by the words in the indictment.   The argument that the indictment should explain "how each individual officer acted unreasonably based on what they would have known at the time of the seizure," Mem at 17, is nothing more than an improper allegation that an indictment must contain every fact that the government will prove at trial.

Defendant Martin complains that the indictment fails to allege that he "knew the use of force against Mr. Nichols was unreasonable and that he knew he had a duty to intervene in the other officers' unreasonable use of force."   Here, the defendant improperly conflates the standard that the jury must use to decide if he is guilty with what must be alleged in the indictment.   The government will have to prove the defendant's willfulness, *i.e.*, that he knew what he was doing was wrong, but it does not have to detail its trial proof in the indictment.   *See United States v. Davis*, 717 F.3d 28, 34 (1st Cir. 2013) (explaining that the defendant's argument "confuses the purposes of indictments and instructions.   The purpose of the former is to provide a defendant with adequate notice of the charges against him, while the function of the latter is to convey to the jury the legal elements required for conviction."); *United States v. Davalos-Lopez*, 773 F. App'x 967, 968 (9th Cir. 2019) ("[T]hat the indictment did not define the distinct legal meaning of 'entry' does not render it deficient, for indictments need not contain the level of specificity that may be required in jury instruction."); *United States v. Moore*, No. 20-CR-91, 2021 WL 3024058, at *4 (E.D. Wis. Apr. 27, 2021) ("[W]hat's in the indictment and what's proven to a jury are very different questions."), *report and recommendation adopted*, No. 20-CR-91-PP, 2021 WL 2493808

(E.D. Wis. June 18, 2021).

### C.     Count Two of the Indictment is Sufficient

The defendants' argument that Count Two is defective fares no better than the argument regarding Count One.   Count Two identifies every element of the § 242 offense and provides constitutionally sufficient notice of the charged conduct.   The indictment, tracking the statutory language, alleges that, while acting under color of law, the defendants willfully deprived Mr. Nichols of a right secured and protected by the Constitution and laws of the United States.   Like Count One, Count Two provides the date of the offense, name of the victim, and description of the law enforcement agency for which the defendants worked.

Count Two describes the constitutional right at issue as the right not to be deprived of liberty without due process of law, further explaining that this right "includes the right of an arrestee to be free from a police officer's deliberate indifference to his serious medical needs." The indictment also alleges that the offense resulted in bodily injury to and the death of Mr. Nichols.   These allegations alone would be sufficient.   However, as with Count One, the indictment provides additional information.   It explains that the defendants "specifically" are charged with failing to render medical aid and with failing to advise the MPD dispatcher and emergency medical personnel that Mr. Nichols had been struck repeatedly.

The defendants complain that the phrases "deliberate indifference" and "serious medical need" are not defined in the Indictment.   *See* Mem. at 18.   An indictment need not include a definition of every word it uses to be sufficient, however.   *See Hamling*, 418 U.S. at 118; *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).   These terms are legal terms of art that are well defined in ample case law.   When an indictment uses a legal term of art, it is not deficient. *United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) ("When the indictment references a

legal term of art defined in the statute, such a term is sufficiently definite in legal meaning to give a defendant notice of the charge against him.") (internal citation to *Hamling* omitted); *see also, e.g.*, *United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000) ("[A]n indictment that charges a legal term of art 'sufficiently charges the component parts of the term.") *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982) (holding that the key words of statute were "terms of art" and since they "do not change from statute to statute or indictment to indictment, they are definite enough in legal meaning to give defendant notice of the charge . . .").

Defendant Martin complains that the absence of a definition of the phrase "serious medical need" has prejudiced his ability to "prepare a defense, to discern the factual basis for the grand jury's charge, and to protect him against double jeopardy."   Mem. at 18.   But his own argument belies this assertion since, in the same paragraph, the defendant quotes the definition of "serious medical need" with a case citation.   *Id.*   Clearly, he has not been prejudiced by the fact that the definition is absent from the indictment.

## D.   The Sentencing Enhancements do not Render the Indictment Duplicitous or Insufficient

Defendant Martin also argues that the indictment is insufficient because it contains two separate sentencing enhancements.   As he recognizes, Mem. at 19, this argument is a repackaging of his separate duplicity argument raised in a separate motion.   (ECF Nos. 152 and 153.)   These arguments will thus be addressed in the government's response to that motion.

## Conclusion

The government respectfully submits that this Court should join every court to have considered this issue and reject the defendants' claim that § 242 is unconstitutional.   This Court should likewise rely on well-settled authority and reject the defendants' claim that Counts One and Two of the Indictment are legally insufficient to allege a violation of § 242.

20

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:   s/ Forrest Christian
FORREST CHRISTIAN
Deputy Chief
KATHRYN E. GILBERT
Special Litigation Counsel
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430
Forrest.Christian@usdoj.gov

21

**CERTIFICATE OF SERVICE**

I, Forrest Christian, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

s/Forrest Christian
FORREST CHRISTIAN
March 2, 2024