IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2:23-cr-20191-MSN |
| ) | |
| ) | |
| EMMITT MARTIN, III, et al., ) | |
| ) | |
| Defendant. ) | |

**CONSOLIDATED RESPONSE IN OPPOSITION
TO DEFENDANT HALEY'S MOTIONS TO RESTRICT OR EXCLUDE
EXPERT AND LAY OPINIONS ON USE OF FORCE ISSUES**

The United States respectfully opposes Defendant Demetrius Haley's Motion to Restrict Lay Opinion Testimony Regarding Use of Force (ECF No. 158) and Motion to Exclude Expert Opinions on Use of Force Issues Pursuant to FRE 702, 703, and 705 (ECF No. 160), as joined by defendants Bean and Smith (ECF Nos. 161, 162, 180, 181). Courts within the Sixth Circuit and beyond routinely admit testimony from defendants' police trainers in police misconduct cases because it is essential evidence of willfulness, an element of the offense charged in Counts One and Two. The motions should be denied because they would deny the jury this essential information and are factually and legally without merit.

**ARGUMENT**

In this trial about the defendants' use of force, defendants seek to exclude or severely limit the testimony of the very officers who trained the defendants about using force with the Memphis Police Department (MPD). This defense request is logically and legally unsound. The

defendants' trainers will provide critical testimony about what the defendants were trained to do with MPD and whether their actions during the charged conduct deviated from that MPD training. Such testimony is routinely admitted in criminal civil rights cases and should also be admitted here.

    **I.**    **Law Enforcement Trainer Testimony is Routinely Admitted in 18 U.S.C. § 242 Cases Because it is Invaluable to the Factfinder**

Trainer testimony is uniformly admitted in 18 U.S.C. § 242 cases because it is essential to proving willfulness, an element of the offense. *See United States v. Proano*, 912 F.3d 431, 438 (7th Cir. 2019) ("The two most pressing questions for the jury [in a § 242 case] [are] whether [the defendant] used [] force unreasonably and, if so, whether he did so willfully."). The willfulness element of § 242 requires the United States to prove that a defendant knew what he was doing was wrong, but he chose to engage in that act anyway. If a defendant was trained to follow a particular policy, or to use a particular technique, but the charged conduct reflects that the defendant deviated from that policy, or failed to use that technique, training and policy evidence strongly suggests the defendant knew his acts were wrong. In other words, such evidence would show that the defendant knew to do one thing but chose to do another. "Without question, violation of a policy may help to demonstrate that an individual acted willfully." *United States v. Bryant*, 528 F. Supp. 3d 814, 818 (M.D. Tenn. 2021).

The Seventh Circuit has explained why testimony from use-of-force trainers is so essential to juries in § 242 cases:

> [A]n officer's training can help inform his state of mind in certain circumstances. If, for example, an officer has been trained that officers should do certain things when confronted with tense situations, and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully . . . And vice versa: If . . . an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he

2

acted willfully.

*Proano*, 912 F.3d at 439 (collecting numerous cases upholding the admission of training and policy evidence to show willfulness). An officer's deviation from, or adherence to, policy and training does not definitively decide the question whether he violated the law; that question is for the jury alone.[1] But whether the officer followed his training can help a jury decide whether the officer knew his actions were wrongful. *See Bryant*, 528 F. Supp. 3d at 818 ("[W]illfulness [in a § 242 case] can be inferred from 'plainly' wrongful conduct, inconsistency between actions and training, and efforts to prevent detection of wrongful behavior," among other things.") (quoting *United States v. Brown*, 654 F. App'x 896, 910 (10th Cir. 2016)).

For these reasons, federal courts within the Sixth Circuit and beyond routinely admit testimony from use-of-force trainers regarding defendants' training and policy. *E.g.*, *United States v. Thao*, 76 F.4th 773, 777 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 610 (2024) (identifying evidence of training as probative of officer's willfulness); *United States v. Brown,* 934 F.3d 1278, 1296-97 (11th Cir. 2019); *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017) (same); *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (same); *United States v. Dise*, 763 F.2d 586, 588 (3d Cir. 1985) (same); *Bryant*, 528 F. Supp. 3d at 818.

