## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal No. 2:23-cr-20191-MSN** |
| | ) | |
| | ) | |
| EMMITT MARTIN, III, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## RESPONSE IN OPPOSITION
## TO DEFENDANT MARTIN'S MOTION TO TRANSFER TRIAL

The United States respectfully opposes Defendant Martin's Motion to Transfer Trial. (ECF No. 156.)   The government has previously opposed two motions filed by defendants Bean and Haley seeking similar relief.   (ECF Nos. 119 & 132, 131 & 141.)   The only additional information included in the instant motion filed by defendant Martin are the results of a non-random, opt-in online survey that even his own expert concedes does not meet the standard for change of venue studies. (ECF 156 at PageID 890 ("The standard practice for change of venue studies is to conduct a telephone survey with a random digit sample…").   As with the defense filings that preceded his own, Defendant Martin has failed to meet his heavy burden to demonstrate presumptive pretrial jury prejudice on any basis, including negative publicity.   Consistent with the practice in other high-profile civil rights cases across the country, the use of a juror questionnaire (proposed by the parties here (ECF Nos. 208, 210, 211, and 213)), rigorous voir dire, and focused jury instructions are more than sufficient to address the Defendant's concerns. Defendant Martin's motion should be denied.

## BACKGROUND

On January 7, 2023, Tyre Nichols was the subject of a traffic stop by Memphis Police Department officers, including two of the defendants.   According to the officers, they stopped Nichols because he was speeding and committing traffic infractions.   The officers pulled Nichols from his car; repeatedly threatened him, including by threatening to "knock [his] a** out"; and used force on him following the traffic stop.   Nichols, as captured on body-worn camera footage, protested that the officers were "doing a lot" and said that he was "just trying to go home."   When the officers continued to use force, Nichols ran from the scene.   The officers, joined by the remaining defendants, pursued him.   When the defendants caught Nichols, they struck, batoned, and kicked him, including in the head.   Nichols was transported to the hospital where he succumbed to his injuries and died three days later.

Local news media began reporting on Nichols' arrest shortly after he was hospitalized. After Nichols's death, the story became a topic of national news and was widely covered by print and broadcast media.   On January 25, 2023, the State criminally charged the defendants in connection with Nichols's death.   On January 27, 2023, just under three weeks after Nichols's arrest, MPD released video footage of the arrest.   Local and national news media reported extensively on this footage, as well as on the personnel and policy actions taken by MPD and other law enforcement entities in the wake of Nichols's death.   On September 12, 2023, the defendants were federally charged.

The federal indictment charges each defendant with four felony counts stemming from the Nichols arrest. Count One charges the defendants with, while acting under color of law, willfully violating Nichols's Fourth Amendment right to be free from the use of unreasonable force by a police officer, resulting in his injury and death, in violation of 18 U.S.C. § 242.   Count Two

charges the defendants with violating the same statute by, while acting under color of law, willfully violating Nichols's Fourteenth Amendment right to be free from police officers' deliberate indifference to his serious medical needs, resulting in his injury and death.   Count Three charges the defendants with conspiring to engage in witness-tampering, in violation of 18 U.S.C. § 1512(k), while Count Four charges the defendants for withholding information and providing false and misleading information, in violation of 18 U.S.C. § 1512(b)(3).   (ECF No. 1.)

Trial in the case is set for September 9, 2024.   (ECF No. 191).

## ARGUMENT[1]

The Constitution provides that criminal trials should be held before "an impartial jury of the State and district wherein the crime shall have been committed."   U.S. Const. amend. VI; *see* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed.").   These place-of-trial requirements yield only "in the extreme case." *United States v. Skilling*, 561 U.S. 358, 378-79 (2010).   These constitutional requirements also are supported by considerations of judicial efficiency and victim's rights, among other public policy interests.   Here, the vast majority, if not all, of the victim's family members, the government's witnesses, and the physical evidence can be found in the Western District of Tennessee.   Further, the community impacted by the crimes charged here should be able to observe a trial in this district.

Federal Rule of Criminal Procedure 21 requires transfer only "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."   To make such a showing, a defendant must establish actual

---

[1] The government incorporates by reference its previous responses on the issue of venue transfer at ECF Nos. 132 and 141.

prejudice, typically during *voir dire*, or presumptive prejudice.   *United States v. Poulsen*, 655

F.3d 492, 506 (6th Cir. 2011); *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007) ("Prejudice

resulting from pretrial publicity can be presumptive or actual. . . . The primary tool for discerning

actual prejudice is a searching *voir dire* of prospective jurors.").

Presumptive prejudice exists only "where press coverage 'utterly corrupted' a trial's

atmosphere."   *Mammone v. Jenkins*, 49 F.4th 1026, 1043 (6th Cir. 2022) (quoting *Murphy v.

