## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

UNITED STATES OF AMERICA,

     Plaintiff,

v.

                                    Case No. 2:23-cr-20191-MSN-cgc

EMMITT MARTIN III,
TADARRIUS BEAN,
DEMETRIUS HALEY, *and*
JUSTIN SMITH,

     Defendants.

---

### ORDER DENYING DEFENDANTS' MOTIONS TO CHANGE VENUE

---

Before the Court are three motions to change venue[1] from Defendant Tadarrius Bean, (ECF No. 118); Defendant Demetrius Haley, (ECF No. 131); and Defendant Emmitt Martin, III, (ECF No. 156). ("Defendants' Motions.") Defendant Justin Smith joined Defendant Martin's Motion, (*see* ECF No. 159), and Defendant Martin joined Defendant Haley's Motion, (*see* ECF No. 178). The Government responded to Defendant Bean's Motion on January 18, 2024, Defendant Haley's Motion on January 30, 2024, and Defendant Martin's Motion on March 7, 2024. (ECF Nos. 132, 141, and 218.) Defendant Martin filed a Reply to the Government's Response on March 14, 2024. (ECF No. 225.) Because Defendants have not met their burden to show extraordinary local prejudice, Defendants' Motions are **DENIED WITHOUT PREJUDICE.**

---

[1] The Court held a Report Date on April 4, 2024, at which the Court denied without prejudice all of the Motions to Change Venue. (*See* ECF No. 244 at PageID 2962–63.) This Order memorializes that ruling. The minutes for that report date lists Mr. Haley's Motion as ECF No. 139 but that Motion is filed at ECF No. 131.

## BACKGROUND

On January 7, 2023, officers from the Memphis Police Department ("MPD") conducted a traffic stop on Mr. Tyre Nichols during which Mr. Nichols sustained serious injuries.  He passed away three days later.  The Motions now before the Court arise from the extensive media coverage surrounding Mr. Nichols's death and the subsequent civil and criminal cases filed against Defendants in connection with it.  Indeed, on January 26, 2023, Defendants were indicted on criminal charges in state court.  MPD then released Sky Cop and body-worn camera footage depicting the incident.  On September 12, 2023, Defendants were indicted in federal court on four felony counts, including two civil rights violations and counts alleging conspiracy to witness-tamper and provision of false and misleading information to their supervisor and others.  (ECF No. 1.)

## STANDARD OF REVIEW

Criminal defendants are guaranteed a trial by "an impartial jury of the State and district wherein the crime shall have been committed . . . ."  U.S. Const. amend. VI.  Nevertheless, the Constitution's place-of-trial prescriptions must give way to defendants' constitutional right to a fair and impartial hearing in cases where "extraordinary local prejudice will prevent a fair trial, [which is] a 'basic requirement of due process.'"  *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

A motion to change venue may seek an interdistrict transfer or an intradistrict transfer. Here, Defendants' Motions mention both on grounds of prejudice from pretrial publicity.  When a defendant moves for an interdistrict change of venue on prejudice grounds, "the court must transfer the proceeding . . . to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial

2

trial there." Fed. R. Crim. P. 21(a); *see also United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005) (quoting Fed. R. Crim. P. 21(a)). As for intradistrict transfer requests, a court "may . . . fix another place of trial within the district . . . where such prejudice does not exist." Fed. R. Crim. P. 18 advisory committee's notes to 1966 amendment. Only interdistrict transfers—governed by Rule 21—implicate the Constitution. *United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002). Trial judges "traditionally enjoy wide discretion in disposing of change of venue motions." *Id*. (quoting *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964)). There is no constitutional right to a particular division or courtroom within a federal judicial district. *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998).

