IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No. 2:23-cr-20191-MSN |
| | ) | |
| EMMITT MARTIN, III | ) | |

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO POSSIBLE PUNISHMENT OF DEFENDANTS OR COOPERATING WINTESSES

The defendant, Emmitt Martin, III, through counsel and pursuant to the Fifth and Sixth Amendments to the United States Constitution; *Davis v. Alaska*, 415 U.S. 308 (1974); *Giglio v. United States*, 405 U.S. 150 (1972); and the authorities cited herein, respectfully responds to the Government's Motion in Limine to Preclude Reference to Possible Punishment of Defendants or Cooperating Witnesses. *See* (Government's Motion in Limine to Preclude Reference to Possible Punishment of Defendants or Cooperating Witnesses, ECF No. 299, PageIDs 3732–3735.)

The government's motion seeks to unfairly restrict Mr. Martin's ability to cross-examine witnesses on the scope and understanding of any agreements with the government or potential future consideration they hope to receive for their testimony, Mr. Martin's constitutional guarantee to be able to make and present a defense, and the right to a fair jury trial. *See Giglio v. United States*, 405 U.S. 150, 155 (1972) (holding that "evidence of any understanding or agreement" between witness and the government was "relevant to his credibility and the jury was entitled to know of it"). Tellingly, the government's motion omits any mention of *Giglio* and has no substantive discussion of the confrontation and fair trial issues inherent in revealing to the jury the nature and scope of any agreements or understandings between the government and testifying witnesses, including of course the potential punishments avoided by the witness. The government's motion must be denied.

**I.     INTRODUCTION**

The government, seeking to put Mr. Martin and his co-defendants in prison for the rest of their lives, asks this Court to prevent them from mentioning that fact to the jury even when conducting cross-examination of cooperating witnesses for the government who may have avoided that potential punishment. *See* (Motion, ECF No. 299, PageIDs 3732–3735.) The government also, citing the Sixth Circuit Pattern Jury Instructions on jury deliberation and less than a handful of cases, most of which apply solely to the general rule that the trial court retains the ability to impose some limits on cross-examination, asserts that "courts have consistently ruled that a trial judge can take steps to limit the cross examination of cooperating witnesses or accomplices to prevent the introduction of the issue into the case." (Motion, ECF No. 299, PageIDs 3733–3734.) Although the pattern instructions and the case law prevent the jury from considering the potential punishments when adjudicating *guilt* of the defendant, neither the pattern jury instruction nor the cases cited by the government support the broad assertion that the defendants should be precluded from any mention of the potential punishment, particularly during the cross-examination of cooperating witnesses. As for the government's claim that the potential punishment of cooperating witnesses is irrelevant, *see* (Motion, ECF No. 299, PageID 3732), the Supreme Court has held that "[t]he partiality of a witness is subject to exploration at trial, and is '*always relevant* as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (citations omitted) (emphasis added); *Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (holding that jury was entitled to know details of agreement between government and testifying co-conspirator; reversing and remanding for new trial). Because no rule categorically prevents the defendants from mentioning possible punishments, and because the law clearly permits the questioning of cooperating witnesses about potential punishments and the benefit of any deal or favorable consideration as a motive for testifying, this Court should deny the government's motion.

    **II.    NEITHER THE PATTERN JURY INSTRUCTIONS NOR THE CASE LAW BROADLY PRECLUDES *ANY* MENTION OF THE POTENTIAL PUNISHMENT IN A CRIMINAL CASE.**

Citing Sixth Circuit Pattern Jury Instruction § 8.05(2), *Shannon v. United States*, 512 U.S. 573, 579 (1994), and *United States v. Cloud*, Case No. 5:22-041-DCR, 2022 U.S. Dist. LEXIS 134149, 2022 WL 3006840, at *3 (E.D. Ky. July 28, 2022) (Reeves, C.J.), the government correctly asserts that the jury is prohibited from considering possible punishment on the issue of guilt, but then, without any citation to authorities, broadly proclaims that any reference to punishment at all "would be an impermissible appeal to the jury's sympathy and would be irrelevant." *See* (Motion, ECF No. 299, PageID 3733.)

