IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cr-20191-MSN |
| ) | |
| v. ) | |
| ) | |
| EMMITT MARTIN III, ) | |
| TADARRIUS BEAN, ) | |
| DEMETRIUS HALEY, ) | |
| *and* JUSTIN SMITH, ) | |
| ) | |
| Defendants. | |

**ORDER DENYING MOTIONS TO DISMISS**

Before the Court are Defendant Emmitt Martin III's ("Defendant") Motion to Dismiss Count One for Improperly Alleging Willful Failure to Intervene or Motion to Strike Surplusage, ("First Motion," ECF No. 289), with which he filed a Memorandum in Support, (ECF No. 290); and his Motion to Dismiss Count One Based on Vagueness Due To Improper Allegation of Failure to Act, ("Second Motion," ECF No. 293). The Government filed a consolidated Response to Defendant's Motions on June 11, 2024. (ECF No. 300.) Defendant filed a Reply to the Government's Response on June 18, 2024. (ECF No. 302.) For the reasons below, the Motions are **DENIED**.

**BACKGROUND**

On January 7, 2023, officers from the Memphis Police Department ("MPD") conducted a traffic stop on Mr. Tyre Nichols during which Mr. Nichols sustained serious injuries. He passed away three days later. On September 12, 2023, Defendants were federally indicted on four

felony counts: two for deprivation of constitutional rights under color of law in violation of 18 U.S.C. §§ 2 and 242 (one through excessive force and failure to intervene (Count 1) and the other through deliberate indifference to serious medical needs (Count 2)); one count of conspiracy to witness tamper under 18 U.S.C. § 1512(k) (Count 3), and one count of witness tampering under 18 U.S.C. § 1512(b)(3) (Count 4).  (ECF Nos. 1 (sealed) & 2.)  Defendant filed the Motions now before the Court on June 1, and June 3, 2024, seeking the dismissal of Count 1.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure ("FRCP") 12(b)(3)(B)(v) allows a defendant to raise a pretrial challenge to an indictment if the indictment "fails to state an offense."  This rule, however, limits the pretrial defenses a party may raise to those "the court can determine without a trial on the merits."  FRCP 12(b)(1).  In other words, resolution of a pretrial challenge to the indictment is appropriate "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."  *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)); *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based.").  In analyzing a motion to dismiss an indictment, the court accepts the factual allegations in the indictment and looks to whether the indictment is valid on its face.  *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

## DISCUSSION

**I.      FIRST MOTION**

Defendant moves to dismiss Count 1 for several reasons, all stemming from Count 1's allegation that he violated 18 U.S.C. § 242 when he "willfully failed to intervene in the unlawful

assault" of Mr. Nichols. (*See* ECF No. 289 at PageID 3652; ECF No. 1 (sealed); ECF No. 2 at PageID 9.) He argues that that phrase in the Indictment does not track § 242's language, that the Fourth Amendment does not impose a duty to prevent unreasonable seizures, and that Count 1 fails to state an offense because it does not allege that he had a duty to intervene. (ECF No. 289 at PageID 3652.) According to Defendant, these infirmities "invite[] the jury to convict on a legally inadequate basis, not only impermissibly lowering the quantum of proof required for a conviction of 18 U.S.C. § 242 but also violating due process notice requirements." (*Id.* at PageID 3653.) Defendant thus asks the Court to dismiss Count 1 or, in the alternative, strike the phrase "and willfully failed to intervene in the unlawful assault." (*Id.*) The Court takes each argument in turn.

      A.      **Language of the Statute**

The crux of Defendant's argument here is that § 242 contemplates an affirmative action as opposed to a failure to act, meaning the allegation in Count 1 that he violated the statute by failing to act expands the scope of § 242 beyond its plain language. (ECF No. 290 at PageID 3659.) The Government responds that Defendant "cites zero cases in support of this novel proposition and offers no explanation why, if this were true, so many defendants have been successfully prosecuted under § 242 using a failure-to-intervene theory, and why so many appellate courts have upheld those convictions." (ECF No. 300 at PageID 3739.) It also argues that failure to intervene can be characterized as an affirmative action. (*Id.* at PageID 3740.)

