# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2:23-cr-20191-MSN |
| ) | |
| ) | |
| EMMITT MARTIN, III, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## UNITED STATES' MOTION TO EXCLUDE IMPROPER EXPERT TESTIMONY FROM JARED WOJCICKI REGARDING USE OF FORCE BY DEFENDANT SMITH

The United States submits this motion *in limine* to preclude defendant Justin Smith's use of force expert, Mark Wojcicki, from providing improper testimony. It appears that Mr. Wojcicki may be qualified to opine generally on use of force techniques and police practices in the United States. The United States objects, however, to five categories of his proposed testimony which plainly violate evidentiary rules: (1) improper references to defendant Smith's supposed good character and his previous actions and behavior as a law enforcement officer; (2) testimony purporting to resolve disputed issues of fact, which would usurp the jury's factfinding role; (3) testimony regarding defendant Smith's mental state at the time of the charged offense, in violation of Federal Rule of Evidence 704(b), and Tyre Nichols' mental state, for which he has no basis to testify; (4) testimony referring to otherwise inadmissible evidence, including self-serving hearsay from defendant Smith, which would serve as an end-run around the Federal Rules of Evidence; and (5) testimony opining on whether defendant Smith's use of force and actions were "lawful" or "reasonable," which would constitute impermissible legal conclusions. The United States requests

that the Court issue a pretrial order excluding those five categories of improper testimony, and barring defendant Smith from eliciting such testimony.

## Factual and Procedural Background

On January 7, 2023, the defendants assaulted Tyre Nichols after he fled on foot from a traffic stop. Three days later, Mr. Nichols died because of the blunt force trauma injuries he suffered during the assault.

The defendants are charged in Count One with, while acting under color of law, willfully violating Nichols' Fourth Amendment right to be free from the use of unreasonable force by a police officer, resulting in his injury and death, in violation of 18 U.S.C. § 242. Count Two charges the defendants with violating the same statute by, while acting under color of law, willfully violating Nichols' Fourteenth Amendment right to be free from police officers' deliberate indifference to his serious medical needs, resulting in his injury and death. Count Three charges the defendants with a conspiracy for conspiring to withhold truthful information and to provide misleading information to their supervisor and others, in violation of 18 U.S.C. § 1512(k), while Count Four charges the defendants with obstruction of justice by withholding information and providing false and misleading information to their supervisor and to a Memphis Police Department detective, in violation of 18 U.S.C. § 1512(b)(3).

The government anticipates that the primary factual matters the jury will be required to resolve at trial include whether (1) the force the defendants used during the assault was unreasonable; (2) the defendants had the opportunity to intervene in other defendants' uses of force; (3) the defendants employed excessive force willfully, knowing that it was excessive; (4) the defendants' failure to render aid and to provide information about Nichols' injuries to first responders and others demonstrated deliberate indifference; and (5) the defendants made false and

misleading statements after the assault.

On July 1, 2024, defendant Smith provided notice of his intent to call Mark Wojcicki as an expert on police use of force. ECF No. 317.

**Argument**

Defendant Smith's expert notice demonstrates that he plans to elicit impermissible testimony from defense expert Wojcicki, including: (1) improper character evidence about defendant Smith; (2) testimony purporting to resolve factual issues, thereby usurping the role of the jury; (3) testimony regarding defendant Smith's and Nichols' mental state during the charged offense; (4) testimony referring to inadmissible evidence, including defendant Smith's own self-serving hearsay; and (5) testimony opining on ultimate legal issues, such as whether Smith's use of force and actions were "reasonable." The United States requests that this Court issue an order prohibiting defense expert Wojcicki from offering testimony that falls into any of these five categories.

**I.    The Court should prohibit defense expert Wojcicki from testifying improperly about defendant Smith's alleged good character**

Defense expert Wojcicki's report includes a section where he discusses his "pleasure" in having directly supervised defendant Smith during his career, and several opinions about defendant Smith's character and past conduct. As discussed in the government's previous motion *in limine* to preclude improper reference to defendants' good character, this proposed testimony is largely improper. *See* ECF No. 319. Evidence of character is generally not admissible to show that a person acted in conformity with that trait. Fed. R. Evid. 404(a)(1). However, a defendant may offer evidence of a particular character trait if that trait is "pertinent," and the evidence is presented in the proper form. Fed. Rule Evid. 404(a)(2)(a). Any evidence of a defendant's character must be in the form of opinion or character testimony only, *id.*; the rules do not permit a defendant to offer

3

evidence of specific acts that demonstrate the trait. *United States v. Silber*, 456 F. App'x 559, 562 (6th Cir. 2012) ("Although a criminal defendant generally may introduce character evidence, he must do so through testimony about [his] reputation or by testimony in the form of an opinion[.]") (quotations and citations omitted).

Defense expert Wojcicki's testimony that defendant Smith "never treated a suspect or a citizen with any disrespect, and never permitted another officer to do so when he could intervene," Wojcicki Report at 8, is improper character evidence because it references specific past acts (or non-acts) and is not in the form of reputation or opinion testimony. Wojcicki's proposed testimony that defendant Smith was "always . . . professional" and "concerned with the safety of citizens" and "suspects" is similarly improper in form, and is also irrelevant because it does not have any bearing on a pertinent character trait. *Id.*; *see United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *United States v. Sittenfeld*, 2022 WL 2192955, at *12 (S.D. Ohio June 17, 2022) (prior good acts not admissible merely to support a propensity inference, and still less to support jury nullification based on mere sympathy).

Finally, while Wojcicki may be able to testify that defendant Smith had a reputation for honesty, that testimony must take the form of opinion testimony. It would also permit the government to cross-examine witnesses about specific instances of conduct inconsistent with the proffered character trait, Rule 405(a), *see United States v. Hazelwood*, 979 F.3d 398, 409–10 (6th Cir. 2020), and the government may call its own character witnesses in rebuttal.[1] *See United States*

---

[1] The government previously indicated that it would seek to admit statements defendant Smith made during his proffer session if the defense presented evidence or testimony that is inconsistent with his proffer statements. *See* ECF No. 298. The defense presentation of Mr. Wojcicki at trial clearly triggers the waiver provision of the proffer agreement.

4

*v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996) ("[T]he defendant is free to present evidence, in the form of opinion or reputation testimony, of pertinent favorable character traits. Where the defendant chooses this perilous path, though, he opens the door for the prosecution to introduce in rebuttal its own opinion or reputation evidence regarding the defendant's character. Furthermore, the Government may challenge the defendant's character witnesses by cross-examining them about their knowledge of relevant specific instances of the defendant's conduct.") (citations and internal quotation marks omitted). The Government would also be entitled to admit even-otherwise-inadmissible evidence of specific instances of misconduct. *United States v. Roper*, 135 F.3d 430, 433–34 (6th Cir. 1983) (affirming a district court's decision to allow the Government to use "extrinsic, substantive evidence" of past criminal convictions to rebut the defendant's character defense and holding that the United States was "immunized" from the dictates of Rule 404(b) which usually "impose[] limitations" on the use of specific bad acts evidence).

Any evidence of defendant Smith's general good character or specific acts of good conduct should be excluded, apart from reputation or opinion testimony about defendant Smith's character for honesty.

II. **The Court should exclude expert testimony purporting to resolve disputed issues of fact, which would usurp the role of the jury as factfinder**

A use-of-force expert usurps the jury's role by giving his opinion about a disputed fact that does not require expertise to resolve. Experts are permitted to testify about opinions, not facts. *See* Fed. R. Evid. 702. "[I]n appropriate cases, [modern practice] permits an expert to explain the facts on which his or her opinion is based without testifying to the truth of those facts." *Williams v. Illinois*, 567 U.S. 50, 57 (2012) (emphasis added). These requirements exist because expert testimony is admissible only where it will assist the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "If a jury is as capable of comprehending the primary

facts and of drawing correct conclusions from them as an expert witness, expert testimony . . . is unnecessary." *Adkins v. Marathon Petroleum Co., LP*, ___ F.4th ___, No. 23-3418, 2024 WL 3100981, at *5 (6th Cir. June 24, 2024) (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)) (quotation omitted); *see also Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) (upholding district court's exclusion of evidence where "the court determined that it would prejudicially confuse the jury to hear an expert witness base his opinion of the ultimate issue on facts that were for the jury to determine.").

In use of force cases, courts have consistently held that expert testimony regarding the underlying facts and opinions about whether an officer's actions were "reasonable" is inadmissible, because juries are "in as good a position as the experts" to determine what happened during a use of force incident and whether it was objectively reasonable. *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006); *see also Clem v. Corbeau*, 98 F. App'x 197, 201 (4th Cir. 2004) (excluding expert testimony where "the proffered experts did not offer expert testimony providing specialized knowledge on obscure skills . . . [but rather only] involved opinions, given their particular interpretations of the contested facts, as to the reasonableness of Corbeau's use of force at issue in this case . . . [i]nstead of assisting the jury, such expert opinion risked supplanting a jury's independent exercise of common sense and its role of determining the facts."); *Dunlap v. Hood*, No. 3-07-CV-2147-BD, 2009 WL 362292, at *1 (N.D. Tex. Feb. 13, 2009) (barring an expert from describing what he could see in looking at surveillance video and photographs to reach an opinion about the reasonableness of a use of force); *Est. of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017). ("A jury can view the video just as well as [the proposed use-of-force expert]."); *Lee v. Anderson*, 616 F.3d 803, 809 (8th Cir. 2010) (excluding testimony about whether plaintiff had "a gun in his hand" when the defendant-officer used force because that "opinion

6

would not have assisted the jury but rather would have told it what result to reach"); *Thomas v. Barze*, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014) (prohibiting § 1983 police defendants' expert from offering "statements that directly opine on what factually occurred").

Unlike the reasonableness inquiry, however, testimony from an expert may be useful to the jury in proving willfulness under 18 U.S.C. § 242. As described in the government's expert notice, defendants' knowledge of MPD's training, policies, and procedures is relevant evidence to establish that the defendants willfully violated the rights of Tyre Nichols. *See* ECF No. 142 at 5; *see also United States v. Bryant*, 528 F.Supp.3d 814, 817 (M.D. Tenn. 2021) (noting that "without question" a violation of an officer's training and policy may help to demonstrate willfulness and thereby prove a violation of section 242) (citing *United States v. Proano*, 912 F.3d 431, 439–41 (7th Cir. 2019) (collecting cases)). In keeping with that case law, hybrid or expert witnesses may opine regarding whether a defendant's actions appear to be consistent or inconsistent with the training and policies of the Memphis Police Department. Critically, such evidence only goes to willfulness. Expert testimony regarding those facts must be linked to MPD policy and MPD training, and experts should not purport to definitively say what occurred during the incident with Nichols.

While some of defense expert Wojcicki's testimony appears to be framed around MPD's policy and training, much of his proposed testimony would circumvent these rules by presenting factual testimony and purporting to resolve disputed factual issues, thereby invading the province of the jury. The Court should exclude such testimony by defense expert Wojcicki including, but not limited to:

> (1) "It is obvious that Nichols tightened his body and moved his body, arms, and legs in order to keep the officers from obtaining and maintaining control of Nichols' hands," Wojcicki Report at 2;

7

(2) "it does not appear that any of Smith's distraction slaps touched Nichols' face," *id.*;

(3) "Smith and Bean's hard empty hands also failed to gain compliance from Nichols." *id.* at 3;

(4) Smith "was not pulling Nichols to his feet, but instead, he was pulling down on Nichols to push him to the pavement . . ." *id.* at 4;

(5) "Smith was obviously doing everything he could to get Nichols back on the ground as Nichols was standing up", *id.* at 5;

(6) describing the incident with Nichols as "an extremely dangerous situation," *id.*;

(7) asserting that defendant Smith's call for medical assistance prevented a 20 minute delay in care and that it was "miraculous for Nichols' benefit," *id.* at 6; and

(8) asserting that "only Smith insured [sic]" that Nichols had an open airway, *id.*; and

(9) that "Smith's blue team report is in fact accurate and discloses every relevant use of force Smith used or applied by Smith in the Nichols arrest." *Id.* at 7.

Much of this testimony simply provides defense expert Wojcicki's personal opinion about what happened during the incident with Nichols. If, as Wojcicki repeatedly states, some of these factual issues are "obvious," then there is certainly no reason for expert testimony on the issue.

Proper testimony on the use of force would need to be placed in the context of MPD policy and training, the consistency or inconsistency of certain actions with that training and policy, and how officers would label Nichols' actions within the context of that policy and training. Wojcicki's proposed testimony is not helpful to the jury because it is just an expert witness narrating events shown on video and offering a personal opinion. It sheds no light on defendant Smith's willfulness because it does not connect the underlying facts to MPD's training or policy.

The jurors are perfectly capable of listening to and reviewing the evidence and resolving factual disputes. It would be inappropriate for an expert to do it for them. The Court should not permit the defense to substitute its retained expert in place of the jury. Any expert testimony

8

offering a use of force analysis based on the conduct captured on video should be limited to the context of the defendant's MPD training and policy. *See Bryant*, 528 F.Supp.3d at 817.

### III. The Court should exclude testimony regarding defendant Smith's mental state at the time of the incident

The Court should prohibit testimony about defendant Smith's mental state during the charged conduct. Federal Rule of Evidence 704(b) makes clear that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged," as "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b). "Experts may not [] testify that a particular criminal defendant possessed the requisite mental state or condition constituting an element of the crime charged." *United States v. Jaffal*, 79 F.4th 582, 603 (6th Cir. 2023) (internal quotation marks omitted). To prove the mental state element in this case—willfulness—the government must show that defendant Smith intentionally "used force knowing that the force he used was more than what a reasonable officer would have used under the circumstances." *United States v. Proano*, 912 F.3d 431, 442 (7th Cir. 2019). It follows that a use-of-force expert in an excessive force case may not opine as to whether or not the defendant-officer intentionally used excessive force or, stated differently, whether the officer acted in good faith. *See United States v. Harvey*, No. 3:18-CR-132-DPJ-LRA, 2019 WL 4420518, at *5 (S.D. Miss. Sept. 16, 2019) (excluding expert testimony about the defendant-officer's intent in an excessive force prosecution); *United States v. Palkowitsch*, 2019 WL 5854059, *2 (D. Minn. 2019) (same).

For that reason, the Court should exclude defense expert Wojcicki's testimony about defendant Smith's state of mind throughout the assault on Nichols and the immediate aftermath, including, but not limited to, the following proposed testimony:

(1) that defendant Smith and co-defendant Bean's "primary focus" during their

9

> initial interaction with Nichols "was their own safety and gaining and maintaining control over the suspect through verbal commands" Wojcicki Report at 2;
>
> (2) that defendant Smith and co-defendant Bean's strikes were "in order to gain control of [Nichols'] hands," *id.*;
>
> (3) that defendant Smith and co-defendant Bean "knew" that chemical and taser weapons had been used and failed, *id.* at 3;
>
> (4) that defendant Smith was restraining Nichols because he "was obviously doing everything he could to get Nichols back on the ground," *id.* at 5;
>
> (5) that defendant Smith was in pain from a knee injury during the assault, *id.*; and
>
> (6) that defendant Smith's "sole focus was officer safety and suspect safety by gaining and maintaining control of Nichols' hands by having them handcuffed," *id.* at 8.

Defense expert Wojcicki has no special insight into defendant Smith's mental state at the time of the offense, beyond his reliance on self-serving hearsay from defendant Smith and his positive personal feelings towards defendant Smith, and the jurors should be able to decide this central issue on their own.

Relatedly, this Court should exclude defense expert Wojcicki's testimony about Nichols' mental state during the incident. Defense expert Wojcicki simply has no reliable basis for opining on Nichols' mental state or intentions during the incident. He was not present for the incident, has no personal knowledge with respect to Nichols, and his expertise in police use of force does not qualify him to offer any testimony on Nichols' state of mind or his pain tolerance. Such testimony is inadmissible, as it is outside the scope of Wojcicki's expertise. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Accordingly, the Court should not permit defense expert Wojcicki to offer testimony that (1) "It is obvious that Nichols tightened his body and moved his body, arms, and legs in order to keep the officers from obtaining and maintaining control of Nichols' hands," Wojcicki Report at 2; and (2) Nichols was able to sustain a higher pain threshold that made him harder to control. *Id.* at 5.

**IV. The Court should exclude expert testimony referring to otherwise inadmissible evidence to prevent an end-run around the Federal Rules of Evidence**

Rule 703 provides that if an expert reasonably relies upon otherwise inadmissible evidence in forming his or her opinions, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. This reverse 403 balancing standard—for the evidence to be admissible, its probative value must substantially outweigh its prejudicial effect, not the other way around—prevents parties from using expert witnesses to circumvent the Rules of Evidence. *Cf. United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009) ("Allowing a witness simply to parrot "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion" would provide an end run around *Crawford*."). To avoid that problem, Rule 703 embodies "a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose." Fed. R. Evid. 703 advisory committee notes.

Defense expert Wojcicki's report references several hearsay statements from defendant Smith, including that defendant Smith directed the paramedics to assist Nichols' breathing. Other portions of Wojcicki's testimony, especially regarding defendant Smith's intentions and thought processes during the assault, appear designed to smuggle defendant Smith's account of events into evidence without subjecting him to cross-examination. These statements are inadmissible hearsay from defendant Smith, who is not permitted to admit his own statements through other witnesses. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses."); *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) (finding "a party's

statement is admissible as non-hearsay only if it is offered against that party"). Admitting defendant Smith's self-serving exculpatory account through defense expert Wojcicki, without a chance for the prosecution to cross-examine defendant Smith and for the jury to scrutinize his credibility, would "effectuate an end-run around the adversarial process." *McDaniel*, 398 F.3d at 545; *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("If the district court were to have ruled in his favor, [the defendant] would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'"). This end-run is especially problematic because defendant Smith's self-serving account is contradicted by other out-of-court statements and admissions he has made regarding the incident. For these reasons, defense expert Wojcicki should not be permitted to testify about defendant Smith's inadmissible, hearsay statements during his testimony.

> **V. The Court should prohibit any witness from opining on whether defendant Smith's use of force and actions were "lawful," "reasonable," or any other improper legal conclusions**

At various points in his expert notice, defendant Smith indicates that defense expert Wojcicki intends to offer improper ultimate issue testimony. As discussed in the government's previous motion *in limine* regarding ultimate issue testimony, this proposed testimony from defense expert Wojcicki improperly usurps the province of the jury by telling them what result to reach about the key elements of the charged offenses. *See* ECF No. 332. Such testimony is prohibited by the Federal Rules of Evidence, and the Sixth Circuit has long held that an expert's opinion "must stop short of embracing the legal terminology that frames the ultimate conclusion the jury must reach in a case." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (citation omitted); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding that an expert's testimony that police officers' use of force was "unjustifiable on the basis of

existing law" was an impermissible legal conclusion).

The Sixth Circuit has repeatedly applied this rule to exclude expert testimony that a use of force was "reasonable" or "excessive." *See, e.g., DeMerrell v. City of Cheboygan,* 206 F. App'x 418, 426 (6th Cir. 2006) (expert's proffered testimony that police officer's use of force was "objectively unreasonable" and that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that [the plaintiff] posed a significant threat of death or serious physical injury to the officer or others" was properly excluded as a legal conclusion); *Lewis v. Adams County*, 244 F. App'x 1, 11–12 (6th Cir. 2007) (district court "properly ignored" expert's opinion that force was "objectively unreasonable and excessive" because this testimony "merely expresse[d] a legal conclusion"); *see also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (holding that Rule 704 excludes expert testimony that "merely tells the jury what verdict to reach," and that this includes expert opinions about the legal propriety of a use of force); *McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012) (expert testimony that defendant officers "used excessive force" was a prohibited legal opinion); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (excluding expert evaluation of defendants' actions "in light of Fourth Amendment standards" as a legal conclusion unhelpful to the jury).

Nor can any expert testify that a defendant was not "deliberately indifferent" to Nichols' medical needs. Proof of deliberate indifference is an element of Count 2. The Sixth Circuit has conclusively opined on this exact issue, reversing the judgment in a § 1983 case because the plaintiff's experts had been permitted to opine that the civil defendants had been deliberately indifferent to the victim. *Heflin v. Stewart Cnty., Tenn*., 958 F.2d 709, 715 (6th Cir.), on reconsideration, 968 F.2d 1 (6th Cir. 1992); *see also Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (explaining *Heflin*); *Cutlip v. City of Toledo*, 488 F. App'x 107, 120 (6th Cir. 2012)

13

(Section 1983 case holding that an expert's assertion "that the police betrayed a conscious indifference to [the victim's] life" was "an improper legal conclusion because it is an opinion that suggests the answer to the ultimate issue or that gives the jury all the information from which it can draw inferences to the ultimate issue.") (internal quotations, citation, and alterations omitted). Moreover, no expert can testify that defendants "did not have the opportunity to" or "did not fail to" intervene in the unlawful assault. Proof of failure to intervene is an element of Count 1 and the deliberate indifference case law discussed above applies with equal force to Count 2.

Defendant Smith seeks to admit precisely this kind of impermissible testimony.[2] He has indicated that defense expert Wojcicki intends to offer legal conclusions, including that "[t]he use of force applied by Smith was reasonable and appropriate under the circumstances," Wojcicki Report at 4, that defendant Smith's use of force report was accurate and complete, *id.* at 7, and that defendant Smith "acted beyond what one could reasonably expect." *Id.* at 8. Each of these statements, in essence, tells that jury that it is Wojcicki's expert opinion that defendant Smith is not guilty of the offenses charges in the indictment. Defense expert Wojcicki offers other opinions that various uses of force are "appropriate," which is permissible only if he explains that it is "appropriate" in the sense that he believes it is consistent with MPD training and policy, as opposed to legally appropriate or reasonable. A pretrial order is necessary to exclude this testimony, which would reach impermissible legal conclusions that intrude on the role of the jury. Well-settled authority and the Federal Rules prohibit the introduction at trial of testimony and conclusions

---

[2] As the government previously raised, ECF No. 214 at 3 n.1, this motion only seeks to limit *conclusory testimony* about the ultimate issue in this case. Both parties' hybrid or expert witnesses can testify about their knowledge of relevant police practices, policies, and training and the factors that go into assessing whether a use of force is reasonable. As Rule 704 explains, "[a]n opinion is not objectionable just because it embraces an ultimate issue" but an expert witness may not testify as to the ultimate legal conclusion that the jury must reach. This motion simply reiterates that neither party's experts should be permitted to offer a conclusion on the ultimate issue in the case.

offered in Wojcicki's report.

## Conclusion

The United States respectfully submits this Motion to Exclude Improper Expert Testimony by Jared Wojcicki Regarding the Use of Force by Defendant Smith, and requests the exclusion of any testimony by defense expert Wojcicki (1) including improper character evidence about defendant Smith; (2) purporting to resolve factual issues for the jury; (3) discussing defendant Smith's or Nichols' mental state during the charged offense; (4) referring to inadmissible evidence, including defendant Smith's hearsay statements; and (5) opining on whether defendant Smith's use of force and actions were "reasonable" or "lawful."

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

By: DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103
901/544-4231

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

/s/ Forrest Christian
Forrest Christian
Deputy Chief
Kathryn E. Gilbert
Special Litigation Counsel
Civil Rights Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430

**CERTIFICATE OF SERVICE**

I, Forrest Christian, hereby certify that on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to defense counsel.

s/Forrest Christian
FORREST CHRISTIAN
July 18, 2024
