**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 2:23-cr-20191-MSN** |
| | ) | |
| **EMMITT MARTIN, III** | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO EXCLUDE OPINION TESTIMONY ON "USE OF FORCE"**
**AND REQUEST FOR AN EVIDENTIARY HEARING**

The defendant, Emmitt Martin, III, through counsel, pursuant to Fed. R. Evid. 401, 403, 701, 702, 703, and 704; U.S. Const. amends. V and VI; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), has respectfully moved this Court to exclude the opinion testimony indicated in the Government's Notice of Intent to Offer Hybrid or Expert Witness Testimony Regarding Use of Force Issues, (ECF No. 142, PageIDs 591–608), and to hold an evidentiary hearing on these issues (Pretrial Scheduling Order, ECF No. 251, PageID 3054) ("[A] *Daubert* evidentiary hearing may be held as ordered by the Court. Counsel for the parties may confer with the Clerk and the Court's chambers on the scheduling of the *Daubert* hearing."). The government has noticed five "law enforcement training witnesses" who "may be considered hybrid witnesses or, if necessary, qualified as expert witnesses." (Notice, ECF No. 142, PageID 591.) These witnesses should be excluded from trial because the government's disclosures do not comply with Rule 16. At minimum, their testimony should be limited to preclude all of the government's noticed witnesses from offering an opinion on whether the charged officers' supposed failure to adhere to internal policies and procedures shows that the defendants willfully used unreasonable force.

Defendant Haley previously moved to exclude the government's proffered expert opinions on use of force issues, arguing that the government's notice is insufficient and shows that the

government knew what expert witnesses it would seek to introduce "as early as April and May, 2023." (ECF No. 160, PageID 2269–2278.)[1] Mr. Martin has already joined in this motion as to the use of force experts and incorporates Mr. Haley's arguments herein.

## I.   THE GOVERNMENT VIOLATED RULE 16 BY WITHHOLDING EXPERT DISCLOSURES UNTIL SPECIFICALLY ORDERED BY THIS COURT.

In its initial discovery response, the government asserted that it did not, at that time, "intend to introduce any expert testimony as defined by the Federal Rules." (ECF No. 47, PageID 132 ¶ 5.) Defendant Haley moved for this Court to prohibit the government from introducing any opinion testimony based on its "explicit statement that it doesn't intend to introduce any expert testimony, as defined by the Federal Rules." (ECF No. 95, PageIDs 284 ¶ 6.)[2] The government objected, arguing that there was no deadline for expert disclosures and proffering that it would provide that information two months before trial, approximately March 8, 2024. (ECF No. 105, PageIDs 359– 360.) Mr. Haley explained that the deadlines must be followed and that "the caveat, that it may change its mind and provide notice is simply not good grounds for it to be relieved of the governing deadlines." (Haley Reply, ECF No. 109, PageID 366.)

This Court ordered the government to provide expert disclosures by January 31, 2024, and took the motion to exclude under advisement, (Order, ECF No. 149, PageID 791), then held that "to the extent the government's witnesses provide testimony that would require them to be disclosed as experts, the government has not complied with Rule 16 because it did not comply with the deadline for Rule 16 disclosures that was set forth in the Scheduling Order." (Order, ECF

---

[1] This motion was joined by defendants Smith (ECF No. 162, PageIDs 2283–2284), Martin (ECF No. 178, PageID 2386), and Bean (ECF No. 181, PageID 2391.)

[2] This motion was joined by defendants Smith (ECF No. 110, PageIDs 367–369) and Martin (Motion to Join in Motion to Exclude Opinion Evidence [No. 95], ECF No. 136, PageIDs 539–543.)

No. 149, PageID 792.) The Court remarked that the government appeared to "skip[] over" the expert disclosure portion of Rule 16 in a way "lost on this Court, and apparently everyone else involved in this matter save for the government." (Order, ECF No. 148, PageID 792.) It further admonished the government's assertion that "local practice" only requires expert disclosures to be provided sufficiently in advance of trial to provide a fair opportunity, which "is not a practice in which this Court has engaged." (Order, ECF No. 149, PageIDs 792–793.) The Court had "little trouble finding that allowing the government to proceed with experts at this date could have resulted in prejudice" to the defendants. (Order, ECF No. 149, PageID 794.) It denied Mr. Haley's motion without prejudice and reserved "judgment regarding the imposition of other sanctions, if any." (Order, ECF No. 149, PageID 795.)

## II. THE GOVERNMENT NOTICED FIVE POTENTIAL HYBRID FACT-EXPERT USE OF FORCE WITNESSES.

Steadfast in its prior assertions that it will not proffer any evidence that technically falls within the rules governing expert testimony, the government asserts in its notice that it "does not anticipate needing to call any MPD officer as an expert witness as *that term* is defined by the Federal Rules," but cautions that it "may call experienced law enforcement officers to testify regarding the use-of-force training the defendants received and the related MPD policies in place

at the time of the charged offenses." (Notice, ECF No. 142, PageID 594 (emphasis added).)[3] The

government provided notice of its intent to call witnesses for the following proffered testimony:

> These experienced law enforcement training officers will testify as to the training
> that was provided to the defendants during their classes at MPD's academy. This
> will include an overview of MPD's training academy program and a specific focus
> on the classes, hands-on training, training materials, and policies relevant to the
> charged offenses. This will include testimony and exhibits related to the use of
> force, deadly force, duty to intervene, duty to provide medical care, de-escalation,
> handcuffing, defensive tactics, vehicle stops, constitutional rights, civil rights
> violations, and reporting obligations, among other subjects. Finally, in the wake of
> Nichols' death and often in connection with their duties as trainers, these witnesses
> examined surveillance and body camera footage to determine whether the
> defendants acted consistent with, or in violation of, MPD policies and training.
> Based on their experience and training with MPD, these witnesses can opine as to
> whether the defendants acted consistently with MPD training and policy.

(Notice, ECF No. 142, PageIDs 598–599.)

The government's notice evidences its intent to blur the line between fact and expert

testimony. While an individual may act as both fact and expert witness, the government "should

take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact

witness and an expert witness, so that the jury can give proper weight to each type of testimony"

by properly delineating when the witness is providing factual testimony versus offering an expert

opinion. *United States v. Thomas*, 74 F.3d 676, 687 (6th Cir. 1996) *cited with approval United

States v. Tocco*, 200 F.3d 401, 418 (6th Cir. 2000). Notably, the government cites *United States v.

White*, 492 F.3d 380 (6th Cir. 2007) as endorsing a Fourth Circuit case where law enforcement

---

[3] The government's notice makes a cursory reference to other courts' permitting "law
enforcement officers to provide expert testimony" with the specific example of "interpret[ing] for
the jury 'slang, street language, and the jargon of the illegal drug trade.'" (Notice, ECF No. 142,
PageID 594.) The government did not notice any experts to provide this sort of interpretation, and
this Court should prohibit the government from shoehorning in this expertise with the witnesses
noticed by the government because this has not been designated as a potential opinion as to any of
those witnesses. *See also* (Notice, ECF No. 142, PageID 599) (recognizing that expert disclosures
must include "a complete statement of all opinions that the government will elicit from the witness
in its case-in-chief" under Rule 16).

officers testified about their "'eyewitness observations and particularized experience' as police officers in evaluating another officer's use of force." (Notice, ECF No. 142, PageIDs 597–98) (quoting *White*, 492 F.3d at 402 (citing *United States v. Perkins*, 470 F.3d 150, 151–52, 156 (4th Cir. 2006)). But *White* endorses the *Perkins* holding approving the admission of other officers' *lay* opinions and is only a cursory citation before *White* held that "the district court *erred* in permitting the Fiscal Intermediary witnesses," who provided fact and expert testimony, by "effectively testify[ing] as experts without first being qualified." *White*, 492 F.3d at 404 (holding government failed to comply with Rule 16 notice requirements but holding errors did not support reversal) (emphasis added). *Perkins* similarly held that the court *erred* in admitting law enforcement officers' opinion testimony about the reasonableness of the defendant-officer's use of force "without a proper foundation." *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) (finding error but holding such error harmless where defendant failed to contemporaneously object at trial).

### 1.  Juan Gonzalez

Memphis Police Department patrolman and academy instructor Juan Gonzalez will reportedly offer testimony on the training that he personally provided to the defendants, including Mr. Martin, and offer his opinion that the force used on Mr. Nichols "was inconsistent with the training he provided defendants at the academy," specifically:

> MPD teaches officers to use manipulation techniques to control the subject, not to hurt them, just to put them under control. Gonzalez will testify that, pursuant to MPD training and policy, defendants should have cuffed Nichols, called a lieutenant, called the fire department, and put Nichols in the back seat of a police car. According to Gonzalez, the punches, kicks, and baton strikes captured on video were inconsistent with the containment and cuffing techniques that MPD taught. Gonzalez found that, rather than use the techniques that the defendants learned at the academy, deadly force was used in violation of MPD's use of force training and policy. Gonzalez also found that defendants passed up opportunities to handcuff Nichols consistent with their training in favor of using hard hand techniques that were not authorized under MPD training and policy. In sum, Mr. Gonzalez will testify that he trained these defendants, and he did not train them "that way." Mr.

Gonzalez can confirm that the training he provided at the MPD Academy was consistent with the training provided by other MPD trainers.

(ECF No. 142, PageID 610.) Mr. Gonzalez's proffered opinion is based upon his personal experience as an instructor at the Memphis Police Department Academy, his review of "the body worn video of the traffic stop of Tyre Nichols," and "his understanding of the circumstances leading to the traffic stop." (ECF No. 142, PageIDs 609–610.) He will "testify about a range of training areas, including a detailed discussion of the use-of-force continuum, pain compliance techniques, handcuffing techniques, and vehicle stops, *among other subjects*" not disclosed. (*Id.* at PageID 609 (emphasis added).) The government has not specified *which* body worn cameras Mr. Gonzalez reviewed[4] or the basis for his general "understanding of the circumstances leading to the" incident between the officers and Mr. Nichols. (*Id.*) Mr. Gonzalez's disclosures do not identify any prior testimony or deposition as an expert witness.

## 2.   Larnce Wright

Larnce Wright is a MPD officer and academy instructor. (ECF No. 142-2, PageID 614.) He is expected to offer testimony about the training he personally provided to the officers and offer an opinion that the force employed by the officers "was contrary to MPD training," specifically,

> [T]he defendants did not use the wrist-lock or other use-of-force techniques that he trained officers to use at the academy when confronting resistance by an arrestee. He will address MPD officers' duties to intervene, to provide medical care, and to report misconduct, as covered in training and as set forth in MPD policy; he will further opine that officers on-scene failed to follow their MPD training and policy. Mr. Wright can confirm that the training he provided was consistent with the training provided by other MPD trainers.

---

[4] Mr. Gonzalez's grand jury testimony indicates that he watched "footage from the initial traffic stop of Mr. Nichols," (Grand Jury Testimony, June 13, 2023, Juan Gonzalez, p. 7 ¶¶ 10–13), the SkyCop footage (*id.* at p. 11 ¶¶ 24–25), Officer Mills' body worn camera footage (*id.* at p. 22 ¶¶ 17–22). *See also* FBI 121, Pre-Grand Jury Interview of Juan Gonzalez (June 12, 2023), p. 1 (indicating that Mr. Gonzalez reviewed SkyCop footage and Officer Mills' body camera footage).

(ECF No. 142-2, PageID 614.) In forming his opinion, Mr. Wright relied on his personal knowledge of the training he provided to the defendants, MPD Policies and Procedures, Officer Hemphill's body worn camera footage (Grand Jury Testimony, Wright, p. 22 ln. 21–25), the SkyCop video footage (*id.* at p. 35 ln. 2–5), and Officer Mills' body worn camera footage (*id.* at p. 47 ln. 14–22).

According to the curriculum vitae provided by the government, Mr. Wright's skills include: Defensive Tactics and Physical Fitness Training Instructor, Tactical Energy Systems Dignitary Protection Certified, Defensive Driving and Emergency Vehicle Operations Instructor, Taser 10 Instructor, Police Cyclist Instructor, Tactical Weapon Instructor, Simunition Scenario Instructor, Traffic Enforcement Instructor, Conflict Resolution, Multicultural Sensitivity, First Aid and CPR, and Officer Safety. The government has proffered that Mr. Wright will provide "detailed discussion of the use-of-force continuum, responses to resistance, hand control, pain compliance techniques, deadly force, and vehicle stops, *among other subjects*." (Notice, ECF No. 142-2, PageID 614.) Mr. Wright has been an expert witness once before in a deposition in *Gonzalez/Mitchell v. City of Memphis*. (*Id.* at PageID 616.)

### 3.  Kevin Barrett

Kevin Barrett is an MPD law enforcement officer and academy instructor. According to discovery materials, Mr. Barrett reviewed the SkyCop video footage, Officer Mills' body worn camera footage, and Officer Hemphill's body worn camera footage. Based on his review of this video footage, his experience as an instructor, and his knowledge of MPD policy and procedure, Mr. Barrett is expected to testify that the defendants' conduct was inconsistent with MPD training and policy, including that Mr. Nichols was improperly pulled out of his vehicle, "the use of pepper spray was not an appropriate response," the "punches at the arrest scene were contrary to MPD training and policy," and that the officers failed to use trained techniques to handcuff Mr. Nichols.

(ECF No. 142-3, PageIDs 617–618.) He is also anticipated to offer an opinion that one defendant violated MPD policy and training by "tak[ing] off his body-worn camera and throw[ing] it to the ground." (*Id.* at PageID 618.) According to his curriculum vitae, Mr. Barrett has special training as a Taser Instructor, ASP Tactical Handcuff Instructor, ASP Tactical Baton Instructor, is certified as a Defense Tactics Instructor (Combatives, Self Defense, Arrest and Control), Traffic Enforcement Survival Tactics, Officer Safety & Street Survival Training, among others. (ECF No. 142-3, PageIDs 621–622.) Mr. Barrett's disclosures do not identify any prior testimony or deposition as an expert witness.

### 4. Zayid Saleem

Zayid Saleem, an attorney, was a legal advisor and instructor for the Memphis Police Department from August 2010 through December 2022 responsible for instructing officers, including the defendants, on their duty to intervene and to report criminal conduct by other officers and the need for body worn cameras. (ECF No. 142-4, PageIDs 623–624.) The government expects Mr. Saleem to testify about the training he provided to the officers, including the risk of criminal prosecution, as with the George Floyd case, and the importance of accurate reporting. (*Id.* at PageID 605.) There is no indication that Mr. Saleem reviewed materials specific to this case (such as viewing any video footage) or that he will offer any opinions on the officers' actions, rather, his testimony appears to be limited to the classes he taught at the Academy. Mr. Saleem's disclosures do not identify any prior court testimony or depositions as an expert witness.

### 5. Tracey Branch

Tracey Branch is a retired Federal Bureau of Investigation Special Agent who taught a course on "Federal Civil Rights and Police Corruption" at the academy. (Notice, ECF No. 142, PageID 606.) She trained officers about "excessive force cases," the officers' "duty to keep a person in their custody from harm," and the "duty to truthfully report what they observed during

an incident." (*Id.*). Ms. Branch's summary indicates that she "also instructed recruits on their duty to truthfully document in their reports what they observed during an incident" and "directed recruits to report misconduct by an officer," but the government's notice does not indicate whether Ms. Branch will provide expert testimony about whether the officers' failed to truthfully document the events concerning Mr. Nichols in their reports. (Notice, ECF No. 142-5, PageID 630.) Ms. Branch's disclosures do not identify any prior testimony or deposition as an expert witness.

## III.   THE GOVERNMENT'S NOTICE IS INSUFFICIENT AS TO ALL PROFFERED HYBRID FACT-EXPERT WITNESSES.

Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) requires the disclosure for each expert witness to contain:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii). The disclosure must be approved and signed by the witness unless a signed report by that witness was previously provided. Fed. R. Crim. P. 16(a)(1)(G)(v). The expert witness disclosure requirements were added to Rule 16 in 1993 in order "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert' s testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory comm. n. 1993 amend.

> [P]erhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion. Rule 16(a)(1)(D) covers disclosure and access to any results or reports of mental or physical examinations and scientific testing. But the fact that no formal written reports have been made does not necessarily mean

that an expert will not testify at trial. [T]he amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts.

*Id.* If a party fails to comply with Rule 16, the district court has the discretion to prohibit the introduction of the evidence. *See* Fed. R. Crim. P. 16(d)(2)(C).

The defense must also be "able to analyze the steps that led the government's [experts] to their conclusions." *United States v. Davis*, 514 F.3d 596, 611–13 (6th Cir. 2008) (finding government "clearly violated" Rule 16(a)(1)(G)). A vague avowal of a witness's experience is not enough. *See United States v. White*, 492 F.3d 380 (6th Cir. 2007) (concluding government's summary that listed "general subject matters to be covered, but did not identify what opinion the expert would offer on those subjects" insufficient).

The government's disclosures for its purported "Use of Force" experts are insufficient because none of them include sufficient information about the bases and reasons for their proffered opinions. *See* Fed. R. Crim. P. 16(a)(1)(G)(iii).[5] It appears that the witnesses relied on their personal recollection of training, policy, and procedure, but the government has not indicated if the witnesses reviewed those materials prior to forming an opinion in this case, including, for example, videos from Mr. Martin's MPD Academy training. *See, e.g.*, (Martin's Third Notice of Reciprocal Discovery, Report by Darek Pleasants, ECF No. 324-2, PageID 4205 ¶¶ 55–57 (discussing training videos).) While the witnesses, all employed in some capacity by the City of

---

[5] No witnesses include a list of prior publications for the last 10 years, and only Larnce Wright includes any sort of prior expert testimony disclosure, (Mr. Wright disclosed expert deposition testimony in 2022,) To the extent any witness noticed by the government has authored any published works or testified or been deposed as an expert witness, the notice is facially deficient. *See* Fed. R. Crim. P. 16(a)(1)(G)(iii). Mr. Martin assumes that the absence of this information indicates that the proffered witnesses, with the exception of Mr. Wright, do not have publications or prior expert witness testimony in their history.

Memphis, apparently reviewed body worn camera footage from Preston Hemphill and Dennis Mills, along with the SkyCop video footage,[6] in front of government agents and attorneys, the government's disclosures and the discovery provided do not specify the materials reviewed in forming their opinion. Importantly, there is no indication of whether the noticed experts were aware of the officers' expressed concerns or related information.[7] By providing these "hybrid fact-expert witnesses" with minimal, curated materials, the witnesses do not have sufficient bases and reasons to support the proffered expert opinions. Furthermore, Officers Gonzalez, Wright, and Barrett, who are expected to offer an opinion on the officers' use of force during the encounter with Mr. Nichols, are all City of Memphis employees incentivized to say that the officers failed to comply with their training to shield the City of Memphis from civil liability for failing to properly train its officers. *See, e.g.*, *RowVaughn Wells v. City of Memphis, et al*, No. 2:23-cv-2224-MSN-atc (W.D. Tenn.) (Norris, J.). The disclosures for Officers Gonzalez and Wright are also open-ended, with general references to their anticipated testimony about a specific list of training courses followed by a catch-all "among others" or "among other subjects" that indicates those witnesses may provide testimony beyond what the government has noticed in its disclosures. (Notice, ECF No. 142, PageIDs 600 (Gonzalez), 602 (Wright).)

---

[6] This list of video footage is taken from the witnesses' grand jury testimony and interview memoranda. The government's disclosures do not clearly indicate what the witnesses reviewed. *Compare* (Martin's Third Notice of Reciprocal Discovery, Report of Darek Pleasants, ECF No. 324-2, PageIDs 4196–4198 (specifying materials reviewed)); (Martin's Sealed Second Notice of Reciprocal Discovery, Report of Dr. Agharkar, ECF No. 324-2, pp. 2–3 (same)); (*Id.* at Report of Dr. Farr, ECF No. 324-5, pp. 2–3 (same)); (*Id.* at Report of Dr. Spica, ECF No. 324-8, pp. 2–3 (same)); (*Id.* at Report of Dr. Owens, ECF No. 324-10, p. 2 (same)); (*Id.* at Report of Dr. Valentine, ECF No. 324-12, p. 1 (same)).

[7] *See also* (Government's Motion *in Limine* to Preclude Use of Inadmissible and Improper Character Evidence, ECF No. 67.)

Because the government's disclosures as to the hybrid fact-expert use of force witnesses fail to articulate the bases and reasons for their proffered opinion, Mr. Martin cannot effectively cross-examine the witnesses about their opinions, depriving him of his right to a fair trial. U.S. Const. amends. V and VI; *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004) (holding that confrontation alone is sufficient to test the reliability of testimonial statements); *United States v. Bauer*, 82 F.4th 522 (6th Cir. 2023) ("The purpose of Rule 16's expert witness disclosure is to allow parties a fair opportunity to cross-examine expert witnesses and to secure opposing expert testimony if necessary.") (upholding exclusion of expert witness testimony by defendant for failure to comply with Rule 16 disclosure requirements).

## IV.   THE GOVERNMENT HAS NOT SHOWN THAT ITS WITNESSES ARE QUALIFED EXPERTS BY KNOWLEDGE, SKILL, TRAINING, OR EXPERIENCE.

To offer an expert opinion, a witness must be qualified based on his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee notes citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). *Accord Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). Whether each of the witnesses identified in the government's notice and their experience is sufficient depends, in some part, on "the nature and extent of that experience." *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012). Rule 702 was recently "amended to clarify and emphasize that expert testimony *may not be admitted* unless the proponent demonstrates to the court that it is more

likely than not that the proffered testimony meets the admissibility requirements set forth in this rule." Fed. R. Evid. 702 advisory comm. n. 2023 amend. (emphasis added).

Officers Gonzalez, Wright, and Barrett lack the requisite knowledge and experience to offer an opinion on the reasonableness of the officers' use of force to effectuate Mr. Nichols' arrest. The officers cannot testify about their "perceptions" of the incident based on their understanding of MPD policies because it confuses internal adherence to policy with the constitutional deprivation at stake in this case. *See, e.g.*, *United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006) (law enforcement officers testified as eyewitnesses to use of force); *United States v. Kuretza*, No. 1:22-CR-52, 2023 WL 4355338, 2023 U.S. Dist. LEXIS 115205, at *16–17 (N.D.W.V. July 5, 2023) (permitting law enforcement officers "to testify about his eyewitness observations of the [charged] incident and particularized experience as a police officer" while precluding officers from providing expert testimony about the reasonableness of the use of force).

All these witnesses are expected to testify about the instruction that they provided to the defendants in the academy, then Officers Gonzalez, Wright, and Barrett will apparently offer their opinion that the officers did not follow their training during the encounter with Mr. Nichols based on their review of select video footage in front of government agents and attorneys with the pressure of the pending civil lawsuit against the City of Memphis for the same course of conduct. Internal policies and procedures are certainly relevant, but they are not dispositive to this case and, to the extent any supposed hybrid witness will offer testimony beyond what the training actually was, the scope of their testimony goes too far and should be excluded. Any opinion that the defendants' on-scene conduct was inconsistent with that training or otherwise unreasonable exceeds the permissible scope of their testimony. The witnesses cannot offer an opinion on whether the defendants complied with that training during the law enforcement encounter with Mr. Nichols

because failure to follow training and/or internal policies and procedures is a separate and distinct issue from whether the defendants willfully used unreasonable force. (Indictment, Count 1, ECF No. 2, PageID 9.)[8]

In *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992), the United States Court of Appeals for the Sixth Circuit affirmed the district court's grant of the defendants' motion for summary judgment in a 42 U.S.C. § 1983 action. There, a law enforcement officer shot and killed a suspect fleeing the scene who had led the officer on a high-speed chase after simple traffic violations (speeding and running a stop sign) and used his vehicle as a weapon against the officer. *Id.* at 344. The appellate court determined that "no rational jury could say he acted unreasonably" under the Fourth Amendment because the driver had escaped several times before, was using his vehicle as a weapon, and continued to pose a threat. *Id.* at 347. The court went on to distinguish the officer's violation of local policy from the constitutional parameters of an unreasonable force claim brought under 42 U.S.C. § 1983:

> [T]hat Officer Schulcz's actions may have violated Springdale's policies regarding police use of force does not require a different result. **Under § 1983, the issue is whether Officer Schulcz violated the Constitution, not whether he should be disciplined by the local police force.** A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983. To hold that cities with strict policies commit more constitutional violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense. Ms. Smith's position, if adopted, would encourage all governments to adopt the least restrictive policies possible. While not expressly saying so, the Seventh Circuit has already recognized that city policies do not determine constitutional law. In *Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1988) (en banc), the Seventh Circuit held that a police officer acted reasonably in shooting at a fleeing bank robbery suspect after giving the suspect two warnings, even though he could not be certain the suspect was armed. An expert testified that the officer's actions had violated the city's police manual and

---

[8] Whether this testimony is relevant as to the Count 2, failure to intervene, and Counts 3 and 4, the witness tampering counts, is a separate issue and demonstrates the potential spillover prejudice from a joint trial. *See generally* (Martin's Motion to Sever Counts, ECF No. 229, PageIDs 2755–2758, and Supporting Memorandum, ECF No. 230, PageIDs 2759–2766.)

generally accepted police practices. Rather than considering these local rules, the court limited its attention to whether the officer had violated *Garner*. We believe this is the proper approach, and we adopt it in this case.

*Id.* at 347–48 (emphasis added).[9]

"The Supreme Court has been cautious to draw a distinction between behavior that violates a statutory or constitutional right and behavior that violates an administrative procedure of the agency for which the officials work." *Coitrone v. Murray*, 642 Fed. App'x 517, 522 (6th Cir. 2016) (quoting *Cass v. City of Dayton*, 770 F.3d 368, 377 (6th Cir. 2014)) (cleaned up). Accordingly, *even if* an officer violated internal policy, it "would not establish that his use of force was unconstitutional." *Coitrone v. Murray*, 642 Fed. App'x 517, 522 (6th Cir. 2016) (considering Fourth Amendment unreasonable force argument in § 1983 case and citing *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) with approval); *see id.* ("Accordingly, Coomes's alleged violations of KSP policy do not change the conclusion that he did not act objectively unreasonably under the circumstances."). Mr. Martin's training and adherence to policies and procedures set by the City of Memphis may be relevant, but these issues are not dispositive, and the noticed witnesses must not be permitted to exceed the scope of their knowledge, skill, and expertise by offering an opinion on whether the officers adhered to internal policies during the encounter with Mr. Nichols, or whether the officers used unreasonable force.

---

[9] "Section 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by this Court to contain a state-of-mind requirement." *Parratt v. Taylor*, 451 U.S. 527, 534 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330 (1986). By contrast, 18 U.S.C. 242 requires that an act be "willfully done . . . with a specific intent to deprive a person of a federal right." *Parratt*, 451 U.S. at 535 (citations and internal quotation marks omitted). Given the difference in the mental state requirements for the imposition of civil liability under Section 1983 and criminal liability under Section 242, *Freland*'s holding that internal policies and procedures have no bearing on whether a seizure is "unreasonable" under the Fourth Amendment is all the more persuasive here where the government must prove, beyond a reasonable doubt, that Mr. Martin *willfully* employed unreasonable force against Mr. Nichols regardless of any MPD academy instruction or its internal policies and procedures.

> [U]nder *Graham,* we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)*.*

The government's notice argues that "[t]his testimony is *essential* to proving willfulness under 18 U.S.C. § 242," (Notice, ECF No. 142, PageID 595 (emphasis added)), but the cases it cites in support are factually distinct, do not cite *Freland*, and most are unpublished or non-binding precedent from outside the Sixth Circuit. *See, e.g.*, *Goodwin v. Richland City*, 832 Fed. App'x 354, 359 (6th Cir. 2020) (plaintiff did not attempt to elicit testimony about training from law enforcement officers on the stand); *United States v. Brown*, 654 Fed. App'x 896, 903–04 (10th Cir. 2016) (holding no plain error where defendant challenged, for the first time on appeal, testimony on use of force training); *United States v. Perez*, No. ED CR 13-00087-(A)-VAP, 2014 WL 12669229, 2014 U.S. Dist. LEXIS 198353, at *21–22 (C.D. Cal. May 15, 2014) (Phillips, J.) (rejecting defendant's argument that training evidence should be excluded as propensity evidence; defendant did not argue distinction between constitutional and mere policy violations). The main case in support of this proposition is *United States v. Proano*, 912 F.3d 431 (7th Cir. 2019), but there the standard of review was abuse of discretion and the Court recognized that "there is no per se rule against the admission of police policies or training," explaining that "[t]he probative value of an officer's training, like most any evidence, depends on case-specific factors." 912 F.3d at 439–40. The government also relies on *United States v. Bryant*, where the defendant, a correctional officer, moved for bond pending appeal after he was convicted of two counts of violating 18 U.S.C. § 242 and two counts of knowingly falsifying reports in violation of 18 U.S.C. § 1519. 528 Fed. Supp. 3d 814, 816 (M.D. Tenn. 2021) (Crenshaw, Jr., C.J.) *aff'd* No. 20-6382, 2022 WL 1055914,

2022 U.S. App. LEXIS 9476 (6th Cir. Apr. 8, 2022). The officer's "entire argument rest[ed] upon a faulty (albeit unstated) premise, which is, that to convict under Section 242, the Government was required to prove he violated his training or a jail policy." *Id.* at 817. The district court agreed that "violation of a policy may help to demonstrate that an individual acted willfully," but cautioned that excessive force violations are "governed by constitutional principles, *not* police-department regulations." *Id.* at 818 (emphasis added).

While Mr. Martin agrees that the training and internal policies and procedures may be generally relevant, the noticed witnesses' testimony should be limited to the training they provided to the defendants. These witnesses exceed the scope of their knowledge and expertise, and confuse the issues for the jury, if permitted to offer an opinion suggesting that the officers' failure to adhere to internal policies evidences a constitutional violation. This distinction is critical, and the government's witnesses are not qualified as experts to testify to the ultimate reasonableness of the force that the officers engaged in during the encounter with Mr. Nichols. The government's notice indicates an intent to use training and internal policies and procedures as a sword against Mr. Martin, confusing the constitutional issues at play in this criminal civil rights matter with internal employee governance. The government's experts must not be permitted to testify beyond the training they actually provided to the defendants. *See also* Fed. R. Evid. 702 n. ("When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.") (citing 7 Wigmore § 1918).

## V.    THE PROPOSED OPINION TESTIMONY DOES NOT SATISFY THE REQUIREMENTS OF *DAUBERT* AND *KUHMO TIRE*.

The proposed opinion testimony fails the test for opinion testimony enunciated in *Daubert v. Merrell Down Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*,

526 U.S. 137 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal

Rules of Evidence. *Daubert*, 509 U.S. at 587. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires this Court to be a gatekeeper, ensuring that "any and all

scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at

589, 597. The trial court's objective "is to make certain that an expert, whether basing testimony

upon professional studies or personal experience, employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526

U.S. at 152. The proponent of the evidence must establish admissibility by a preponderance of the

evidence. *See Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244, 256 (6th Cir. 2001).

   *Daubert* and *Kuhmo Tire* establish non-exclusive factors for assessing the reliability of

proposed expert testimony, with additional factors raised by lower courts and recognized by the

commentary to Rule 702, like "[w]hether the expert has adequately accounted for obvious

alternative explanations." Fed. R. Evid. 702 advisory comm. n. 2000 amend. "If the witness is

relying solely or primarily on experience, then the witness must explain how that experience leads

to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

experience is reliably applied to the facts. The trial court's gatekeeping function requires more

than simply taking the expert's word for it." *Id.* (cleaned up; citations omitted). "One very

significant fact to be considered is whether the experts are proposing to testify about matters

growing naturally and directly out of research they have conducted independent of the litigation,

or whether they have developed their opinions expressly for purposes of testifying." *Daubert v.*

*Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007) ("This Court has recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony naturally flowing from an expert's line of scientific research or technical work, should be viewed with some caution.") (collecting cases).

The government has not shown that it is more likely than not that its proffered use of force testimony meets admissibility requirements. Instead, the fact-expert witnesses' opinions are based on no more than a vague, "subjective, conclusory approach" to watching select footage in front of a biased audience.

The noticed witnesses, all part of this case due to their involvement with the City of Memphis and MPD,[10] apparently based their opinions that the defendants used unreasonable force on a review of *some* of the video evidence. Such review likely took place in front of government agents or attorneys, without competing interpretations of information. There is no indication that the witnesses considered reasonable alternatives to their conclusive opinions that the officers used unreasonable force, including attenuating circumstances that the defense will present.

The government's use of force witnesses have an implicit incentive to testify that the defendants used unreasonable force given the pending 42 U.S.C. § 1983 case against their employer, the City of Memphis. *RowVaughn Wells v. City of Memphis, et al*, No. 2:23-cv-2224-MSN-atc (W.D. Tenn.) (Norris, J.). *See Monell v. Department of Social Services*, 436 U.S. 658,

---

[10] Officers Gonzalez, Wright, and Barrett are current MPD law enforcement officers. Mr. Saleem currently serves as Judicial Commissioner in the Shelby County General Session Criminal Court but was, until December 2022, the Police Legal Advisor for MPD and an Assistant City Attorney for the City of Memphis. (Notice, ECF No. 142-4, PageID 625.) Ms. Branch, while not employed by the City of Memphis, provides training at the MPD Academy on Federal Civil Rights and Police Corruption. (Notice, EF No. 142-5, PageID 630.)

694 (1977) (holding that local governments are responsible for damages under § 1983 when constitutional violation was result of execution of governmental policy or custom). This inherent bias taints the hybrid witnesses' testimony and, by providing notice of its intent to call these witnesses, the government has put the civil rights case squarely at issue in these criminal proceedings.

## VI.      CONCLUSION

This Court should exclude the testimony of the government's fact-expert use of force witnesses because the government's notice fails to comply with the demands of Rule 16, the requirements of Rule 702, or the demands of *Daubert* and *Kuhmo Tire*.

Mr. Martin respectfully requests an evidentiary hearing on this motion.

Respectfully submitted this 19th day of July, 2024.

RITCHIE, DAVIES, JOHNSON, & STOVALL, P.C.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON [TN BPR No. 022140]
CATALINA L.C. GOODWIN [TN BPR No. 038660]
S. RENEE HAMMOND [TN BPR No. 021419]
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
johnson@rdjs.law
goodwin@rdjs.law
rhammond@rdjs.law

THE LAW OFFICE OF MASSEY MCCLUSKY FUCHS & BALLENGER

/s/ William D. Massey
WILLIAM D. MASSEY [BPR No. 9568]
3074 East Road
Memphis, TN 38128
(901) 384-4004
w.massey3074@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 19, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

<u>s/Stephen Ross Johnson</u>