IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 2:23-cr-20191-MSN-cgc

TADARRIUS BEAN,
DEMETRIUS HALEY, and
JUSTIN SMITH,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MARTIN'S MOTION TO EXCLUDE OPINION TESTIMONY BY TREATING PHYSICIANS AND REQUEST FOR AN EVIDENTIARY HEARING

Before the Court is Defendant Emmitt Martin, III's Motion to Exclude Opinion Testimony by Treating Physicians and Request for an Evidentiary Hearing, filed July 19, 2024. (ECF No. 395.) Although Mr. Martin has since entered a change of plea, (ECF No. 499), Defendant Justin Smith joined in Mr. Martin's Motion on July 23, 2024, (ECF No. 406). The Government responded in opposition on August 1, 2024. (ECF No. 438.) Defendant Martin filed a reply on August 7, 2024. (ECF No. 457.) For the reasons set forth below, the Motion to Exclude Opinion Testimony by Treating Physicians and Request for an Evidentiary Hearing is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On January 7, officers from the Memphis Police Department's SCORPION Unit ("MPD") conducted a traffic stop on Mr. Tyre Nichols. An altercation ensued between Mr. Nichols and those MPD officers. As a result, Mr. Nichols sustained serious injuries and was transported by

ambulance to St. Francis Hospital in Memphis. Mr. Nichols died three days later. In the three days before his death, Mr. Nichols was treated by two physicians—Dr. Peter Law, the attending physician for Mr. Nichols, and Dr. Mohammad Assaf, a neurologist who consulted on Mr. Nichols's case. The Government intends to call both as witnesses and has filed notice of its intent to elicit hybrid or expert testimony from either or both doctors. (ECF No. 144.) The Government makes clear in its Notice, however, that "these witnesses will testify from their personal observations and knowledge and are therefore primarily facts witnesses for whom no expert designation is necessary." (ECF No. 144 at PageID 144.) Nevertheless, the Government provided notice pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure "in the event that, at trial, [the doctors] were asked hypotheticals or questions outside the scope of their work in the medical evaluation, diagnosis, and treatment of Nichols, such as that their testimony could be considered expert testimony." (Gov't Resp., ECF No. 438 at PageID 5805.)

### A. Dr. Peter Law

The Government's Notice provides that Dr. Law "will testify as to the treatment and diagnosis provided to Mr. Nichols during his hospitalization." (ECF No. 144 at PageID 652.) Despite the Government's efforts, Dr. Law refused to sign a summary of testimony. The Government's Notice as to Dr. Law recounts the course of Mr. Nichols's treatment and his subsequent deterioration, which ultimately led to his death. There is no mention of opinion testimony that is unrelated to Mr. Nichols's treatment.

### B. Dr. Mohammad Assaf

The Government's Notice provides the following.

> Dr. Assaf will offer testimony as to his observations of Mr. Nichols and as to his analysis of tests run on Mr. Nichols during his hospitalization. In particular, Dr. Assaf will testify that test results for Mr. Nichols indicated brain death on or about January 9, 2023. Dr. Assaf will also likely testify, based upon his training and experience as set forth in his CV, that an individual with traumatic brain injury such

as Nichols had must receive medical care as soon as possible . . . The consequences of delayed treatment might depend on the cause of the brain damage . . . Delayed treatment of a patient with a traumatic brain injury could result in death.

Dr. Assaf will testify that it is considered standard care to conduct a CAT scan or MRI on a patient with a suspected brain injury . . . Doctors should also monitor brain pressure . . . Every single minute a patient with excessive brain pressure experiences inadequate blood flow and oxygen causes irreversible damage to the brain. Multi-system failure could occur as a result of brain damage . . .

It is important for medical care providers to know the mechanism of injury . . . [D]octors will often reach out to the family to ask what the patient was doing before, during, or after the injury to find out what happened. From a physician's standpoint, understanding what causes the injury can be helpful for determining treatment.

After initial imaging, doctors should continue to monitor a patient. Bleeding in the brain that was not apparent in initial imaging may appear after a week. Doctors may not be able to see the bleed at first, but they can see it later, so it is important to conduct subsequent imaging. A patient with a suspected brain injury should be admitted to the hospital and observed. Treatment should not be delayed, as minutes are vital. The prevention of secondary injuries is crucial. EMT and first responders should focus on the airway and the heart. Additionally, they should work to stop bleeding as they move the patient to next care, whether by ambulance or flight to the emergency room.

Dr. Assaf will testify that knowing the mechanism of injury is important. For instance, if a CAT scan for an unconscious patient appears normal, doctors need to know why the patient is unconscious. When a patient such as Mr. Nichols has a traumatic brain injury, doctors should monitor the brain pressure, the breathing and airway, and check for seizures . . . These things are best conducted at a hospital; therefore, it is important first responders get a patient to the hospital as quickly as possible. It is good for a physician to know how an injury occurred. Minutes without adequate care could cause irreversible damage. EMS meets the patient in those first few important minutes. Therefore, EMS needs to know how an injury occurred as well.

(ECF No. 144 at PageID 649–51.) The Government's disclosure also provides that Dr. Assaf has never before testified as an expert or a person with specialized knowledge in other cases. (ECF No. 144 at PageID 649.)

Defendant Martin's Motion seeks to exclude opinion testimony offered by either Dr. Law or Dr. Assaf that is outside the scope of their personal observations and knowledge gained during

their treatment of Mr. Nichols.  (Martin's Mot., ECF No. 395 at PageID 5400–02.)  Martin and Smith base their Motion on what they argue is the Government's failure to comply with Federal Rule of Criminal Procedure 16(a)(1)(G)(iii).  (*Id*. at PageID 5401–02.)  The Government responds that its disclosure under Rule 16 is sufficient, and that Martin and Smith argue for a standard not supported by the relevant case law.  (Gov't Resp., ECF No. 438 at PageID 5805–06.)  Even so, the Government explicitly states that Drs. Law and Assaf "are primarily fact witness" and that the Government "noticed their testimony as experts . . . in an abundance of caution." (*Id*. at PageID 5814.)  With respect to the request for an evidentiary hearing, Martin and Smith argue that the Government's disclosure lacks any bases for the proffered opinions of Drs. Law and Assaf and that a Daubert hearing is necessary to determine the scope of those opinions.  (Martin Mem., ECF No. 396 at PageID 5403; *see also* Martin Reply, ECF No. 457 at PageID 6056.)  The Government takes the position that the Court can decide the Motion without a *Daubert* hearing because there is no need to test the "scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission."  (Gov't Resp., ECF No. 438 at PageID 5815 (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999)).)

## DISCUSSION

The parties do not dispute that both Dr. Law and Dr. Assaf may testify about the care and treatment they provided to Mr. Nichols in the days preceding his death.  (*Cf.* Gov't Resp., ECF No. 438 at PageID 5807–06 *with* Martin's Reply, ECF No. 457 at PageID 6054.)  Both doctors may offer such testimony without being qualified as experts so long as it is limited "to their first-hand observations and treatment." *United States v. Wells*, 211 F.3d 988, 998 (6th Cir. 2000).  Both doctors may opine on the cause of Mr. Nichols's injuries without submitting an expert report so long as their opinions are based on what they learned through actual treatment of Mr. Nichols and their "ordinary medical training." *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866, 872 (6th

4

Cir. 2007) ("When a physician testifies to issues beyond those covered in ordinary medical training, the physician is behaving in a manner more similar to a retained expert"). Here, there is nothing in the proffered testimony suggesting that either Dr. Law or Dr. Assaf will offer any opinion that would be outside the scope of their treatment of Mr. Nichols *or* their ordinary medical training.

Martin and Smith seem most troubled by Dr. Assaf's proffered testimony regarding the proper standard of care in the hospital, what EMS workers should focus on when providing treatment, and what treating physicians need to know when providing treatment. (Martin Mem., ECF No. 396 at PageID 5405.) But each of these topics fall within the scope Dr. Assaf's ordinary medical training and are relevant to Mr. Nichols's treatment. The proffered testimony of Dr. Assaf focuses on the dangers of treating a traumatic brain injury without sufficient knowledge as to the cause of the injury and the dangers of not providing treatment in a timely fashion. These factors are unquestionably relevant to Mr. Nichols's care because they relate precisely to the injuries Mr. Nichols sustained. This is no different from the facts in *Fielden* where the defendant was on notice that the treating physicians planned to testify about the *causes* of carpal tunnel syndrome. *Fielden*, 482 F.3d at 872. Here, the proffered testimony of Dr. Assaf includes nothing more than what first-line responders and treating physicians at St. Francis needed to know to provide adequate care to Mr. Nichols. This testimony is permissible under Rule 701 of the Federal Rules of Evidence and does not require disclosure under Rule 16 of the Federal Rule of Criminal Procedure. Thus, the sufficiency of the Government's disclosure is not a real issue as far as the testimony that has been proffered is concerned. Similarly, the proffered testimony of Dr. Law does not stray from the permissible scope of Rule 701. The proffered testimony of Dr. Law is plainly limited to his care for and treatment of Mr. Nichols. Even the parties seem to agree on this point. (*Cf.* Gov't Resp., ECF No. 438 at PageID 5812 *with* Martin's Reply, ECF No. 457 at PageID 6054.)

It is unsurprising that Martin and Smith raise these issues given the confusion caused by the Government's disclosure. The Government is clear that both Dr. Law and Dr. Assaf "are primarily fact witnesses" and that it provided notice only "in an abundance of caution." (Gov't Resp., ECF No. 438 at PageID 5814.) While the Court appreciates the sentiment, the Government will not be permitted to backdoor any opinion testimony that would fall outside the permissible scope of Rule 701 merely because it gave notice under Rule 16. Both Dr. Law and Dr. Assaf will be limited to their first-hand observations of treating Mr. Nichols and any opinions based on their ordinary medical training formed during the course of that treatment, as permitted under Rule 701. The proffered testimony of both doctors—as stated in the Government's Notice—falls within the permissible bounds of Rule 701. Although the Government indicated that either or both doctors may be asked "hypotheticals or questions outside the scope of their work [as it related to Mr. Nichols's care]," (Gov't Resp., ECF No. 438 at PageID 5805), the Government has not identified what those questions or hypotheticals may be. Thus, to the extent that Martin and Smith seek exclusion of opinion testimony that goes beyond the disclosures in the Government's Notice, their Motion is GRANTED. (*See* Martin Mot., ECF No. 395 at PageID 5402.) A *Daubert* hearing is unnecessary because the proffered testimony does not exceed the bounds of Rule 701. There is no need to undertake a *Daubert* analysis under these circumstances. The request for an evidentiary hearing is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**, this 5th day of September, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE