**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 23-CR-20191-MSN** |
| | ) | |
| **EMMITT MARTIN III,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

---

The United States of America, by and through Reagan T. Fondren, Acting United States Attorney for the Western District of Tennessee and Elizabeth Rogers, Assistant United States Attorney, and Kristen Clarke, Assistant Attorney General, and Kathryn E. Gilbert, Special Litigation Counsel, notifies the Court of the position of the United States with respect to the sentencing set for January 28, 2025.

1. The attorneys for the United States have received and reviewed the Presentence Investigation Report prepared in this matter.

2. The United States has communicated minor objections to the factual information contained in the Presentence Report to the United States Probation Office.

3. The United States concurs with the guidelines calculations contained in the Presentence Report.

4. Specifically, the probation officer correctly concluded that the appropriate cross-reference is second-degree murder, § 2A1.2. The guideline for Count 1 is U.S.S.G.

§ 2H1.1.  Pursuant to § 2H1.1(a)(1), the base offense level is "the offense level from the offense guideline applicable to any underlying offense."  The relevant conduct for determining the underlying offense includes both "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and all reasonably foreseeable acts and omissions within the scope and in furtherance of any charged or uncharged joint criminal scheme.  § 1B1.3(a) (defining relevant conduct).

5.  Second-degree murder is "the unlawful killing of a human being with malice aforethought."  18 U.S.C. § 1111(a).  "Malice aforethought," in turn, "may be established by evidence of conduct that is reckless and wanton, and a gross deviation from a reasonable standard of care, of such nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm."  *United States v. McDougle*, 82 F. App'x 153, 157–58 (6th Cir. 2003) (internal quotation marks omitted).  "Malice aforethought," accordingly, does not require that the defendant intended for the victim to die.

6.  The factual basis and defendant Martin's testimony at trial amply establish that his conduct meets the definition of second-degree murder.  Defendant Martin pleaded guilty to, *inter alia*, willfully and unlawfully assaulting Mr. Nichols.  Through his guilty plea, he admitted that he "willfully used unreasonable force," "aided and abetted Bean, Haley, Mills, and Smith in the use of unreasonable force," and "failed to intervene in the use of unreasonable force by other officers, despite having an opportunity and the means to intervene in the assault."  Defendant Martin further admitted that his offense

"resulted in bodily injury to, and the death of, Tyre Nichols."  (ECF No. 499-1, Factual Basis, at PageID 7234–35.)

7.  At trial, defendant Martin testified that he deliberately kicked Mr. Nichols in the "upper torso area," even though Mr. Nichols was "helpless," because defendant Martin was "angry that [Mr. Nichols] ran," (ECF No. 603, Trial Tr., at PageID 8485–86), and that he punched Mr. Nichols at least five times in the face with a closed fist, even though Mr. Nichols was "helpless," because defendant Martin was "pissed because [Mr. Nichols] was running," (*Id.* at PageID 8495–98).  Defendant Martin further testified that he saw other officers "assaulting [Mr. Nichols]" and "punching him without [their] handcuffs out," but that he failed to intervene in these unnecessary uses of force because he "was already angry that [Mr. Nichols] ran, so I figured . . . that's what he should get." (*Id.* at PageID 8485).  Defendant Martin testified that, during the assault, he deliberately removed his body-worn camera because he "didn't want it to show what we were doing . . . we were assaulting Mr. Nichols." (*Id.* at PageID 8489.)  Defendant Martin also testified at length about his efforts and other officers' efforts to cover up their use of excessive force against Mr. Nichols.  He testified that he did not tell his supervisor about his own or anyone else's punches or kicks "because . . . I would have got charged," (*id.* at PageID 8504), and that he did not tell first responders that Mr. Nichols had been struck in the head because "they were going to alert their higher-ups." (*Id.* at PageID 8519.)  Instead, defendant Martin testified, the defendants led first responders to believe that Mr. Nichols was "high" and "on drugs," because defendant Martin "exaggerated . . . what [Mr. Nichols] did, so we can justify what we did." (*Id.* at PageID 8518.)

3

8.  Defendant Martin's conduct was "reckless and wanton, and a gross deviation from a reasonable standard of care, of such nature that [the Court] is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *McDougle*, 82 F. App'x at 157–58.  The Sixth Circuit and other federal appellate courts have repeatedly upheld the application of the second-degree murder guidelines in near-identical circumstances, particularly where defendants have failed to disclose their knowledge of a victim's injuries to cover up the crime.  *See, e.g.*, *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (upholding application of second-degree murder cross-reference in § 242 case in which defendant punched victim in the head twice and encouraged a codefendant to beat victim and then failed to provide information about head trauma to responding EMTs); *McDougle*, 82 F. App'x at 158 (same, in § 242 case in which defendants restrained victim and repeatedly punched him in the abdomen and then denied knowledge of the victim's injuries to medical provider); *United States v. Coll*, 762 F. App'x 56, 61 (2d Cir. 2019) (same, in § 242 case in which correctional officer repeatedly kicked victim in the head "[e]ven if [the defendant] did not intent to kill or seriously injure [the victim]" because such conduct "clearly manifested a reckless indifference to whether [the victim] lived or died").

9.  The United States will provide a detailed recommendation supporting a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

10. The United States does not anticipate calling any witnesses at the sentencing hearing but does anticipate providing the victim's family with an opportunity to make a victim

impact statement.  Therefore, it is possible that this hearing will last longer than one hour.

Respectfully Submitted,

REAGAN T. FONDREN
ACTING UNITED STATES ATTORNEY


DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main, Suite 800
Memphis, TN 38103

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:    /s/ Kathryn E. Gilbert
FORREST CHRISTIAN
Deputy Chief
KATHRYN E. GILBERT
Special Litigation Counsel
ANDREW MANNS
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 616-2430

5

<u>CERTIFICATE OF SERVICE</u>

       I, Kathryn E. Gilbert, Special Litigation Counsel, hereby certify that a copy of the foregoing Position Paper of the United States has been filed via the District Court's electronic case filing system.

       This 14th day of January, 2025.

<u>/s/ Kathryn E. Gilbert</u>
Kathryn E. Gilbert
Special Litigation Counsel
