**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CR. No. 2:23-cr-20191-MSN** |
| | ) | |
| EMMITT MARTIN, III | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR REVOCATION OF DETENTION
ORDER AND MOTION FOR RELEASE UNDER APPROPRIATE CONDITIONS**

The defendant, Emmitt Martin III, has asked this Court to revoke the detention order that

is keeping him in custody pending sentencing, which has not been scheduled, or to order his release

based on exceptional reasons. *See* U.S. Const. amends. V and VIII; 18 U.S.C. § 3145(b), (c);

(Order Revoking Bond, ECF No. 789, PageIDs 7230–7235).

**I.      FACTUAL BACKGROUND.**

  **A.   Mr. Martin had been successfully working, cooperating with the
government, and complying with the terms of his release.**

After he was indicted in this case, Mr. Martin was placed on an unsecured Appearance

Bond that required his agreement "to appear for all court proceedings; if convicted, to surrender

to serve a sentence that the court may impose; or to comply with all conditions set forth in the

Order Setting Conditions of Release." *See* (Appearance Bond, ECF No. 37, PageIDs 92–97).

Mr. Martin was allowed to remain out on bond pending sentencing. *See* (Order on Change

of Plea, ECF No. 500, PageID 7236). As is relevant here, one condition of release was that "[t]he

defendant must not violate federal, state, or local law while on release." *See* (Order Setting

Conditions of Release, ECF No. 37, PageID 94). A violation of a condition of release, Mr. Martin

was advised, "*may* result in the immediate issuance of a warrant for your arrest, a revocation of

your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of

court and could result in imprisonment, a fine, or both." (*Id.* at PageID 97) (emphasis added).

> **B.    Mr. Martin allegedly violated the terms of his release when he communicated with Ms. Jones.**

On February 20, 2025, Mr. Martin was arrested based on an accusation that he violated conditions of his bond. *See* (Arrest Warrant, ECF No. 787, PageID 15297). As stated in the Petition for Warrant filed by Simone Washington, the U.S. Pretrial Officer who supervises Mr. Martin, on February 13, 2025, Mr. Martin allegedly "committed uncharged criminal conduct offenses of Harassment (T.C.A. 39-17-308) and Assault (T.C.A. 39-13-101)," and that the supporting evidence was "text messages and the law enforcement reports." *See* (Petition for Warrant or Summons for Offender under Pretrial Supervision, ECF No. 744, PageID 15244). The text messages that seemed to most concern the government and Ms. Washington is included statements that "It's getting handled" and "You making reports? Against me?" *See* Exhibit 2 at p. 5, 1); *see also* (Transcript Detention Hearing, ECF No. 793, PageIDs 15388 lns. 3–6; 15401, lns. 15–23).

Beunca Jones, the mother of Mr. Martin's 12-year-old daughter, E.M., submitted the complaint that prompted the violation notice. *See* (Complaint, Exhibit 1). The Complaint was the direct result of Mr. Martin and Ms. Jones' strained coparenting relationship and relies on Ms. Jones' stylization of certain phone calls and text messages. While there are no recordings of the calls, the full text messages are attached to the Motion as Exhibit 2 and were discussed, though not admitted, at the detention hearing.

A full understanding of these text messages requires some background information. Mr. Martin and Ms. Jones share one child together, E.M., from a prior relationship that ended long before this case. Tanyce Davis is Ms. Jones's mother and E.M.'s grandmother. Mr. Martin and Ms. Jones agreed early on not to discuss the criminal case around E.M. Their co-parenting relationship is strained, in large part because Ms. Jones restricts Mr. Martin's visitation with E.M. on her own accord, and not pursuant to any custody order. Mr. Martin recently learned that Ms.

Jones's boyfriend went to E.M.'s school for a "Donuts with Dad" program, and he is aware that the boyfriend spends more time with E.M. than Mr. Martin is allowed to.

E.M. asked Mr. Martin for $500 cash so that she could buy a new iPhone for her birthday. (Exhibit 2, p. 2). Mr. Martin refused to give her cash and offered to take her to the store to buy the phone himself the following Saturday. (*Id.* at 3). E.M. responded, "I just want the money to save because pretty soon I won't be able to get anything from you[.]" (*Id.* at 4). Mr. Martin told E.M. to call him. (*Id.*) Mr. Martin called Ms. Jones and they exchanged text messages. (*Id.* at 5). Mr. Martin was upset that E.M. was talking about the case in that way and accused Ms. Jones of getting E.M. "programmed." (*Id.*) Mr. Martin was also upset that someone else was spending time with his daughter. (*Id.*) ("Cause how I can't be around my daughter but somebody else can??").

### C.    At the detention hearing, no exhibits were entered and the probation officer conceded that there was no independent investigation.

At a hearing on February 20, 2025, this Court entered an Order granting the government's oral motion to release Mr. Martin on his existing bond pending his initial appearance before the Magistrate Judge on the bond violation because Mr. Martin "is not a flight risk or threat to the community." *See* (Order, ECF No. 783, PageID 15252).

A detention hearing was held the following day, February 21, 2025. *See* (Minute Entry, ECF No. 788). Pretrial Services Officer Simone Washington was the only witness. *See* (Transcript, ECF No. 793, PageIDs 15384–15424). Ms. Washington testified that she learned about the potential pretrial release violation from her supervisor, who emailed her a chain of emails that included Judge Norris's clerk, Ms. Washington's supervisor, and Ms. Washington's chief. (*Id.* at PageID 15394). The original email was sent by Tanyce Davis, who copied Beunca Jones. (*Id.*). Ms. Washington met with her supervisor and, based on her review of the text messages and the incident reports, filed the revocation petition. (*Id.* 15395).

Ms. Washington testified that she was concerned about the text messages to Ms. Jones, not the text messages to E.M. (*Id.* at 15396). She testified that, to her knowledge, no warrant was issued for assault or harassment by the Memphis Police Department. (*Id.*) Ms. Washington testified that she and her office were asking for Mr. Martin's bond to be revoked. (*Id.*).

Ms. Washington further agreed that Mr. Martin had been "very" compliant since he was placed on pretrial release and "obeyed all the rules." (*Id.* at 15397–15398). Ms. Washington acknowledged that "it was clear" that Mr. Martin wanted to see his daughter. (*Id.* at 15398). Ms. Washington also acknowledged that special conditions prohibiting contact with Ms. Jones and E.M. would address the transgression in lieu of revocation. (*Id.* at 15399).

Ms. Washington did not conduct an investigation, did not talk to the complainant, and did not "know the circumstances" of the parties' relationship; her testimony did not definitely establish that Mr. Martin violated the terms of his release. Rather, she described bringing the issue to the Court out of an abundance of caution because, even though the allegations "could be . . . nothing at all," it is a "high-profile case," and they did not want it to "blow up in the media":

> [W]e are all aware of the circumstances that surround Mr. Martin's case, as well as his codefendants. It is considered a high-profile case. The complainants e-mailed Judge Norris, who is the presiding judge over this case. Unfortunately, there was no way that myself or my office could turn a blind eye or could further investigate and try to come to our own conclusion of what's happening. Unfortunately, I did not have the opportunity to contact Ms. Davis or Ms. Jones. I immediately, like I said, staffed it with my supervisor, as well as the chief, and we saw it best that we bring it before the Court because I do not know the circumstances as well—as far as Mr. Martin's relationship with Ms. Davis. All I have is what's in front of me. And you know, that could be—**it could be bigger than what it looks like. Or it could be, you know, nothing at all.** But I wasn't—we weren't willing to take that chance and have something happen to her or, you know, just it blow up in the media and become a circus.

(Transcript, ECF No. 793, PageIDs 15399–15400) (emphasis added). Ms. Washington testified
that she has no knowledge of any other allegations of safety concerns for Ms. Jones or Ms. Davis.
(*Id.* at 15400).

The government submitted that while the behavior was "concerning," it was its position
that Mr. Martin's conduct did not rise "to the level of imminent apprehension of harmful or
offensive conduct, which is sort of the basis of misdemeanor assault." (*Id.* at 15402). The
government did believe that the "one text message that we were focused on for the body of proof
could be harassment" and acknowledged that concern. (*Id.* at 15403). The government asked the
Magistrate Judge to "modify the conditions of bond that he is out on to include no contact with the
complaining parties, no communication with the complaining parties." (*Id.* at 15403–15404). *See
also* (Minute Entry, ECF No. 788) ("Government agreed with release with modifications.").

The court discussed whether the text messages constituted an assault or harassment under
Tennessee law. *See* (Transcript, ECF No. 793, PageIDs 15406–15409).

The court allowed Mr. Martin to speak. *See* (Transcript, ECF No. 793, PageID 15411)
("THE COURT: He wants to say something. You guys decide that. I think you're speaking
plenty."); (*id.* at 15412). Mr. Martin stated that "[a] lot of this is misunderstanding." (*Id.* at 15414).
He further stated that he had not "been able to be a parent," which he called "frustrating," and said
that it is "triggering" him and he has no intent to harm anyone. (*Id.*). Ms. Martin stated that the
conduct "was just a matter of frustration, and I take ownership of frustration." (*Id.*) He asked to
keep his bond because otherwise he would not "be able to provide for [his] daughter." (*Id.* at
15415).

The Magistrate Judge did not ask the defense if it wanted to offer evidence, and when Mr.
Martin tried to speak again when the court was interpreting the meaning of the text messages to be

"I've got folks on the inside," he was prevented from doing so. *See* (*id.* at 15421) ("Put your hand down because I let you talk. I didn't interrupt you. I let you say everything."); (*id.* at 15421–15422) ("I'm ruling now, so it's not going to be a conversation. . . . I let you speak. I let your attorney speak. I somewhat interrupted—he's not going to be able to interrupt me either. You can write something to him, but he's not going to interrupt me.").

The Magistrate Judge determined that the burden of proof was probable cause, (*id.* at 15418–15419), and found that Mr. Martin's conduct did not constitute assault, (*id.* at 15420–15421). However, the court concluded that harassment under Tenn. Code Ann. § 39-17-308 means "communicating with the intention to communicate a threat of harm and that a reasonable person would perceive the communication to be a threat of harm," and the allegations did rise "to the level of harassment." (*Id.* at 15421). The court interpreted the text messages as follows:

> And, again, I think coupled with[1]—this is where it's not just the statement, but then the following text that says: You making reports? Against me? Which is that someone has been notifying Mr. Martin that a police report has been filed, which is concerning, that, you know, they don't just let it go through the system like it's supposed to, and then he reaches out again as if to say, I've got folks on the inside.

(*Id.* at 15421). The court said that, because it found the text messages "constitute a violation of Tennessee Code Annotated 39-17-308(a)(1), the court was "left with no choice but to remand" Mr. Martin to custody, pending his sentencing. (*Id.* at 15423). The court's ruling was pursuant to 18 U.S.C. § 3143. (*Id.* at 15421). *See also* (*id.* at 15405) (discussing the use of "shall" in § 3143 and finding "I've either got to get the Government recommending no sentence of imprisonment or I've

---

[1] It is not clear which initial statement is being referenced, but earlier the court had said, "I'm looking—you don't find saying that if I see you out, it's going to get handled? It's still a threat. It's a threat that communicates a threat of harm. And would a reasonable person perceive the communication to be a threat of harm? She perceives it to be a threat of harm." *See* (Transcript, ECF No. 793, PageID 15407).

got to hear somebody tell me that a motion for acquittal or new trial is going to be granted."); (*id.*

at 15420) (concluding that "it falls back to 'shall'" when applying § 3143).

The Magistrate Judge did not address its authority to order the release of a defendant

pending sentencing under 18 U.S.C. § 3145, which provides that, "A person subject to detention

pursuant to section 3143(a)(2) or (b)(2) [18 USCS § 3143(a)(2) or (b)(2)], and who meets the

conditions of release set forth in section 3143(a)(1) or (b)(1) [18 USCS § 3143(a)(1) or (b)(1)],

may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown

that there are exceptional reasons why such person's detention would not be appropriate."

In its written Order, the Magistrate Judge "determined that the conditions of the

defendant's release had been violated" and "ORDERED that the defendant's bond be and hereby

is revoked." *See* (Order Revoking Bond, ECF No. 789, PageID 15298). Mr. Martin was "remanded

to the custody of the United States Marshal" to be "held in custody pending the sentencing in this

matter." (*Id.*).[2] The order revoking bond did not specify the evidence or condition(s) of release

allegedly violated. (*Id.*)

### D.    Mr. Martin's co-defendants have been permitted to remain out of custody pending sentencing.

Not all of Mr. Martin's co-defendants have been subjected to the same interpretation of the

purported duty to detain individuals convicted of "crimes of violence" before sentencing.

Desmond Mills pleaded guilty to Counts 1 and 3 of the indictment, but he remained on

bond pending sentencing. *See* (Order, ECF No. 92); *see also* (Plea Agreement, ECF No. 91).

After trial, defendants Bean, Haley, and Smith were temporarily detained. *See* (Order

Temporarily Revoking Bean's Bond, ECF No. 632); (Order Temporarily Revoking Haley's Bond,

---

[2] Mr. Martin's sentencing hearing has been continued but has not yet set. (Minute Entry, ECF
No. 749) (granting motions to continue sentencing hearing).

ECF No. 633); (Order Temporarily Revoking Smith's Bond, ECF No. 634). However, after a hearing, the Magistrate Judge re-instated defendant Bean and Smith's previous bonds because they were found guilty of Count 4, obstruction of justice, which the government did not argue constitutes a crime of violence. *See* (Minute Entry, ECF No. 652); *see also* (Order Releasing Bean on Same Bond, ECF No. 655, PageID 10523); (Transcript (attachment), ECF No. 681); (Order Denying Haley Release, ECF No. 704, PageID 14292) ("Following briefing and arguments, Judge Claxton ordered Mr. Haley to remain in custody pending sentencing pursuant to 18 U.S.C. § 3143(a)(2), otherwise known as the mandatory detention clause of the Bail Reform Act. (Hr'g Tr., ECF No. 659, PageIDs 10644–10651.)").

Thereafter, on March 4, 2025, the Magistrate Judge granted Mr. Bean's motion to lighten the conditions of his release, replacing a GPS monitoring requirement with a curfew requirement. *See* (Order Granting Motion for Extraordinary Relief, ECF No. 794, PageID 15425); (Bean's Motion for Extraordinary Relief, ECF No. 784) (noting Probation Officer does not oppose requested relief and that Defendant Smith's conditions were amended to reflect the same relief).

## II.    THIS COURT HAS THE AUTHORITY TO REVOKE MR. MARTIN'S PRE-SENTENCE DETENTION, EITHER BY CORRECTING THE REVOCATION ORDER OR BY FINDING CIRCUMSTANCES ENTITLE HIM TO RELEASE.

Mr. Martin need not—and should not—be detained pending sentencing, and this Court may grant his release either under 18 U.S.C. § 3145(b) or (c). "'If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.' 18 U.S.C. § 3145(b). District courts review *de novo* a magistrate judge's detention order. *See United States v. Jamison*, No. 06-cr-20412-2, 2020 WL 2776508 at *1, *2 (W.D. Tenn. May 28, 2020); *see also United States v. Yamini*, 91 F. Supp. 2d 1125, 1130 (S.D. Ohio 2000) (collecting cases and detailing legislative history on section 3145)." *United States v. Haley*, No. 2:23-cr-20191-MSN-cgc, 2024 U.S. Dist.

LEXIS 216146, at *7 (W.D. Tenn. Nov. 27, 2024). In addition, a person "subject to detention
pursuant to" 18 U.S.C. § 3142(a)(2), "and who meets the conditions of release" set forth in 18
U.S.C. § 3143(a)(1) or (b)(1), "may be ordered released, under appropriate conditions, by the
judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention
would not be appropriate." 18 U.S.C. § 3145(c).

Regarding this Court's review of the Magistrate Judge's revocation order, release is
appropriate because there was insufficient proof that Mr. Martin violated any conditions: (1) Mr.
Martin admitted that he sent text messages expressing frustration that he was not getting to see his
daughter, and he provided additional context about his strained relationship with the complainant
to explain why his frustration should not be viewed as threatening; (2) the probation officer merely
relayed the complaint's hearsay, conducted no independent investigation, testified that she did not
know the parties' relationship or circumstances, and admitted that the complaint could either be
"bigger than what it looks like" or "nothing at all," *see* (Transcript, ECF No. 793, PageIDs 15399–
15400); (3) the court received no exhibits in evidence and heard no other witnesses' testimony;
and (4) Tennessee courts require juries to determine whether a communication constitutes a threat
to constitute harassment. Moreover, even if there were sufficient proof that Mr. Martin violated
his conditions of release and even if his offense conviction constituted a "crime of violence," the
court was not required to detain Mr. Martin, and this Court may order his release. *See* 18 U.S.C. §
3145.

**A.    The government did not prove that Mr. Martin violated release conditions.**

Mr. Martin's release should not have been revoked because there was insufficient proof
that he violated a condition of his release by committing a criminal offense (*i.e.*, assault and
harassment under Tennessee law). The government bears the initial burden of proving that a

violation occurred[3] and, by statute, "*[t]he attorney for the Government may initiate* a proceeding for revocation of an order of release by filing a motion with the district court." 18 U.S.C. § 3148(b) (emphasis added).[4] Here, the revocation proceeding was initiated by the U.S. Probation Office without independent investigation. The U.S. Attorney's Office disagreed that Mr. Martin's text messages constituted assault and said that "arguably, that one text message that we were focused on for the body of the proof . . . could fit the definition of misdemeanor harassment," but suggested that the remedy is modifying the conditions of release." (Transcript, ECF No. 793, PageID 15414).

Perhaps because the government did not initiate the revocation proceeding and was not advocating for revocation, the only evidence offered by the government was the hearsay testimony of the probation officer. No exhibits were offered, and no testimony by the complainants provided further context for the messages. Moreover, although Mr. Martin offered to be sworn in,[5] the Magistrate Judge did not address that offer and did not ask him any questions. The court then found a violation based on its interpretation of the text messages, which it found constituted the offense of harassment defined in Section 39-17-308(a)(1) of the Tennessee Code. *See* (Transcript, ECF No. 793, PageID 15423). An overall interpretation of messages is not enough. There must be some proof of every element of the underlying offense. *Bates*, 804 F. App'x at 347–48 ("A review of

---

[3] *See* 18 U.S.C. § 3148(b)(1)(A); *United States v. Williams*, 70 F.4th 359, 365 (6th Cir. 2023) (noting that "as with any supervised-release violation," government bears initial burden)

[4] Some cases have held that the government must initiate a § 3148 proceeding. *See e.g., United States v. Herrera*, 29 F. Supp. 2d 756, 759 (N.D. Tex. 1998) ("Because the statute is unambiguous in this respect, the court must uphold Congress' clear intent and conclude that § 3148(b) permits only the attorney for the government to initiate a proceeding for revocation of a release order.") *United States v. Pargellis*, No. 3:19-cr-00272-3, 2020 U.S. Dist. LEXIS 173247, 2020 WL 5581361, at *1 (M.D. Tenn. Sept. 17, 2020) (noting that *Herrera* "is nonbinding and the cases following its narrow interpretation of § 3148 'have gained little traction and have been largely overlooked'"). The Sixth Circuit has not resolved this issue. *See Pargellis*, at *4.

[5] *See* (Transcript, ECF No. 793, PageID 15413) (THE DEFENDANT: "I can be sworn in, however you want me to do it . . . .").

the entire district court record—the probation officer's report, hearing transcripts, and witness and exhibit lists—reveals absolutely no mention of the interstate-commerce element of § 922(g).").

### 1. The court relied on unreliable evidence, did not question Mr. Martin, or hear from witnesses with direct knowledge.

The revocation hearing did not comport with minimal due process requirements. At a revocation hearing, a defendant is "entitled to" several procedural protections, including "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear" and "an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(C), (b)(2)(E). Although the Rules of Evidence do not apply, defendants in revocation proceedings are entitled to some minimal but flexible due process requirements, including the right to confront and cross-examine adverse witnesses. *See United States v. Lewis*, 790 F. App'x 702, 707 (6th Cir. 2019) (providing that "Rule 32.1(b)(2)(C) essentially codifies the minimum due process requirements established by the Supreme Court for state parole revocation in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), and for state probation revocation in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)"); *see also United States v. Gonzalez*, No. CR 12-0128 JB, 2013 U.S. Dist. LEXIS 10677, at *50–53 (D.N.M. Jan. 17, 2013) (discussing Fifth Amendment implications for pretrial detainees, looking at factors including length of detention and strength of evidence upon which detention based).

Because the probation officer in this case did not conduct an independent investigation, the evidence before the court was not only hearsay, it was unreliable. *Cf. United States v. Lewis*, 790 F. App'x 702, 706 (6th Cir. 2019) ("Here, the detective's testimony reflects that he engaged in an independent and thorough investigation of allegations that defendant had committed crimes while on supervised release. Detective Boller was in charge of the investigation. He personally

interviewed the victim, and he personally reviewed surveillance tapes showing the defendant and his vehicle at the store."). Courts must determine whether to admit hearsay, balancing a defendant's confrontation right with any grounds asserted for denying confrontation, and hearsay must be reliable. *See United States v. Campbell*, 499 F. App'x 873, 875 (11th Cir. 2012). To establish that the admission of hearsay violated due process, the defendant must show that the court explicitly relied on the information and that it was materially false or unreliable. *Id.* (concluding defendant did not demonstrate that hearsay was materially false or unreliable and that even if court erred in failing to make express findings about reliability of the hearsay, other evidence sufficient to revoke supervised release).

The Magistrate Judge permitted counsel's arguments and allowed Mr. Martin to speak, but the court asked him no questions, and when he tried to speak again during the court's interpretation of the evidence, the court did not seek clarification of the context or relationships leading to the complaint. Further, the court did not hear from any witnesses with direct knowledge of the situation. The evidence against Mr. Martin was not strong, and because his sentencing has not been scheduled, it is unclear how long he will be detained. Because the complaining witnesses were not present and the probation officer did not conduct an independent investigation, Mr. Martin was effectively—even if not actually—denied the minimal due process protections of confrontation and cross-examination of adverse witnesses.

## 2. The magistrate judge assumed that Mr. Martin's offense convictions constitute a "crime of violence."

The magistrate judge concluded that "Mr. Martin has pleaded guilty to a crime of violence"

such that "the Court is left with no choice but to remand pending sentence." (Transcript, ECF No.

793, PageID 15423). For purposes of the Bail Reform Act, a "crime of violence"[6] means:

> (A)    an offense that **has an element** of the offense the use, attempted use, or
> threatened use of physical force against the person or property of another;
>
> (B)    any other offense that is a felony and that, **by its nature**, involves a
> substantial risk that physical force against the person or property of another
> may be used in the course of committing the offense; or
>
> (C)    any felony under chapter 77, 109A, 110, or 117 [18 USCS §§ 1581
> et seq., 2241 et seq., 2251 et seq., or 2421 et seq.]

18 U.S.C. § 3156(a)(4) (emphasis added). Although the Court has previously disagreed with the

defense arguments that 18 U.S.C. § 242 is a crime of violence, this Court has also previously

recognized that the Sixth Circuit has not addressed whether the "residual clause" of 18 U.S.C. §

3156(a)(4)(B) is unconstitutional and "left to the wisdom of higher courts" whether the clause is

unconstitutionally vague. *See* (Order, ECF No. 704, PageIDs 14294–95, 14298–99).[7] This Court

---

[6] *See* 18 U.S.C. § 3143(a)(2) (providing that persons "found guilty of an offense" described in
18 U.S.C. § 3142(f)(1)(A–C) shall be detained, unless specified conditions met); *see* 18 U.S.C. §
3142(f)(1)(A) (identifying particular offenses, as well as "a crime of violence"). Section
3142(f)(1)(B), for example, covers "an offense for which the maximum sentence is life
imprisonment or death."

[7] In other detention proceedings in this case, the government has acknowledged that, "The
Supreme Court has not interpreted the Bail Reform Act's definitions of 'crime of violence,' but it
has held that the residual clause is unconstitutionally vague as it appears in other statutes. *See
United States v. Davis*, 588 U.S. 445, 470 (2019) (holding that the residual clause in 18 U.S.C. §
924(c)(3)(B) is unconstitutionally vague); *Sessions v. Dimaya*, 584 U.S. 148, 174 (2018) (holding
that the residual clause in 18 U.S.C. § 16(b) is unconstitutionally vague); *Johnson v. United States*,
576 U.S. 591, 597 (2015) (holding that the residual clause in the Armed Career Criminal Act is
unconstitutionally vague)." *See* (Response, ECF No. 681, PageID 13021). *See also id.* at PageID
13021–23 (arguing that because Court reached different conclusion under advisory Sentencing
Guidelines' now-defunct residual clause and lower courts have reasoned that the Bail Reform
Act's residual clause is not vague, the residual clause is not vague).

has also previously concluded that 18 U.S.C. § 242 is a "crime of violence" under the "by its

nature" prong of 18 U.S.C. § 3156(a)(4)(B). *See* (Order, ECF No. 704, PageIDs 14300–01).

Mr. Martin raises this issue again here to preserve his position that the term is

unconstitutionally vague such that his offenses of conviction do not mandate his detention under

§ 3143(a)(2).

### 3. The evidence presented at Mr. Martin's revocation hearing did not establish a violation of Tennessee's harassment statute.

Harassment occurs whenever a person intentionally communicates a threat to another

person. *See* Tenn. Code Ann. § 39-17-308(a); *see also* T.P.I Criminal ¶ 30.07(B). More

specifically, there are three elements to this offense: "the State must prove beyond a reasonable

doubt that: (1) the Defendant intentionally communicated a threat to another person; (2) the

Defendant intended the communication to be a threat of harm to the victim; and (3) a reasonable

person would perceive the communication to be a threat of harm." *State v. Tekle*, No. E2022-

00686-CCA-R3-CD, 2023 Tenn. Crim. App. LEXIS 105, at *21 (Tenn. Crim. App. Mar. 31, 2023)

(Tenn. Code Ann. § 39-17-308(a)(1)(A), (B)). In addition, whether a statement constitutes

harassment is a question for a jury. *See Tekle*, 2023 Tenn. Crim. App. LEXIS 105, at *22

(concluding trial court erred by dismissing harassment charges because whether a statement is

harassment is a determination for the jury); *see also State v. Davis*, No. W2023-01456-CCA-R3-

CD, 2024 Tenn. Crim. App. LEXIS 506, at *13 (Tenn. Crim. App. Nov. 15, 2024) (concluding

"whether Defendant's statements constitute threats was a factual determination for the jury, and

we will not reweigh the evidence").

Here, the excerpted text messages between Mr. Martin and Ms. Jones were not introduced

into evidence, and the Probation Officer did not investigate the allegations or speak to the

complainants. The only other information the court had to determine whether the text messages

constituted harassment were Mr. Martin's remarks at the hearing, in which he took responsibility for sending the messages but explained they came from a place of frustration, not intent to threaten. *E.g.*, (Transcript, ECF No. 793, PageID 15414 (MARTIN: "And being I haven't been able to be a parent, this is frustrating, and being I haven't been—I've been diagnosed with PTSD, it's triggering me and, like, I'm not intentionally—I'm not intentionally trying to harm anyone, nobody.").

Therefore, even if the court was correct to assume that the complainant could have interpreted the texts as threatening, that is only the third element of the offense. The first two elements were not established by the proof. The Magistrate Judge extrapolated all of the essential elements out of the probation officer's interpretation of text message but did so without the full context of Mr. Martin and Ms. Jones's relationship; in the face of another interpretation—parental frustration—the offense was not established.

### B. Even if there was a violation, the magistrate judge was not required to order Mr. Martin's detention pending trial.

A court does not lose its authority to allow a defendant to remain out of custody, even when he has pleaded guilty to a "crime of violence." The Magistrate Judge erred by concluding that there was no discretion to allow Mr. Martin to remain out of custody. The government's position was that the court had discretion. *See* (Transcript, ECF No. 793, PageID 15404) ("Judge, I think if you don't find that he's a flight risk or danger to himself or others, then you can impose conditions that would assure his appearance in court and the safety of the community."); (*id.*) (THE COURT: How can I do that [fashion a remedy] for someone who's been convicted of a crime of violence?" THE GOVERNMENT: "Well, I think you can. I think the question is should you? Obviously, that's what the Court is weighing.").

The Bail Reform Act provides that, despite the seemingly mandatory detention provision of § 3143(a)(2), a court may order release "under appropriate conditions":

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 [28 USCS § 1291] and section 3731 of this title [18 USCS § 3731]. The appeal shall be determined promptly. **A person subject to detention pursuant to section 3143(a)(2) or (b)(2) [18 USCS § 3143(a)(2) or (b)(2)]**, and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1) [18 USCS § 3143(a)(1) or (b)(1)], **may be ordered released, under appropriate conditions,** by the judicial officer, **if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.**

18 U.S.C.S. § 3145 (emphasis added). *See also* 18 U.S.C. § 3156(a)(1) (defining "judicial officer" to mean, "unless otherwise indicated, any person or court authorized pursuant to section 3041 of this title [18 USCS § 3041], or the Federal Rules of Criminal Procedure, to detain or release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the Superior Court of the District of Columbia"); 18 U.S.C. § 3141(b) (providing that judicial officer "shall" order that a person "be released or detained"). To obtain release under § 3145(c), defendants must make two showings: "(1) that [they] meet[] the conditions of release set forth in § 3143(a)(1) and (2) that exceptional circumstances make [their] detention inappropriate." *United States v. Wise*, No. 3:20-CR-46-TAV-JEM-2, 2023 U.S. Dist. LEXIS 121832, at *5–6 (E.D. Tenn. July 14, 2023).

Although the first part of the relevant statutory subsection allowing release for exceptional reasons concerns "appeals," an appeal is not required. A district court may order release pursuant to § 3145. *See United States v. Bowman*, No. 24-5835, 2025 U.S. App. LEXIS 6352, at *2 (6th Cir. Mar. 18, 2025) ("The district court's belief that it lacked discretion to consider Bowman's release was incorrect."); *United States v. Christman*, 596 F.3d 870, 870-71 (6th Cir. 2010) ("Christman does not dispute that his guilty plea mandates his detention under § 3143(a)(2).

Rather, he argues that he may be released under § 3145(c). . . . [W]e hold that the district court erred in not considering whether Christman established exceptional reasons to support his release pending sentencing."); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008) (concluding district judge qualifies as "judicial officer" and possesses "exceptional reasons" authority under § 3145(c) because no clear indication that definition to be applied in manner that would exclude district judges, noting holding in accord with "every other circuit court to consider the issue, including Second, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits); *United States v. Wise*, No. 3:20-CR-46-TAV-JEM-2, 2023 U.S. Dist. LEXIS 121832, at *5–6 (E.D. Tenn. July 14, 2023) ("The Sixth Circuit has found that § 3145 does not preclude a district court from making a determination of exceptional circumstances in support of release even though that provision appears at the close of a section on review and appeal."). A magistrate judge may also recommend release pursuant to § 3145(c). *See United States v. Byrge*, No. 3:19-CR-193-1, 2020 U.S. Dist. LEXIS 208559, at *6–7 (E.D. Tenn. Aug. 10, 2020) (Shirley, M.J.) (recommending defendant "continue on release pending sentencing under the same conditions as her pretrial release," finding she "meets the exceptions to the Mandatory Detention Act of 1990 in accordance with 18 U.S.C. § 3145(c) and 18 U.S.C. § 3143(a)(2)"); *United States v. Byrge*, No. 3:19-CR-193-1, 2020 U.S. Dist. LEXIS 206224, at *2 (E.D. Tenn. Nov. 4, 2020) (same).

The Bail Reform Act does not define "exceptional reasons" permitting release. Tennessee federal courts have emphasized that, because the term is not defined, judges have discretion. "In each case, 'the determination of whether "exceptional reasons" have been clearly shown is quintessentially a fact-intensive inquiry requiring case by case analysis' and the district judge, therefore, has *broad discretion in the factors* the judge might consider when determining whether exceptional reasons for release exist." *United States v. Wise*, No. 3:20-CR-46-TAV-JEM-2, 2023

U.S. Dist. LEXIS 121832, at *7–8 (E.D. Tenn. July 14, 2023) (emphasis added) (citations omitted) (concluding defendant's "compliance with the conditions of release alone is not sufficient to support an exceptional circumstance for release"); *see also United States v. Mutte*, 383 F. App'x 716, 718–19 (10th Cir. 2010) (affirming release pending sentencing in light of "broad range of factors eligible for the district court's consideration" and concluding "district court properly analyzed the record and identified 'exceptional reasons' as contemplated by 18 U.S.C. § 3145(c)"). The Sixth Circuit has looked to guidance provided by other circuits, informing that the Ninth Circuit has "provided the most guidance on this issue, suggesting a number of factors for courts to consider while exercising broad discretion to determine whether such reasons exist considering the totality of the circumstances." *United States v. Sadrinia*, No. 24-5464, 2025 U.S. App. LEXIS 2073, at *8 (6th Cir. Jan. 29, 2025) (quoting *United States v. Garcia*, 340 F.3d 1013, 1016 (9th Cir. 2003)). Those factors included: "whether 'the defendant's criminal conduct was aberrational'; whether 'the particular act committed by the defendant . . . is sufficiently dissimilar from the others in that category'; '[t]he length of the prison sentence,' which could reflect the seriousness of the crime; whether there are 'circumstances that would render the hardships of prison unusually harsh for a particular defendant,' such as 'serious illness or injury'; '[t]he nature of the defendant's arguments on appeal,' specifically where 'there appears to be an unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal'; and 'whether the defendant was unusually cooperative with the government.'" *Id.* (concluding defendant not entitled to relief because presented a "run-of-the-mill sufficiency-of-the-evidence claim").

In *United States v. Byrge*, the court concluded that the defendant's circumstances were exceptional. No. 3:19-CR-193-1, 2020 U.S. Dist. LEXIS 208559, at *5–6 (E.D. Tenn. Aug. 10, 2020). The court explained: "[The defendant] is a young woman at a crossroads in her life. The

people with whom she associated have led her down a dark path that brings her to this point.

However, she has done well under pretrial supervision and has cooperated in the case. Moreover,

she is the caretaker for a young son that she must support and a caretaker for her recently ill father

so that her mother may maintain employment. Further still, she has only negative drug tests and

no prior criminal history, which are both incredibly rare in these types of cases." *Id.* (also noting

"pall cast over her circumstances by the COVID-19 pandemic").

Looking at the *Garcia* factors and recognizing that neither this Court nor the Magistrate

Judge's discretion are limited by those factors, the exceptional reasons warranting Mr. Martin's

release pending sentencing include:

- The day before the revocation hearing, the government informed the District Court that Mr. Martin "is not a flight risk or threat to the community," and the District Court granted the government's motion to release Mr. Martin on his existing bond. *See* (Order, Doc. 783, PageID 15252).

- At the revocation hearing, the government did not seek Mr. Martin's detention for the alleged violation. *See* (Transcript, ECF No. 793, PageIDs 15403–15404).

- Mr. Martin had no previous criminal history (adult or juvenile), so the offense conduct in this case was aberrational.

- The probation office informed the Magistrate Judge that Mr. Martin had been very compliant with all of the terms of his supervised release and obeyed all the rules, until the alleged violation. *See* (Transcript, ECF No. 793, PageIDs 15397–15398); (*id.* at 15421) ("I understand that you've—you've been a sterling person on supervision.").

- Mr. Martin provided expert analysis of his well-documented mental health issues that make him differently situated than his co-defendants and mitigate his involvement in the offense. *See* (Response to Government's Motion to Limit Expert Testimony of Dr. Malcolm Spica, ECF No. 383) (summarizing expert opinions); (Notice Pursuant to Federal Rule of Criminal Procedure 12.2(b)(1), ECF No. 154).

- Mr. Martin's present circumstances, including his need to earn money to pay for child support, render his pre-sentencing custody a hardship. *See* (Transcript, ECF No. 793, PageID 15415); (*id.* at 15416–15417) ("If I'm in your courtroom again, you can do whatever you want to do, but I'm telling you, like, I've been having a full-time job. I just got this full-time job. I just got full time. You know what I'm saying. I just became – I got full-time benefits. I can't afford to lose that. If I go into custody today, I'm losing all of

that. So I'm going to lose everything. *So now if I lose everything, I can't provide for my daughter . . . .*").

- Mr. Martin has been unusually cooperative. During the closing arguments at the trial of three of Mr. Martin's co-defendants, the government repeatedly pointed to Mr. Martin's trial testimony to prove their case. *See, e.g.*, (Transcript, ECF No. 691, PageIDs 13499, 13500, 13501, 13502, 13507, 13517, 13521, 13524, 13525). The government may still require Mr. Martin's cooperation, through information or testimony, prior to or during the sentencing hearings of the co-defendants in this case.

- The probation officer sought detention but did not do an investigation or conclusively establish a violation of Mr. Martin's conditions of release. *See* (Transcript, ECF No. 793, PageIDs 15399–15400) ("Unfortunately, there was no way that myself or my office . . . could further investigate and try to come to our own conclusion of what's happening. Unfortunately, I did not have the opportunity to contact Ms. Davis or Ms. Jones. . . . All I have is what's in front of me. And you know, that could be – it could be bigger than what it looks like. Or it could be, you know, nothing at all. But I wasn't—we weren't willing to take that chance and have something happen to her or, you know, just it blow up in the media and become a circus.").

- Whether Mr. Martin committed the misdemeanor offense of harassment requires a jury finding, but no such due process protections were afforded here. Further, given the parties' relationship and explanation provided by Mr. Martin, the messages do not rise to the level of a criminal "threat." Rather, the messages reflect a strained co-parenting relationship that Mr. Martin finds frustrating because Ms. Jones restricts Mr. Martin's visitation with E.M. on her own accord, and not pursuant to any custody order. Mr. Martin explained that he was upset that someone else was spending time with his daughter when he was not able to.

- No charges were brought by the Memphis Police Department as a result of the reports that form the basis of the release revocation. *See* (Transcript, ECF No. 793, PageID 15396).

- There is no history of violence between Mr. Martin and Ms. Davis, Ms. Jones, or his daughter.

## III.    CONCLUSION.

Mr. Martin respectfully requests that this Court release him on appropriate conditions, as recommended by the government and acknowledged by the probation office, *see* 18 U.S.C. § 3145(c), or, in the alternative, revoke the Magistrate Judge's Order revoking Emmitt Martin, III's bond against the joint recommendation of the parties based on its unsupported finding that Mr. Martin committed the Tennessee misdemeanor offense of harassment, *see* 18 U.S.C. § 3145(b). *See also* U.S. Const. amends. V and VIII; (Order, ECF No. 789, PageIDs 7230–7235).

Respectfully submitted this 31st day of March, 2025.

RITCHIE, JOHNSON & STOVALL, P.C.

/s/Stephen Ross Johnson
STEPHEN ROSS JOHNSON [TN BPR No. 022140]
CATALINA L.C. GOODWIN [TN BPR No. 038660]
606 W. Main Street, Suite 300
Knoxville, TN 37902
(865) 637-0661
johnson@rjs.law
goodwin@rjs.law

THE LAW OFFICE OF MASSEY MCCLUSKY
FUCHS & BALLENGER

/s/ William D. Massey
WILLIAM D. MASSEY [BPR No. 9568]
3074 East Road
Memphis, TN 38128
(901) 384-4004
w.massey3074@gmail.com
masseymccluskylaw@gmail.com

*Counsel for Emmitt Martin, III*

## CERTIFICATE OF SERVICE

I certify that on March 31, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Stephen Ross Johnson