The trainers noticed by the United States in this case will testify to the MPD policies, practices, procedures, and training that were in place when the defendants attended MPD's

---

[1] Further, no party may elicit from any witness, expert or not, whether a defendant violated the Constitution or used unreasonable force. Opinion testimony that does no more than express a legal conclusion is impermissible. *See, e.g., DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006) (stating that district court properly excluded expert testimony where expert would have testified that officer's actions were unreasonable, because such testimony expressed a legal conclusion); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding that expert's testimony that police officers' use of force was "unjustifiable on the basis of existing law" was an impermissible legal conclusion). The parties may instead ask witnesses who observed a use of force permissible questions that go to willfulness, such as whether what they observed was consistent with training, and whether they perceived a legitimate, law enforcement reason for a given use of force.

academy and when they served as MPD officers, including during the arrest of Tyre Nichols. Each trainer can testify that he trained and evaluated one or more defendants on use of force, duty to intervene, duty to provide medical care, reporting uses of forces, handcuffing, and/or defensive tactics. Such testimony tends to show that the defendants knew these policies and received training specifically designed to guide them in carrying out their law enforcement duties. As explained below, such testimony is squarely fact testimony for which no lay or expert designation is necessary. For example, an MPD trainer who trained the defendants on handcuffing technique can explain to the jury how the defendants were trained to handcuff arrestees. He can then link the proper handcuffing techniques he trained the defendants on to MPD policies and procedures on use of force that were in place at the time of the charged offenses.

The United States' trainer-witnesses can also review the video of the charged conduct and testify about whether the video shows the defendants applying the policies and techniques they were taught, or not. Trainers routinely do so in criminal civil rights cases. *E.g.*, *United States v. Maynard*, No. 2:21-cr-00065 (S.D. W.Va. 2021) (defendant's supervisor, who had trained him on policies, permitted to testify about use of force supervisor observed only on video). To continue with the handcuffing example, a trainer-witness can review the video with the jury and explain to the jury whether it shows the defendants using the handcuffing techniques he personally taught. This second type of testimony is, as explained below, lay opinion testimony, because it is based on the witnesses' personal knowledge and not on the type of specialized, technical knowledge that courts have found require expert designations.

In this case, MPD trainers found that the defendants used techniques that were inconsistent with MPD training and policy. Without question, such evidence is helpful to the jury in this case and has been routinely admitted in section 242 cases across the country.

In the event a witness's testimony veers into territory the Court deems is more akin to expert testimony—for example, if a trainer-witness began opining on hypothetical behaviors not reflected on video—then the witnesses may need to be designated as experts in order to answer those particular questions. These highly experienced officer-trainers are amply qualified to be designated as use of force experts if necessary.

In sum, there is no question that the testimony of the defendants' trainers is admissible. The only question at trial will be whether expert designation is necessary (which it is not, as explained below, but even if it is, the witness can be so designated) in order for the trainer-witnesses to address hypotheticals or otherwise answer questions that might be posed to a use of force expert. There is no basis whatsoever to exclude this testimony, or to severely limit its utility to the jury.

II.   **The Defendants' Trainers Can Testify About Their Personal Knowledge of the Defendants' Training and MPD's Policy at the Time of the Charged Offenses**

Each of the trainers described in the United States' Notice of Intent to Offer Hybrid or Expert Witness Testimony Regarding Use of Force Issues (ECF No. 142) personally trained one or more of the defendants regarding use of force training and MPD policies.[2] Each trainer therefore has personal knowledge of the defendants' knowledge of MPD policy and training

---

[2] Trainers Tracey Branch, Juan Gonzalez, Zayid Saleem, and Larnce Wright provided training to both the 125th Session of the Memphis Police Academy (attended by defendants Martin and Smith) and the 133rd Session (attended by defendants Bean and Haley). Trainer Kevin Barrett trained recruits in the 123rd session (attended by defendant Mills, who has pleaded guilty but who may testify at trial). Each of the trainers will also testify that the courses they offered generally did not change substantively from year to year or from instructor to instructor, as the Academy sought to provide consistent training to all officers. Further, the trainers will testify that the training that they provided to defendants was consistent with MPD policy in place at the time of charged offense. Mr. Barrett's testimony is thus relevant and admissible because it corroborates testimony from any officer he trained, because it was substantially similar to training received by the defendants, and because it was consistent with MPD policy in place at the time of the charged offenses. *See United States v. Proano*, 912 F.3d 431, 441 (7th Cir. 2019) (holding that testimony of two police instructors about the training given to recruits at the Chicago Police Academy in the year defendant was enrolled did not lack proper foundation, because although the instructors could not recall whether they had personally trained the defendant, they had personal knowledge of the "stock training" given to recruits and the jury could infer that this was the same training the defendant had received).

around use of force and related issues. That means that each trainer will provide direct, fact evidence about an essential element of Counts One and Two, *i.e.*, the defendants' willfulness. *See, e.g.*, *Bryant*, 528 F.Supp.3d at 817; *Proano*, 912 F.3d at 439–41; *United States v. Roeder*, No. CR 18-30003-MGM, 2019 WL 2524763, at *6 (D. Mass. June 19, 2019) ("[E]vidence of whether an officer complied with his training relates to whether he acted willfully."); *United States v. Perez*, 2014 WL 12689229, *7 (C.D. Cal. May 15, 2014) ("[T]he training Defendant received and the experience he gained as a police officer are directly relevant to whether he willfully deprived [the victims] of their rights and whether he acted under color of law."). This testimony from these trainer-witnesses is fact testimony and the defendants cannot offer any basis to exclude it from trial.

Further, opinion testimony offered by these witnesses is also admissible as lay opinion testimony, because it falls squarely into Federal Rule of Evidence 701. These law enforcement trainers will testify about their personal observations related to the defendants' knowledge of MPD training, procedures, and policies, the testimony will be helpful to the jury in determining the defendants' mental state, and it is not based on scientific or technical knowledge. *See* Fed. R. Evid. 702 (defining lay opinion testimony as that which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). That is the definition of admissible lay opinion testimony.

For this reason, federal courts have repeatedly approved of admitting use-of-force trainer testimony as lay opinion testimony, including over defense objections. For example, in *United States v. Brown*, 654 F. App'x 896 (10th Cir. 2016), the defendant, a correctional official, was charged with violating § 242 by orchestrating unnecessary uses of force against inmates. The

trial court admitted the testimony of a use-of-force trainer who trained the defendant about the circumstances under which staff could use force and warned the defendant about uses of force that could constitute federal criminal civil rights violations. *Id.* at 904. On appeal, the defendant argued that this testimony should not have been admitted as lay opinion testimony because it constituted expert opinion testimony. The appellate court rejected this argument, reasoning that the testimony fell squarely within Rule 701. Specifically, "although [the trainer's] testimony addressed facts known to him as a result of his work experience, it nonetheless was not based on technical or scientific knowledge . . . . His testimony was not admitted to establish what level of force is constitutionally permissible (as Defendants contend); it was admitted to show Defendants' willfulness." *Id.*

The defendants' sole argument to the contrary is based on a misreading of an out-of-circuit decision, *United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006). *Perkins* did not hold, as the defendants' motion suggests, that lay opinions about a defendant's use of force are "admissible when offered by officers who were present [for a use of force], but inadmissible when the witness was not present" for a use of force. (ECF 158 at 3.) To the contrary, the Fourth Circuit found that the testimony of an officer-witness who was not present for a use of force *was* "clearly admissible," even though the officer did not personally witness the use of force, because the officer was testifying to personal knowledge that was relevant to the use of force. *Id.* at 156 (officer-witness's "extensive testimony" about conversation with defendant in which defendant admitted to using force and demonstrated a kick was "clearly admissible").

The only concern expressed by the Fourth Circuit was that some of the officer-witnesses had testified that the defendant's use of force was "inappropriate" after being asked "hypothetical questions based on second-hand accounts, making their testimony similar, if not indistinguishable,

7

from the properly qualified expert testimony admitted [in the same] trial and admitted in other excessive force cases." *Id.* at 156.[3] In contrast, the officer-witnesses whose testimony is at issue in this case personally trained the defendants and therefore can testify to the specific training they provided to these defendants regarding MPD's policies and procedures. They can also testify as to whether and to what extent the defendants followed their training and MPD policy during the arrest of Tyre Nichols, which is captured on video. The United States accordingly need not rely on "hypothetical questions" or "second-hand accounts" and will instead elicit these witnesses' personal knowledge of the defendants' training. In any event, the Fourth Circuit in *Perkins* "easily" concluded that the district court did not err in admitting any officer-witness's testimony about their "*personal* assessments" of the defendant's use of force, regardless of whether the witness was present for the use of force. *Id.* at 160–61. *Perkins* accordingly supports the admission of the officer-witnesses' testimony in this case.

This Court need not resolve the parties' readings of *Perkins*, however, as the Sixth Circuit has joined the remaining circuits in approving of lay opinion testimony from use-of-force trainers in excessive force cases. *See Goodwin v. Richland Cnty.*, 832 F. App'x 354, 359 (6th Cir. 2020) (holding law enforcement officers may "testif[y] (as lay witnesses) to what they had learned in training"); *Brown*, 654 F. App'x at 904 (10th Cir. 2016) (upholding admission of a lay correctional trainer's testimony as to the content of training he gave to defendant jail officers because the trainer "had personal knowledge of his training of jailers regarding use of force"); *Proano*, 912 F.3d at 439–41 (affirming admission of lay witness testimony from officers regarding law enforcement

---

[3] Further, and even as to this testimony, the Fourth Circuit held that the error in admitting such expert testimony was harmless where an officer-witness *could* have been qualified as an expert. This is precisely why the United States noticed these witnesses as hybrid or expert witnesses in an abundance of caution: If the Court becomes concerned that any witness's testimony veers too close to the expert line, each of the witnesses has the experience and background to be properly qualified as an expert. In other words, the solution to this problem is to simply qualify the witnesses, and there is no basis to outright exclude their testimony.

8

officer training and policy in a § 242 case); *United States v. Bowen*, 2019 WL3238469, *2-3 (D. Az. July 18, 2019) (rejecting defense argument in § 242 case that law enforcement witnesses testifying as to agency policies and training must be qualified as "experts" and finding instead that they could provide "lay opinion testimony" regarding their perceptions of the incident). The Court should follow these authorities, admit the trainer evidence as lay opinion testimony, and deny the defendants' motion.

### III. The Defendants' Trainers Can, if Necessary, be Qualified to Testify as Experts

There is no legal or logical basis to categorically exclude the United States' training witnesses, whether or not they are qualified as experts. In the event the Court determines that the trainers need to be qualified as experts in order to answer a handful questions that might be posed by the parties, the hybrid or expert notice provided by the United States is more than sufficient. Even if the Court were to conclude that the notice was in some respect inadequate, the appropriate remedy would be to require the United States to supplement its notice, not to exclude the evidence, particularly as trial is now seven months away. *See United States v. Galloway*, No. 1:17-CR-01235-WJ, 2018 WL 2303106, at *6 (D.N.M. May 21, 2018) (refusing to exclude government's experts after defense alleged "untimely and deficient expert notices" where disclosures were supplemented seven months before trial). Such an extreme remedy would "hinder[], rather than forward[], the public interest in a full and truthful disclosure of critical facts." *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 412 (1988)).

The defendants appear to concede that the witnesses identified in the United States' Notice may be qualified as experts, and specifically that "they can testify about training they provided to him at the MPD Academy." (ECF 160 at 6.) They nevertheless assert that the United States' expert notice is insufficient because (1) it fails to comply with Federal Rule of Criminal Procedure

9

16(a)(1)(G)(iii), and (2) the United States' delay in noticing these witnesses as potential experts is inexcusable. But, as explained below, the notice exceeds the requirements of Rule 16, and the defendants have received this formal notice more than seven months before the new trial date. Further, the defendants received the materials underlying this notice many months before that, with the United States' formal notice adding merely seventeen pages of curricula vitae (CVs) to hundreds of pages of previously provided material outlining these witnesses' testimony. The motion should accordingly be denied.

First, the United States' notice is sufficient under the Rule and case law. The defendants do not specify in what respects the United States' expert notice is insufficient, but they appear to assert, without citation, that they are entitled to "a written report of all opinions the government will elicit" from each witness. (ECF 160 at 3.) They are not. "Rule 16(a)(1)(G)(iii) explains that 'the disclosure for each expert witness must contain' the opinions the Government will elicit, the basis for the opinions, the witness's qualifications, and certain prior testimony." *United States v. Herrell*, No. 621CR00013GFVTMAS, 2023 WL 3467267, at *2 (E.D. Ky. May 15, 2023) (quoting Fed. R. Crim. P. 16(a)(1)(G)(iii)). The Rule does not require the proffered experts to provide written reports. Instead, the government may provide a written report *or* a signed expert disclosure; the United States has provided the latter. In addition, in its initial discovery productions, the United States provided grand jury transcripts and FBI-302s for multiple law enforcement trainers.

Defendant Haley complains that "nothing disclosed references a specific class, training session, training material, or MPD policy which any of the prospective witness relied upon to form his or her opinion," (ECF 160 at 3), but, even assuming that level of detail is required, that is a perplexing assertion: The United States' Notice clearly states that each witness will testify about

the training he provided to the defendants at the MPD Academy, describes the topics on which each witness trained the defendants, and summarizes the witnesses' opinions with reference to the witnesses' detailed prior statements. This disclosure satisfies the Rule's requirement that the United States disclose "a written summary of 'the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications,' as well as a list of every case in the past four years in which the expert testified." *United States v. Pluto*, 649 F. Supp. 3d 582, 583 (E.D. Mich. 2023). Additionally, the United States has disclosed the training materials and records from the defendants' training classes at the academy and afterwards, personnel records for the defendants showing their training history, written MPD policies applicable to the defendants, and interview reports and transcripts detailing the trainers' experience. Defendant Haley's effort to nitpick the wording of the United States' notice fails as a legal matter, but as a logical matter, it is even less persuasive. The defendants know exactly what the United States' trainers will testify about because the defendants have transcripts of their prior testimony in this case—far more information than most defendants would receive for an ordinary expert disclosure.

The defendants' remaining complaints are unrelated to the adequacy of the Notice. The defendants' motion repeatedly complains that the witnesses offered impermissible legal conclusions during their grand jury testimony (*e.g.*, ECF 160 at 5), but even if this were true—impossible to say because the motion does not say what those allegedly impermissible legal conclusions were or locate them in the discovery—it is irrelevant. The Federal Rules of Evidence do not apply to federal grand jury proceedings. *See* Fed. R. Evid. 1101(d)(2). Federal grand jury testimony often includes hearsay, speculation, and other testimony that is not admissible in court. *See, e.g.*, *United States v. Boettcher*, 164 F. Supp. 2d 925, 931 (E.D. Mich. 2001) (explaining that both the Supreme Court and the Sixth Circuit have held that an indictment may

11

even be based on hearsay alone). Having tried section 242 cases in this district and across the country, the United States is well-aware of the boundaries in this area and will offer only admissible evidence at trial, and the Court will ensure that both of the parties limit their presentations to admissible evidence.[4]

The United States' hybrid or expert notice—which, as explained at length in the Notice, was made in an abundance of caution, because these witnesses may only need to be qualified to answer a small fraction of the questions presented to them at trial —is accordingly adequate. No remedy is therefore required or appropriate. Even if the disclosure were inadequate in some respect, however, the solution would be for the United States to correct or supplement the disclosure, not to exclude the evidence. *See United States v. Herrell*, No. 621CR00013GFVTHAI, 2023 WL 3440228, at *3 (E.D. Ky. May 12, 2023) (quoting *United States v. Stone*, 218 Fed. App'x 425, 435 (6th Cir. 2007)) ("Exclusion is 'the most serious and least favored' of these remedies."). Exclusion is particularly inappropriate now, given the recent continuation of the trial date to September.

Defendant Haley's argument for exclusion relies on the baseless assertion that "[t]he United States knew that any use of force opinion regarding Tyre Nichols" from three of its witnesses "was only admissible if it qualified as an expert opinion," the implication being that the United States somehow misled the defendants by not formally noticing these witnesses earlier. (ECF 160 at 10.) This apparent effort to impugn the United States' good faith is unfounded. The defendants have been in possession of extensive discovery regarding the trainer-witnesses since last year, including (1) the written findings and conclusions of every one of the noticed

---

[4] The defendants' motion also suggests that Larnce Wright, who has trained officers at the Memphis Police Academy for the last seven years, is unqualified to have that role. In the event the United States needs to move to qualify Mr. Wright—probably unnecessary for the reasons explained in the United States' notice—the defendant can seek to voir dire him if he wishes to challenge his qualifications.

witnesses; (2) summaries of interviews of each of these witnesses; (3) existing grand jury testimony from these witnesses; and (4) written reports and training materials from each of these witnesses. A review of these materials made abundantly clear last year precisely what these witnesses would say if called to testify at trial. The United States' hybrid or expert notice—which, again, it filed only in an abundance of caution—added merely seventeen pages of CVs. The United States has always openly advised defense counsel that it would seek to admit trainer testimony, as it does in almost every § 242 case. That obvious reality is also reflected in published case law.

At bottom, defendant Haley's arguments amount to an attempt to exclude highly relevant evidence on technicalities that do not exist. This evidence is not only helpful but essential to the factfinder, and the defendants have had and still have ample notice of the nature of this evidence. In sum, defendant Haley seeks to exclude these witnesses simply because he knows from discovery that their testimony is essential to proving the offenses charged in Counts One and Two. The United States respectfully submits that defendant Haley's motions should be denied.

    Respectfully submitted,

    KEVIN G. RITZ
    United States Attorney

    DAVID PRITCHARD
    ELIZABETH ROGERS
    Assistant United States Attorneys
    167 N. Main Street, Ste. 800
    Memphis, TN 38103

    KRISTEN CLARKE
    Assistant Attorney General
    Civil Rights Division
    U.S. Department of Justice

By:  s/ Kathryn E. Gilbert

                                              FORREST CHRISTIAN
                                              Deputy Chief
                                              KATHRYN E. GILBERT
                                              Special Litigation Counsel
                                              950 Pennsylvania Ave., NW
                                              Washington, DC 20530
                                              (202) 616-2430
                                              kathryn.gilbert@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Kathryn E. Gilbert, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

                                                          s/Kathryn E. Gilbert
                                                          KATHRYN E. GILBERT
                                                          March 4, 2024