Florida*, 421 U.S. 794, 798 (1975)), *cert. denied*, 143 S. Ct. 2568 (2023).   In other words,

prejudice may only be presumed when "publicity in essence displaced the judicial process."

*United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1998).

"[S]uch extreme cases are rare."   *Mammone*, 49 F.4th at 1043; *see also Foley*, 488 F.3d

at 387 ("Prejudice from pretrial publicity is rarely presumed.").   Even "extensive media coverage

and knowledge within the community of the crimes and of the defendant are insufficient by

themselves to create a presumption that a defendant was denied a fair trial."   *Aguilar v. Chapman*,

No. 19-2323, 2020 WL 6703193, at *3 (6th Cir. Sept. 22, 2020) (quoting *Dobbert v. Florida*, 432

U.S. 282, 303 (1977)).

Just as defendants Bean and Haley before him, defendant Martin has failed to meet his

heavy burden of demonstrating local prejudice so severe and widespread as to justify the

presumption that an impartial jury cannot be impaneled in this district.   First, "the size and

characteristics of the community in which the crime occurred" favor retaining the constitutionally

prescribed venue.   *Skilling*, 561 U.S. at 382.   The jury pool in this case draws from diverse and

populous counties that are home to approximately 1.1 million people.   *See* 2020 Census Data:

Tennessee,   https://www.census.gov/library/stories/state-by-state/tennessee-population-change-

between-census-decade.html.   "Given this large, diverse pool of potential jurors, the suggestion

that 12 impartial individuals could not be empaneled is hard to sustain." *Skilling*, 561 U.S. at 382

(citing, *inter alia*, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044 (1991) (plurality opinion)

(finding reduced likelihood of prejudice where venire was drawn from a pool of over 600,000

individuals)); *see also, e.g., United States v. Lilley*, No. 2:13-cr-20290-JTF-dkv, 2014 WL

6982456, at *2 (W.D. Tenn. Dec. 8, 2014) (finding that the size of the City of Memphis alone—

then 650,000—in the jury pool militated against a finding of presumptive prejudice).

Second, the nature of the publicity militates strongly against finding presumptive

prejudice.   The reporting cited by the defendant and attached to his motion does not contain a

"confession or other blatantly prejudicial information of the type readers or viewers could not

reasonably be expected to shut from sight" required to support a change of venue.   *Skilling*, 561

U.S. at 382.   The defendant has not distinguished the media coverage in this case from any of

the recent high-profile civil rights cases.   The factual (*e.g.*, video footage of the charged

conduct) and opinion (*e.g.*, officials' and experts' opining on the charged conduct) reporting

cited by the defendant amounts to no more than the type of "largely factual publicity" that the

Supreme Court has instructed trial courts to "distinguish . . . from that which is invidious or

inflammatory." *Murphy*, 421 U.S. at 800 n.4.   Furthermore, with the passage of time, media

coverage of the case has subsided.   Many articles are event-directed and factual; several simply

describe court proceedings or reference the docket in this case.

Media coverage alone does not warrant a change in venue.   The Supreme Court has

emphasized that "pretrial publicity – even pervasive, adverse publicity – does not invariably lead

to an unfair trial.   *Skilling*, 561 U.S. at 384 (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S.

539, 554 (1976)).   Likewise, "the mere existence of any preconceived notion as to the guilt or

innocence of an accused" does not, without more, "rebut the presumption of a prospective juror's

impartiality."   *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); accord *Skilling*, 561 U.S. at 380-81

("juror *impartiality* … does not require *ignorance*") (emphasis in original); *United States v. Bliss*,

735 F.2d 294, 297-98 (8th Cir. 1984) ("[T]he due process guarantee of trial by a fair and impartial

jury can be met even where . . . virtually all of the veniremen admit to some knowledge of the

defendant due to pretrial publicity.").   Indeed, in cases that gain widespread media attention,

"scarcely any of those best qualified to serve as jurors will not have formed some impression or

opinion as to the merits of the case."   *Irvin*, 366 U.S. at 722.   The relevant question here is not

whether the community remembers media coverage of an incident but whether jurors can be

impartial in considering evidence presented at trial.   *See Patton v. Yount*, 467 U.S. 1025, 1035

(1984) (holding that "the fact that the great majority" of the venire "remembered the case" was

"essentially irrelevant" because that fact alone did not mean the venire was incapable of

impartiality).

While the defense contends that the media's coverage has been prejudicial, the coverage

can only be prejudicial in the same way that the relevant, admissible evidence presented by the

government at trial will be "prejudicial" to the defendants.   For example, the defense complains

that members of the public have seen video footage of the incident that gave rise to the charged

offenses. (ECF 156-3 at PageID 890 ("*Most concerning*, 79% of Western Division survey

respondents had watched video footage of Tyre Nichols' arrest and beating.") (emphasis added).

This complaint is of no consequence in this case, however, as the jury will see the same video

footage at trial.   The footage at issue simply captures the conduct charged in the Indictment.

This makes the instant matter no different than any number of high-profile civil rights cases that

have been tried in the district where the crime occurred.   High-profile civil rights cases are

routinely tried in the district where they occurred, despite the existence of extensive media

coverage, protests, expressions of community outrage, public statements by the victim's family, civil suits, and administrative proceedings arising out of the same incident that gave rise to the charged offenses.    *See, e.g., United States v. Hanes*, 2017 WL 3602056, at \*3 ("While Defendant's alleged crimes struck at the heart of this community, if the Boston [*United States v. Tsarnaev*] and Charleston [*United States v. Roof*] cases were not exceptional enough to warrant new venues, Defendant's certainly is not.    The Charleston church massacre and Boston [marathon] bombing received extraordinary, relentless media coverage.    It would have been impossible to find a jury who had not heard of this crime.    We cannot ask for opinion free, blank slate juries, just fair ones.").    It is telling that defendant Martin's motion does not address high-profile civil rights cases like the one before this Court now.

Instead, Defendant Martin attached to his motion the results of a non-random, opt-in online survey prepared by Bryan Edelman of Trial Innovations (ECF No. 156-7) and Edelman's declaration interpretating the results (ECF No. 156-3).    Edelman explains in his declaration that he was retained to evaluate the effect of pretrial publicity in this case on the jury pool and that he did so by reviewing media coverage of Nichols's death and preparing a non-random, opt-in online survey.    (ECF No. 156-3, PageID 889-90.)    Edelman warns that his use of this online survey is not the "standard practice" and, further, that "[c]aution must be exercised when generalizing from a non-random sample to the general population of interest."    (ECF No. 156-3, PageID 890.) With his deviation from standard practice and use of an unreliable online survey, Edelman found only that the survey's results offered "some indication" that pretrial publicity has "undermined" defendant's rights (ECF No. 156-3, PageID 890) – a finding that plainly does not satisfy the legal standard for transfer of venue.[2]

---

[2] Because Dr. Edeleman's Declaration effectively admits that the only survey conducted to date is below standard,

Defendant Martin's non-random, opt-in online survey is a departure from standard practice. Further, other courts have found that there is no reason to credit even far more reliable surveys, such as a telephone survey by the defendant's retained expert on securing a change in venue    *E.g.*, ECF No. 711, Opinion and Order Denying Defendant's Motion to Transfer Venue, *United States v. Bowers*, No. 2:18-cr-00292-RJC (W.D. Pa. 2022) (denying venue transfer request in hate crime trial for Pittsburgh Tree of Life Synagogue mass shooting despite telephone survey and declaration of second doctor endorsing survey).    In the cases arising from the criminal conduct at the United States Capitol on January 6, 2021, many defendants filed similar motions and attempted to introduce private polling to bolster arguments that D.C. residents would be incapable of reaching an impartial verdict.    Thus far, none of those motions have been successful and courts have repeatedly found private pretrial polling unconvincing.    For example, in *United States v. Coffee*, the district court noted that rigorous voir dire "is favored over 'a poll taken in private by private pollsters and paid for by one side.'"    2023 WL 4450443, at *4 (D.D.C. July 11, 2023) (quoting *United States v. Hadelman*, 559 F.2d 31, 64 n.43 (D.C. Cir. 1976)); *see also United States v. Garcia*, 2022 WL 2904352, at *10 (D.D.C. July 22, 2022), *United States v. Rhodes*, 610 F. Supp. 3d 29, 58 (D.D.C. 2022); *United States v. Ballenger*, 640 F. Supp. 3d 34, 38-39 (D.D.C. 2022).

Third, the trial in this case is scheduled for over a year and a half after the charged conduct. The Sixth Circuit and courts within it have recognized that the natural dimming of media attention that occurs in a year – and even in less time – militates against a finding of presumptive prejudice. *See, e.g.*, *DeLisle v. Rivers*, 161 F.3d 370, 385 (6th Cir. 1998) (finding "more than a four-month lapse between the intense coverage and the time of trial, at which time public attention to the case

---

and because Defendant Martin has not provided the materials underlying the Declaration, the government does not herein address the survey's other potential methodological flaws.

began anew" militated against a finding of presumptive prejudice); *Bennett*, 2013 WL 4521103, at *9 (finding the fact that, despite ongoing publicity, interest had "waned" over the course of 18 months between investigation and trial militated against a finding of presumptive of prejudice).

For all of the same reasons, Defendant Martin's request to transfer this case to another division within the district should be denied. "[A]n intradistrict transfer is not required absent a strong showing of prejudice." *Jenkins v. United States*, No. 1:02-CR-27, 2005 WL 2989328, at *6 (E.D. Tenn. Nov. 7, 2005) (quoting *United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990)). As explained above, Defendant Martin has failed to make this difficult showing. Further, all of the factors courts are required to consider in setting the place of trial militate conclusively in favor of keeping the trial in Memphis, with a jury selected from the Western Division. Although intradistrict transfers do not implicate the same Constitutional concerns as interdistrict transfers, the Court still must "set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18; *see also United States v. Gilpatrick*, No. 2:05-00009, 2006 WL 8452277, at *1 (M.D. Tenn. June 1, 2006) (noting that district court's discretion to grant motions for intradistrict transfers is still limited by the requirements of Rule 18). The victim's family, almost all of the witnesses, and most of the defendants are in the Memphis area. The Court and its staff are in Memphis, and requiring jurors to travel from the Eastern Division would impose significant costs on the Court and unreasonable burdens on those jurors. *See, e.g.*, *United States v. Scott-Emuakpor*, No. 1:99-CR-138, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000) (rejecting defendant's motion for intradistrict transfer after finding that judicial efficiency outweighed defendant's convenience). More fundamentally, the result of this trial affects Memphis more than any other place. The charged conduct occurred exclusively in Memphis. *Gilpatrick*, 2006 WL 8452277, at *1 (stating

that "the place where the criminal acts occurred" are a relevant consideration).   There can be no question that the Rule 18 considerations, particularly the convenience of the witnesses and the parties, militate entirely in favor of trying the case in Memphis.[3]

Finally, a change in venue would be premature.   Even if defendant Martin could establish a presumption of prejudice, which he cannot, the government should be given an opportunity to rebut that presumption.   *See United States v. Chagra*, 669 F.2d 241, 250 (5th Cir. 1982) ("This presumption is rebuttable, however, and the government may demonstrate from the voir dire that an impartial jury was actually impaneled in appellant's case."), *overruled on other grounds by Garrett v. United States*, 471 U.S. 773 (1985).   Given the availability of a juror questionnaire and the efficacy of voir dire, the weight of authority dictates that courts should not grant a motion to change venue due to pretrial publicity unless and until "voir dire reveals that an impartial jury cannot be impaneled."   *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991); *see also, e.g., United States v. Campa*, 459 F.3d 1121, 1146-47 (11th Cir. 2006) (approving district court's decision to deny motions to change venue without prejudice because it "is clearly the preferable procedure" to evaluate such motions only after the conclusion of voir dire); *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) ("[T]he key to determining the appropriateness of a change in venue is a searching voir dire of the members of the jury pool.") overruled on other grounds by *United States v. Yousef*, 750 F.3d 254, 261 (2d Cir. 2014), and by *Montejo v. Louisiana*, 556 U.S.

---

[3] The cases cited by the defendant are not to the contrary.   In *United States v. Nasr*, No. 7:18-CR-7-KKC, 2019 WL 6842540, at *2 (E.D. Ky. Dec. 16, 2019), the Court granted an intradistrict transfer because the new location was "*more* convenient location for the trial of this matter for the parties, the probable witnesses, and the Court," which is not the case here.   In *United States v. Lawson*, No. CRIM.A.3:08-21-S-DCR, 2009 WL 511935, at *2 (E.D. Ky. Mar. 2, 2009), the parties apparently did not disagree about the need for transfer or the fact that transfer would not inconvenience witnesses, which is also not the case here.   *United States v. Erwin*, 155 F.3d 818, 825 (6th Cir. 1998), did not involve an intradistrict transfer, and in that case, the Sixth Circuit concluded that the case was properly charged in a certain division because the crimes occurred there.   The same is true in this case.   *United States v. Ford*, 958 F.2d 372 (6th Cir. 1992), involved a second trial in which a Jackson jury was selected for the Memphis retrial only after a mistrial caused by significant jury misconduct and jury tampering that resulted in an FBI investigation.   No such issues are apparent here because, as explained above, the motion is premature.

778 (2009).   This Court should follow this authority, rely on juror questionnaires and voir dire as other courts have for high-profile civil rights cases, and reject defendant Martin's request to disqualify all Memphis-area venire members before the parties have made any attempt to empanel an impartial jury.

## CONCLUSION

In conclusion, for the reasons stated above, the venire should be chosen here in the Western Division and the trial should occur here in the Western Division.   Defendant Martin's motion, along with all other motions requesting change of venue, should be denied without prejudice to file a motion based on actual prejudice during *voir dire*.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

By:   s/Elizabeth Rogers
ELIZABETH ROGERS
DAVID PRITCHARD
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103
901/544-4231

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

FORREST CHRISTIAN
KATHRYN E. GILBERT
Trial Attorneys
Civil Rights Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430

## CERTIFICATE OF SERVICE

I, Elizabeth Rogers, hereby certify that the on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

<u>s/Elizabeth Rogers</u>
ELIZABETH ROGERS
March 7, 2024