Prejudice caused by pretrial publicity may be either presumptive or actual—and either may justify transfer. *Mammone v. Jenkins*, 49 F.4th 1026, 1043 (6th Cir. 2022). A presumption of prejudice arises only when press coverage has "utterly corrupted" a trial's atmosphere. *Id.* (quoting *Murphy v. Florida*, 421 U.S. 794, 798–98 (1975)). But such cases are exceedingly rare. *DeLisle v. Rivers*, 161 F.3d 370, 383 (6th Cir. 1998) ("[t]he category of cases where prejudice has been presumed . . . is extremely rare . . . [and] can only be termed extraordinary"). If the nature of pretrial coverage is insufficient to raise the presumption of extraordinary local prejudice, "the trial court must then determine whether it rises to the level of actual prejudice." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). "*Voir dire* is the 'primary tool for discerning actual prejudice.'" *United States v. Sypher*, 684 F.3d 622, 627 (6th Cir. 2012) (quoting *Foley*, 488 F.3d at 387).

## **DISCUSSION**

### I.     **Parties' Arguments**

Given the number and varied nature of Defendants' Motions, the Court finds it helpful to set forth the specific requests at issue and the Government's responses thereto.

### A.       Defendant Bean's Motion

Defendant Bean argues that the "nature of the pretrial coverage has been heavily prejudicial against the five officers charged in this case" and thus warrants a "total Change of Venue." (ECF No. 118, PageID 383–84.)  While he suggests that the Court should transfer the trial to a different district, (*see id.* at PageID 399), he does not specify which district.  Alternatively, Defendant Bean requests that the jury venire be expanded to include all counties within the Western District of Tennessee.  (*Id.* at PageID 384.)[2]  He argues that presumptive prejudice exists "because social media and news outlets have continuously created a one-sided biased narrative." (ECF No. 119 at PageID 398.)  In support, Defendant Bean attaches one article in which Memphis Police Chief Cerelyn "C.J." Davis is quoted as saying "[n]o doubt about it, this video is going to cause anger, emotions to rise," (ECF No. 118-1 at PageID 387); and a partial screenshot of an Instagram post depicting the headline, "5 Memphis Officers Fired Over Traffic Stop that Turned Deadly; Video to be Released." (ECF No. 118-2 at PageID 391.)

The Government responded that Defendant Bean has failed to meet his burden of showing presumptive prejudice.  (ECF No. 132 at PageID 519, 523.)  Specifically, the Government argues that each of the relevant considerations—such as size and characteristics of the community, the nature of the publicity, and the time between arrest and trial—militates against a transfer.  (*Id.* at PageID 524–28.)  The Government also noted that the prospective jury pool is already drawn from beyond Shelby County.  (*Id.* at PageID 521.)  It thus concludes that Defendant Bean's Motion should be denied without prejudice to allow him the opportunity to re-file it once he has had the opportunity to evaluate any actual juror prejudice during *voir dire*.  (*Id.* at PageID  529.)

---

[2] He also seeks the option of selecting jurors from the entire State save for the Western Division of the Western District of Tennessee.  (ECF No. 119 at PageID 399.)

**B.**     **Defendant Haley's Motion**

Defendant Haley similarly argues that local prejudice caused by pretrial publicity is so great that it "supports a presumption of juror prejudice" in Shelby County.  (ECF No. 131 at PageID 460–61.)  To remedy this "presumption of juror prejudice," Defendant Haley seeks a transfer to the Eastern Division of the Western District of Tennessee (Jackson).  (*Id*. at PageID 461.)  While Defendant Haley undertakes nearly the same analysis as Defendant Bean, he adds a slew of headlines, public comments, and stories that—he argues—shows the extraordinary local prejudice against Defendants.  (*See, e.g.*, ECF Nos. 131-1–131-12; 131-15–131-33.)   As alternatives to transferring this matter to the Eastern Division, Defendant Haley requests a jury venire to include—or else consist solely of—potential jurors from the counties in the Eastern Division. (ECF No. 131 at PageID 461–62.)  He also requests use of a juror questionnaire, counsel-led *voir dire*, additional preemptory challenges, and the sequestration of the jury, regardless of where the trial is ultimately held.[3]  (ECF No. 131 at PageID 461–65.)

The Government incorporated its Response to Defendant Bean's Motion in its Response to Defendant Haley's Motion and analogized recent January 6 criminal cases as persuasive precedent for denying change of venue in high-profile cases.  (ECF No. 141 at PageID 584.) Similar to its response to Defendant Bean's Motion, the Government argued that Defendant Haley has not met his burden to show presumptive prejudice and asked that his Motion be denied without prejudice.  (*Id*. at PageID 588.)

---

[3] Defendant Haley previously submitted an unopposed motion to use a juror questionnaire. (ECF No. 96.)  That Motion was granted from the bench during the November 14, 2023 report date. (ECF No. 106.)  To the extent Defendant Haley seeks the use of a juror questionnaire in his Motion for Change of Venue, that request is **DENIED AS MOOT.**  (*See* ECF No. 131 at PageID 463.)

### C.    Defendant Martin's Motion

Defendant Martin argues that "so great a prejudice . . . exists in the Western Division that [he] cannot receive a fair and impartial trial." (ECF No. 156 at PageID 856.)  He therefore requests that trial be transferred to either Jackson or another district.  (*Id.*)  But his Motion differs from the others in two key respects.   First, Defendant Martin argues that the movant's burden for an intradistrict transfer—a transfer from Memphis to Jackson—is lower than it would be if he were seeking an interdistrict transfer (*i.e.*, out of the Western District entirely).  (*Id.* at PageID 859.) Second, he attaches a community survey conducted by Dr. Bryan Edelman, Ph.D., examining the impact of pretrial publicity in both the Western and Eastern Divisions of the Western District of Tennessee.  (*Id.* at PageID 860; Edelman Decl., ECF No. 156-3 at PageID 889.)   The survey concludes that "the Western Division jury pool has been exposed to extensive prejudicial pretrial publicity . . . creat[ing] a strong presumption of guilt." (Edelman Decl. at 1–2, ECF No. 156-3 at PageID 879–80.)   In further support of his Motion, Defendant Martin attaches two orders from federal district courts—one from the District of Maryland and one from this District—granting intradistrict transfers in criminal cases due to pretrial publicity.  (ECF No. 156-1 at PageID 887; ECF No. 156-2 at PageID 883.)  Defendant Martin concludes that "[he] and his co-defendants have already been judged guilty within the Western Division," and that a transfer to the Eastern Division at Jackson "is necessary to protect the integrity of the trial." (ECF No. 156 at PageID 865.)

The Government argues, as it did in response to the other two Motions, that Defendant Martin has not met his burden to show presumptive prejudice. (ECF No. 218 at PageID 2678.) In addition, it challenges the reliability of Dr. Edelman's survey, arguing that it relies on a "non-random, opt-in online survey that even [Dr. Edelman] concedes does not meet the standard for change of venue studies." (*Id.*)  It further contends that the publicity about which Defendant Martin

complains "is prejudicial in the same way that the relevant, admissible evidence presented by the Government at trial will be 'prejudicial' to the defendants." (*Id*. at PageID 2683.) The Government concludes by arguing that Defendant Martin's Motion, like the others, should be denied without prejudice with the opportunity to renew his Motion during *voir dire*. (*Id*. at PageID 2688.)

Defendant Martin filed a Reply to the Government's Response on March 14, 2024. (ECF No. 225.) He countered the Government's challenge, arguing again that an intradistrict transfer requires a lesser burden of persuasion on the part of the movant and that "the video footage [of the altercation between Defendants and Mr. Nichols] was not released in a vacuum, but in the context of the prejudicial media cycle that framed the videos around their opinion of what they show." (*Id*. at PageID 2730, 2734.)

## II.    Analysis

As noted, at least one Defendant has requested an interdistrict transfer. But none of Defendants' Motions can be said to provide specifics or substantive arguments about such a request. The Court will thus consider only the requests for an intradistrict transfer to Jackson, meaning Defendants' Motions are properly governed by Rule 18.[4] That being said, the Court rejects Defendant Martin's argument that an intradistrict transfer under Rule 18 demands a lesser burden of persuasion from the movant than that imposed under Rule 21(a). Rule 18 of the Federal Rules of Criminal Procedure provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

---

[4] The Court reserves ruling on any other requests in Defendants' Motions (*e.g.*, counselled voir dire and sequestration) until closer to trial.

Fed. R. Crim. P. 18.  Notably, prejudice is not a factor enumerated in the language of the Rule.

But the advisory committee's notes provide:

> If the court is satisfied that there exists in the place fixed for trial prejudice against the defendant so great as to render the trial unfair, the court may, of course, fix another place of trial within the district (if there be such) where such prejudice does not exist.  Cf. Rule 21 dealing with transfers between districts.

Fed. R. Crim. P. 18 advisory committee's notes to 1966 amendments.  The advisory committee's

notes thus indicate that the alleged prejudice giving rise to an intradistrict transfer request under

Rule 18 implicates Rule 21(a)'s standard for interdistrict transfers based on prejudice.  The

pertinent language in both Rules reinforce this conclusion.  *Compare* Fed. R. Crim. P. 18 advisory

committee's notes to 1966 amendments ("If the court is satisfied that there exists . . . prejudice . .

. so great as to render the trial unfair"), *with* Fed. R. Crim. P. 21(a) ("if the court is satisfied that

so great a prejudice against the defendants exists . . . that the defendant cannot obtain a fair and

impartial trial there").  *See also United States v. Benzer*, No. 2:13-cr-00018-JCM-GWF, 2014 U.S.

Dist. LEXIS 177434, at *21–22 (D. Nev. Dec. 24, 2014) ("It does not make reasonable sense that

a lower standard for transfer based on prejudice should apply to an intra-district transfer . . . .").

In addition, courts in this District (and others) have considered factors generally applied to

interdistrict changes of venue when deciding intradistrict transfers.  *See, e.g.*, *Lipscomb*, 299 F.3d

at 343 (applying presumptive prejudice analysis to trial court's *sua sponte* intradistrict transfer

order); *Jenkins v. United States*, No. 1:03-cv-363, 1:02-cr-27, 2005 WL 2989328, at *1, *6 (E.D.

Tenn. Nov. 7, 2005) (quoting *United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990)) ("[a]n

intradistrict transfer is not required absent a strong showing of prejudice.")); *United States v.

Walker*, 890 F. Supp. 954, 958 n. 5 (D. Kan. 1995) (finding Rule 21 "illuminative" of Rule 18;

collecting authorities); *United States v. McRae*, Cr. No. 08-20378, 2009 WL 1035502, at *1, *2

(W.D. Tenn. Apr. 16, 2009) (denying intradistrict transfer from Memphis to Jackson because pretrial publicity was "not so inflammatory or circus-like that the Court must presume prejudice."). The Court will accordingly consider those factors in analyzing Defendants' requests based on prejudicial publicity.[5]

The Court finds that the pretrial publicity surrounding this case is not so great as to raise the presumption that Defendants cannot receive a fair trial in Memphis.  While this case has received substantial media coverage—including both local and national attention—that coverage has not been of the same inflammatory, circus-like character as those presumptive prejudice cases laid out by the Supreme Court in *Skilling*.  561 U.S. 358, 379–80 (2010).  In *Skilling*, the former chief executive officer of Enron—Jeffrey Skilling—appealed his convictions related to Enron's collapse, arguing that pretrial publicity and community prejudice prevented him from obtaining a fair trial.  *Id*. at 367.  Similar to this case, Mr. Skilling moved to transfer his trial because of extensive pretrial publicity; he supported his motion by "[employing] media experts, submitt[ing] hundreds of news reports detailing Enron's downfall, [and providing] affidavits from experts he

---

[5] The Court does not find presumptive prejudice here and thus declines to transfer the trial at this time.  *See* discussion *infra*.  But even were a lesser burden to apply as Defendant Martin suggests, the Court would reach the same conclusion because none of the convenience factors enumerated in Rule 18 favor a transfer to Jackson.  Of prime concern is the convenience of the parties and the witnesses—most of whom reside in the Western Division.  Additionally, the Court has additional concerns that a transfer to Jackson would necessarily cause a continuance of the trial date, which may impact compliance with the Speedy Trial Act—a factor enumerated in Rule 18 as "the prompt administration of justice."  Furthermore, the Court finds that conducting a trial of this magnitude in Jackson—with its attendant supplemental juror questionnaire and the tabulation of the results from said questionnaire, and the potential for an enlarged jury pool— would place a considerable burden upon both the Court and Clerk staff in Jackson and present logistical issues concerning courtroom space, particularly during jury selection.

engaged portraying community attitudes in Houston in comparison to other potential venues." *Id*. at 369–70.

The Court compared Mr. Skilling's case against *Rideau v. Louisiana*, 373 U.S. 723 (1963)—what it termed the "foundation precedent" of presumptive prejudice cases—and concluded that *Rideau* and the cases following it established that "a presumption of prejudice . . . attends only the extreme case." *Id*. at 379–381. In *Rideau*, the Court overturned a defendant's criminal conviction because police obtained and recorded his confession—without counsel present—and allowed a local television station to air the confession repeatedly prior to trial without defendant's knowledge or consent. In *Estes v. Texas*, 381 U.S. 532, 536–38 (1965), the Supreme Court reversed another conviction because "extensive publicity before trial swelled into excessive exposure during preliminary court proceedings" when reporters and television crews overran the courtroom, thus denying the "'judicial serenity and calm to which [defendant] was entitled.'" *Skilling*, 561 U.S. at 379–80 (quoting *Estes*, 381 U.S. at 536). In *Sheppard v. Maxwell*, 384 U.S. 333, 353–55 (1966), the Court reached the same conclusion when the facts showed that "'[b]edlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom,' thrusting jurors 'into the role of celebrities'" and creating a "'carnival atmosphere' [that] pervaded the trial." *Skilling*, 561 U.S. at 380 (quoting *Sheppard*, 384 U.S. at 354–55, 358).

Thus, in each of these cases the Supreme Court overturned "conviction[s] obtained in a trial atmosphere that [was] utterly corrupted by press coverage." *Skilling*, 561 U.S. at 380. *Skilling* made clear, however, that these decisions "cannot be made to stand for the proposition that juror exposure to . . . news accounts of crime . . . alone presumptively deprives the defendant of due process." *Id*. Indeed, "[p]rominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance." *Id*. at 381 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)

("scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.")).  Rather, the Court in *Skilling* considered several factors in conducting its own presumptive prejudice analysis, which this Court proceeds to apply here.  *See Skilling*, 561 U.S. at 382–84.

### A.    The Size and Characteristics of the Community in Which the Crime Occurred

The size and characteristics of Memphis and the Western Division militate against transfer. The Western Division includes Shelby, Fayette, Lauderdale, and Tipton Counties, which totals 1,057,847 people according to the 2020 decennial census; the Eastern Division totals just 481,337 people.  Memphis alone is by far the most populous city in the Western District of Tennessee and the second most populous in the State of Tennessee.  The number of registered voters in Shelby and Fayette Counties alone exceeds 625,000 and any jury venire will be drawn from all four counties of the Western Division.[6]  Given such a large pool of potential jurors in the Western Division, the Court is hard-pressed to presumptively conclude that it would be impossible to empanel an impartial jury.  *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044 (1991) (plurality opinion) (finding a reduced likelihood of prejudice where venire was drawn from a pool of over 600,000 individuals).  Accordingly, this factor weighs against transfer.

### B.    The Nature and Content of Media Reports.

Nor do the media reports at issue in this case require a transfer.  Although the media coverage includes video footage of the incident, strongly-worded commentary from City officials—including the Mayor and MPD Chief, and other types of opinion reporting or

---

[6] Shelby County Election Commission, Shelby Six Month Report November 30, 2023, (Apr. 15, 2024, 4:16 PM), https://www.electionsshelbytn.gov/voter-registration-statistics-reports; Fayette County Election Office, Election Summary Report: 2024 Presidential Preference Primary, (Apr. 15, 2024 7:43 PM), https://fayettetn.us/wp-content/uploads/2024/03/00-Totals.pdf.

commentary—such coverage does not include Defendants' own confessions or "other blatantly prejudicial information of the type readers or viewers *could not* reasonably be expected to shut from sight." *Skilling*, 561 U.S. at 382 (emphasis added).  Indeed, the media coverage in this case includes largely factual reporting of the variety that would attend any criminal case of community significance.  Here, the pretrial publicity does not generate the same level of prejudice as that in *Rideau*, *Estes*, and *Sheppard*.  *See Skilling*, 561 U.S. at 383 (citing *United States v. Chagra*, 669 F.2d 241, 251–52 (5th Cir. 1982) ("A jury may have difficulty in disbelieving or forgetting a defendant's opinion of his own guilt but have no difficulty in rejecting the opinions of others because they may not be well-founded.")).

*McRae* is particularly persuasive on this issue because its general facts bear a striking resemblance to the facts of this case.  *United States v. McRae*, Cr. No. 08-20378, 2009 WL 1035502, at *1, *2 (W.D. Tenn. Apr. 16, 2009).  In *McRae*, an MPD officer was charged with a civil rights violation arising from the alleged use of unreasonable force.  *Id*. at *1.  The defendant argued for a change of venue to the Eastern Division at Jackson because the video of the incident had aired repeatedly on local and national media; several key officials—including the Mayor of Memphis and MPD Chief—made public comments describing the footage as "horrible," "disgusting," and "a hate crime"; and media outlets published unsupported and unrelated allegations of misconduct taken from [the defendant's] MPD personnel file.  *Id*.  The Court, however, found that "[d]espite the widespread and ongoing coverage devoted to Defendant and the incident, it cannot be said that pretrial publicity in this case is the rare situation where prejudice is *presumed*."  *Id*. at *2 (emphasis added).

Critical to analyzing the content of media reports is the idea that even "months of virulent publicity" will not—standing alone—deny Defendants due process.  *See Skilling*, 561 at 380

(quoting *Sheppard*, 384 U.S. at 354).  As in *Sheppard*, such "heated reporting pretrial" must be coupled with a "carnival atmosphere [that] pervaded the trial."  *Id*.  The Court finds no such "carnival atmosphere" in this case.  The facts that led to the egregious due process violations in the cases cited by *Skilling* are simply not analogous to the facts here and this factor thus does not weigh in support of transfer.

### C.      Time Lapse Between Defendants' Indictment and the Trial Date.

After granting Defendant Martin's unopposed motion for a continuance, (ECF No. 190), over nineteen months will have elapsed since Defendants' indictment in state court and the beginning of trial on September 9, 2024.  While this period is shorter than the four-year time lapse in *Skilling*, the Court nevertheless finds that the intensity of media coverage has lessened significantly from the wave of media coverage that commenced immediately after Mr. Nichols's death.  The Court acknowledges that media coverage ebbs and flows around the developments in Defendants' legal cases.  But again, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial."  *Skilling*, 561 U.S. at 384 (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 554 (1976)).  The Court does not find this factor to militate in support of transfer.

For all of these reasons,[7] the Court does not find transfer necessary at this point.  Accordingly, Defendant's requests for an intradistrict transfer are denied.[8]  Defendants may renew their Motions based on actual prejudice should voir dire support such requests.

---

[7] The Court notes that the fourth factor considered in *Skilling* is inapplicable here because it concerned the verdict reached in Mr. Skilling's trial.  561 U.S. at 383.

[8] The Court acknowledges Defendant Martin's ongoing efforts to complete a statistically objective community survey.  The Court does not have the benefit of such a survey, however, and (continued...)

13

## CONCLUSION

For the reasons stated above, Defendants' Motions for Change of Venue are **DENIED**

**WITHOUT PREJUDICE**.   Defendant Haley's Motion to employ a juror questionnaire is

**DENIED AS MOOT**.

**IT IS SO ORDERED**, this 14th day of May, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

the Court lends little credibility to the results of Dr. Edelman's initial survey that relies upon a "non-random, opt-in sample." (*See* Edelman Decl. at 2, ECF No. 156-3 at PageID 890.)  Even Dr. Edelman concedes that "caution must be exercised when generalizing from a non-random sample to the general population of interest" and he concludes only that "[t]he survey results offer *some* indication that the pretrial publicity in this case has undermined the defendants' fair trial rights." (Edelman Decl. at 2, ECF No. 156-3 at PageID 890.)  But even if the Court were to find Dr. Edelman's initial survey credible, "some indication" is not sufficient to satisfy the extraordinarily high bar of presumptive prejudice.