Pattern Jury Instruction § 8.05(2) falls within the Chapter concerning Deliberations and Verdict, not on the jury's consideration of the evidence presented at trial. *See* Sixth Circuit Pattern Jury Instruction § 8.01(1) ("That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts."). Moreover, the instruction cited by the government merely instructs the jury that its job is not to set the punishment and that it should not consider possible punishment on the issue of guilt. *See* Sixth Circuit Pattern Jury Instruction § 8.05(1)-(3). Mr. Martin agrees that the jury cannot consider possible punishment on the issue of guilt. It does not follow, however, that the defendants should be precluded from any mention of the possible punishment in this case, particularly when cross-examining the cooperating witnesses.

The government's position finds no more support in *Shannon v. United States*, which holds that trial courts are "not required" to provide a jury instruction on "the consequences to the defendant of a verdict of 'not guilty by reason of insanity.'" *Shannon v. United States*, 512 U.S. 573, 575 (1994). Although the Court observed that "as a general matter, jurors are not informed of

mandatory minimum or maximum sentences, nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense," the issue in *Shannon* was whether *the Court* should inform the jury about possible punishment. *Shannon v. United States*, 512 U.S. 573, 586–87 (1994). Additionally, *Shannon* did not actually prohibit such an instruction in all instances. Indeed, the Court agreed that "some form of instruction [regarding potential punishment] may be necessary under certain limited circumstances." *See Shannon v. United States*, 512 U.S. 573, 587 (1994); *see also United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (stating that although the defendant has no Sixth Amendment right to a jury instruction on minimum mandatory sentence, "we do not conclude, as the government urges, that a district court may never instruct the jury on an applicable mandatory minimum sentence"). It thus follows that, if, under certain circumstances, the trial court may instruct the jury regarding possible punishments, the defendants are not categorically barred from making any reference to possible punishments, assuming the reference can otherwise satisfy the rules of evidence.[1]

*United States v. Cloud*, the final case cited by the government, similarly does not stand for a broad prohibition on any mention of potential punishment. There, the district court reaffirmed the principle, with which Mr. Martin does not disagree, that the jury cannot "consider[] possible

---

[1] The Sixth Circuit has, in a chain citation, previously cited *Polouizzi* for the proposition that "a defendant has no right to inform the jury of an applicable mandatory minimum sentence," but, as explained more fully above, *Polouizzi* does not categorically preclude mentioning potential punishment to jurors. *See United States v. Collins*, 828 F.3d 386, 389 (6th Cir. 2016) (citing *United States v. Polouizzi*, 564 F.3d 142, 159–61 (2d Cir. 2009)). Instead, the court, recognizing that "a jury should base its verdict on the evidence, without regard to that verdict's consequences, and . . . . the general inappropriateness of jury nullification," found that "these principles do not lead inexorably to the conclusion that a court may never instruct the jury on the consequences of its verdict" and acknowledged "the possibility . . . that circumstances may exist in which instructing the jury on the consequences of its verdict will better ensure that the jury bases that verdict solely on the evidence and will better discourage nullification." *United States v. Polouizzi*, 564 F.3d 142, 161–62 (2d Cir. 2009) (citations omitted).

punishment in determining whether the defendants are guilty." *United States v. Cloud*, No. 5: 22-041-DCR, 2022 U.S. Dist. LEXIS 134149, at *6 (E.D. Ky. July 28, 2022). The court granted the government's motion in limine to prevent witnesses from "introducing evidence or cross-examining witnesses regarding statutory penalties for drug trafficking," specifically excluding statements made by law enforcement officers about those penalties on body worn camera. *See United States v. Cloud*, No. 5: 22-041-DCR, 2022 U.S. Dist. LEXIS 134149, at *5 (E.D. Ky. July 28, 2022). Notably, the court's holding did not address cross-examination of a cooperating witness about potential punishment so that the jury may accurately assess the impact of any promised leniency on their motive for testifying.

### III. THE SIXTH AMENDMENT RIGHT TO CONFRONTATION SPECIFICALLY INCLUDES THE RIGHT TO CROSS-EXAMINE WITNESSES ABOUT THEIR MOTIVATION FOR TESTIFYING.

Even if the government was correct in its assertion that the law precludes any reference to the consequences of a guilty verdict, it is dead wrong that the law precludes the mention of possible punishments facing cooperating witnesses, even when those witnesses are co-defendants. "When a witness testifies against a co-defendant, evidence of any understanding or agreement is relevant to such witness' credibility and a jury is entitled to consider it." *Rickman v. Dutton*, 864 F. Supp. 686, 704–05 (M.D. Tenn. 1994) (citing *Campbell v. Reed*, 594 F.2d 4, 7 (4th Cir. 1979); *Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986)). That relevance extends to "the range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows— or ought to know—is the potential sentence for a conviction following a plea of not guilty." *United States v. Roan Eagle*, 867 F.2d 436, 443 (8th Cir. 1989). Leniency, or even the potential for it, in exchange for trial testimony is quintessential bias that falls squarely within the Sixth Amendment right to Confrontation, which secures not only secures the right to confront witnesses but also "'the right of cross-examination.'" *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v.*

*Alabama*, 380 U.S. 415, 418 (1965)); *see Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (the credibility of testifying co-conspirator "as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it"); *Joseph v. Coyle*, 469 F.3d 441, 470 (6th Cir. 2006) ("The prosecution's giving a witness benefits—leniency, cash, or anything else—can be used by a cross-examining defense counsel to undermine the witness . . . ." quoting *Wisehart v. Davis*, 408 F.3d 321, 323–24 (7th Cir. 2005)).

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," and accordingly, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *see also United States v. Caldwell*, 88 F.3d 522, 525 (8th Cir. 1996) ("Because the bias of a witness is always relevant, the penalty to which [testifying accomplice] would have been subject had he not testified against Caldwell cannot be characterized as collateral."). The Supreme Court has consistently "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959) (stating that the right to cross-examine witnesses to reveal the motivation for testimony has "ancient roots" that "find expression in the Sixth Amendment"); *see also Banks v. Dretke*, 540 U.S. 668, 698 (2004) (holding fact that "key witness at both guilt and punishment phases" was "a paid informant was unquestionably 'relevant,' and disclosure of that status "would have been 'helpful to [the] defense'"); *Miller v. Genovese*, 994 F.3d 734, 742 (6th Cir. 2021) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was

prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)). To adequately understand the witness's true motivation for testifying on behalf of the government, and, consequently, adequately assess witness credibility, the jury must be able to fully understand the "deal" reached between a cooperating witness who has pleaded guilty, or one who has not even been charged but had culpability, and the government in exchange for their testimony. *See United States v. Brown*, 546 F.2d 166, 170 (5th Cir. 1977) (stating that "[w]hen the witness being subjected to cross-examination . . . was an accomplice or participant in the crime for which the defendant is being prosecuted, the importance of cross-examination is necessarily magnified"); *see also Giglio v. United State*s, 405 U.S. 150, 155 (1972) (jury must be informed of the parameters of any agreement or understanding between testifying co-conspirator and the government); *Akrawi v. Booker*, 572 F.3d 252, 262 (6th Cir. 2009) (citing *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009)) (stating that evidence of any benefit provided in exchange for cooperation must be disclosed); *Armour v. Salisbury*, 492 F.2d 1032, 1037 (6th Cir. 1974) (finding constitutional violation for failure to reveal conversation between prosecutor and key witness that, even in the absence of formal agreement, could "reasonably have caused [witness] to conclude that the vigor of the prosecutor's efforts for probation would be determined by whether [witness] testified").

Although the government is correct that this Court retains the discretion to limit cross-examination, it must do so mindful that the right to not only to cross-examination but to "the effective cross-examination for bias of an adverse witness" is a "vital . . . constitutional right." *Davis v. Alaska*, 415 U.S. 308, 320 (1974). Mr. Martin and his co-defendants are on trial for their lives. "When the stakes are so high and the credibility of the one-time associate-in-crime is acutely

involved, the accused is entitled as a matter of right to effective cross-examination," and effective cross-examination of a cooperating co-conspirator under these circumstances "includes not only the specific crime to which the co-actor is pleading guilty, but the range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows—or ought to know—is the potential sentence for a conviction following a plea of not guilty." *United States v. Roan Eagle*, 867 F.2d 436, 443 (8th Cir. 1989). So long as the questioning does not venture into repetition or harassment, the cross-examiner is allowed to attack any witness' credibility via questions "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

Moreover, it is not enough that the cross-examiner be permitted to ask the witness "whether he was biased," he must also be permitted "to make a record from which to *argue* why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (emphasis added); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."). Here, to argue why the cooperating witnesses might be biased or otherwise lack impartiality, the defendants must be permitted to inquire into the full breadth of the cooperation agreement, including its impact on potential punishment. *See Giglio v. United States*, 405 U.S. 150, 155 (1972) (holding that "evidence of any understanding or agreement" between witness and the government was "relevant to his credibility and the jury was entitled to know of it"); *see also, e.g., United States v. Rocha*, 916 F.2d 219 (5th Cir. 1990) (stating that the Confrontation Clause "*mandates*

that a defendant *must* be permitted to cross-examine a witness to determine if the witness has any biases, prejudices, or ulterior motives that may provide an incentive on the part of the witness to falsify his testimony") (emphasis added); *McKinzy v. Wainwright*, 719 F.2d 1525, 1528 (11th Cir. 1983) ("It is error to prevent cross examination of the witness' possible motives to shade his testimony to please state authorities who may have control over the witness' own criminal disposition."); *United States v. Hall*, 653 F.2d 1002, 1008 (5th Cir. 1981) ("Cross-examination into any motivation or incentive a witness may have for falsifying his testimony *must* be permitted.") (emphasis in original). "Cross-examination should be given the largest possible scope with regard to the testimony of participants in the crime with which the defendant is charged." *Wasko v. Dugger*, 761 F. Supp. 1560, 1567 (S.D. Fla. 1991) (citations omitted). "Because 'it is a constitution we deal with, not semantics,' it makes no practical difference 'whether the understanding is consummated by a wink, a nod and a handshake, or by a signed and notarized formal document ceremoniously impressed with a wax seal. A deal is a deal." *Rickman v. Dutton*, 864 F. Supp. 686, 705 (M.D. Tenn. 1994) (quoting *Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986) and citing *Duggan v. State*, 778 S.W.2d 465, 468 (Tex. Crim. App. 1989)). "Moreover, a co-defendant who testifies with only a reasonable expectation or understanding of leniency, but not a formal agreement, has an even more powerful incentive to testify falsely in order to facilitate a conviction and curry favor with a prosecutor." *Rickman v. Dutton*, 864 F. Supp. 686, 705 (M.D. Tenn. 1994) (citing *Campbell v. Reed*, 594 F.2d 4, 7 (4th Cir. 1979) (for purposes of assessing credibility, absence of a formal agreement only increases significance of witness' expectation of favorable treatment)). These cases demonstrate, and powerfully so, that the constitutional right to confrontation is paramount to any concern that the jury might discern the punishment that the defendants face.

In *Delaware v. Van Arsdall*, which the government cites in support of its argument that the trial court should prohibit cross-examination of the cooperating witnesses about their potential punishments, the Court actually found that the trial court violated the Sixth Amendment by preventing the defendant from inquiring into a witness's bias as a result of the State's dismissing charges against him in exchange for his testimony. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The government's position likewise finds no support in *United States v. Bilderbeck*, where the court ruled, without analysis, that the trial court did not abuse its discretion by preventing defense counsel from questioning a witness broadly "about federal narcotics penalties in the Eastern District of Michigan" as a back door avenue of admission for the penalties facing Bilderbeck. *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). *Bilderbeck* says nothing about questioning a cooperating witness to expose potential bias as a result of promised sentencing leniency.

Because no rule categorically prevents the defendants from mentioning possible punishments and because the law clearly permits the questioning of cooperating witnesses about potential punishments as a motive for testifying, this Court should enter an order denying the government's motion.

Respectfully submitted this 24th day of June, 2024.

RITCHIE, DAVIES, JOHNSON, & STOVALL, P.C.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON [TN BPR No. 022140]
CATALINA L.C. GOODWIN [TN BPR No. 038660]
S. RENEE HAMMOND [TN BPR No. 021419]
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
johnson@rdjs.law
goodwin@rdjs.law
rhammond@rdjs.law

THE LAW OFFICE OF MASSEY MCCLUSKY FUCHS & BALLENGER

/s/ William D. Massey
WILLIAM D. MASSEY [BPR No. 9568]
3074 East Road
Memphis, TN 38128
(901) 384-4004
w.massey3074@gmail.com


**CERTIFICATE OF SERVICE**

    I certify that on June 24, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                              s/Stephen Ross Johnson