Section 242 provides, in relevant part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title, or imprisoned for any term of years or for life, or both . . . .

3

18 U.S.C. § 242. One's failure to intervene when there is a duty to do so can constitute an affirmative action that subjects an individual to the deprivation of a right. To claim otherwise disregards the purpose of intervention in this context, which is to prevent a constitutional violation altogether, or else stop the continuation of a constitutional violation that may also lead to additional violations. Indeed, the test for liability on a failure-to-intervene theory establishes as much. *See Chaney-Snell v. Young*, 98 F.4th 699, 722 (6th Cir. 2024) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (requiring that the officer "have 'observed' the force 'or had reason to know' a colleague would use it" and "have 'had both the opportunity and the means' to stop it.").

It is thus not surprising that courts have impliedly rejected Defendant's viewpoint when permitting liability on a failure to intervene theory for a range of violations. *See, e.g.*, *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (citing *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir. 1982)) ("Those present for an unconstitutional seizure can also be held liable for failure to protect"); *Adeeko v. Chattanooga Metro. Airport Auth.*, No. 1:19-cv-113, 2020 U.S. Dist. LEXIS 50163, at *23 (E.D. Tenn. Mar. 24, 2020) (collecting cases indicating that "[w]hile failure-to-intervene claims often involve allegations of excessive force, the Sixth Circuit has acknowledged the failure-to-intervene theory of liability extends beyond the excessive-force context"). Without more, and having found no authority indicating Defendant's distinction is as significant as he claims, the Court does not find that Count 1 expands § 242 beyond its plain language and thus will not dismiss it on that basis.

### B. Scope of the Fourth Amendment

Next, Defendant suggests that the Sixth Circuit has recently found that the Fourth Amendment does not cover a failure to intervene, meaning Defendant could not have "willfully

subjected" Mr. Nichols to a deprivation of his Fourth Amendment rights as required by § 242 even assuming he failed to intervene in the assault. (ECF No. 290 at PageID 3661 (citing *Chaney-Snell*, 98 F.4th at 721).) The Government disagrees, contending that the Sixth Circuit has held that the Fourth Amendment bars a police officer from failing to intervene in another's use of excessive force. (ECF No. 300 at PageID 3740–41.) The Government also suggests that *Chaney-Snell* does not go as far as Defendant says it does. (*Id.* at PageID 3741.)

*Chaney-Snell* involved claims arising under 42 U.S.C. §1983—the civil counterpart to 18 U.S.C. § 242—from the alleged use of excessive force by one police officer and the failure to intervene by another police officer.[1] *Chaney-Snell*, 98 F.4th at 704, 706. On appeal from the district court's denial of qualified immunity to both officers, the Sixth Circuit considered whether the plaintiff had established a failure to intervene theory of liability under § 1983. Within that discussion, the Court affirmed that it "ha[d] held that an officer who fails to intervene to prevent another officer's excessive force can face liability for that force under § 1983." *Id.* at 721 (citing *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir, 1982)).

Defendant is correct that the *Chaney-Snell* Court was less than sure about the source of the failure to intervene theory—it considered as possibilities the Fourth Amendment, the Equal Protection Clause, the Due Process Clause, and the text of § 1983 itself. *Id.* But unfortunately for Defendant, the Court explicitly declined to identify the source of this theory of liability, much less hold that the Fourth Amendment does not cover the failure to intervene. *Id.* at 722. Given that fact, the Court will continue to follow Sixth Circuit precedent that has rooted the failure to intervene in the Fourth Amendment. *See, e.g.*, *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 493 (6th

---

[1] The plaintiff in *Chaney-Snell* alleged that one officer exercised excessive force while the other failed to intervene in that use of force. *Chaney-Snell*, 98 F.4th at 706. But both officers appealed the denial of qualified immunity on the failure to intervene theory given the lack of clarity in the record concerning the source of the force used. *Id.* at 721.

Cir. 2020) (citing cases) ("In this excessive-force context, our court has held that a nearby officer who does not actively participate in the use of excessive force may still violate the Fourth Amendment if the officer fails to intervene to stop a fellow officer's use of such force."); *see also Smoak*, 460 F.3d at 784 (citing *Smith*, 691 F.2d at 225 ("Those present for an unconstitutional seizure can also be held liable for failure to protect")). Accordingly, the Court declines to dismiss Count 1 on these grounds as well.

### C. Duty to Intervene

Finally, Defendant asserts that an "officer's duty to act is an essential element that must be included in the indictment" and that, because Count 1 does not include such an allegation, it must be dismissed. (ECF No. 290 at PageID 3664.) The Government counters that Defendant's alleged failure to intervene is a means through which he committed the element of the offense that requires a constitutional deprivation. (ECF No. 300 at PageID 3742.) And even if the Government is obligated to establish a duty to intervene in order to show a failure to intervene, it is not an element of the offense requiring inclusion in the Indictment. (*Id.*)

As Defendant acknowledges, § 242 "makes it criminal to (1) willfully and (2) under color of law (3) deprive a person of rights protected by the Constitution or laws of the United States." (ECF No. 290 at PageID 3659 (citing *United States v. Lanier*, 520 U.S. 259, 264 (1997)).) And as the Court has explained in its consideration of another of Defendant's several Motions to Dismiss, Count 1 sets forth these elements so as to fairly inform Defendant of the charges against him and allow him to invoke double jeopardy should that be necessary in the future. (*See* ECF No. 352.) A duty to intervene may be a fact the Government must prove in order to establish its claim that Defendant violated Mr. Nichols's constitutional right to be free from the use of unreasonable force through his alleged failure to intervene. But it need not appear in the

6

Indictment.  *See, e.g.*, *United States v. Melendez*, 2004 U.S. Dist. LEXIS 620, at *17 (E.D. Mich. Jan. 20, 2004) (denying defendants' motion to dismiss the indictment as insufficient because "[t]he 'element' that must be stated in the indictment is the deprivation of a constitutional right" and "an occupant's expectation of privacy is merely one fact that must be proved to establish [that element]").  Indeed, the Government's argument is well-taken that, under Defendant's theory, the indictment would contain much of what typically appears only in the jury instructions.  (*See* ECF No. 300 at PageID 3743.)

        **D.**      **Motion to Strike Surplusage**

Defendant concludes that, based on the aforementioned arguments, the phrase "willfully failed to intervene" should be stricken as legally irrelevant and prejudicial.  (ECF No. 290 at PageID 3665.)  Because the Court has rejected Defendants' arguments, it denies this relief.

**II.**    **SECOND MOTION**

Defendant's Second Motion "moves this Court to dismiss Count One of the Indictment because it improperly alleges that he 'willfully failed to intervene in the unlawful assault' or, alternatively, to strike the phrase 'and willfully failed to intervene in the unlawful assault' from that count."  (ECF No. 293 at PageID 3672.)  While Defendant asserts that the "failure to intervene" issue exacerbates his vagueness concerns, the Court does not discern any arguments beyond those set forth in his prior Motions to Dismiss Count 1 (ECF Nos. 167 & 289).  He also requests the same relief as he did in the First Motion.  (ECF No. 293 at PageID 3675.)  Accordingly, the Court refers Defendant to the Court's other Orders on this issue and denies his Second Motion.

## **CONCLUSION**

Defendant's Motion to Dismiss Count One for Improperly Alleging Willful Failure to Intervene or Motion to Strike Surplusage, (ECF No. 289); and his Motion to Dismiss Count One Based on Vagueness Due To Improper Allegation of Failure to Act, (ECF No. 293), are **DENIED**.

**IT IS SO ORDERED**, this 12th day of July, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE